# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————

UNITED STEEL, PAPER, AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND
SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, et al.,
*Petitioners,*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,
*Respondents,*

———————————

On Petition for Review of a Final Rule of the
United States Environmental Protection Agency

———————————

**PETITIONERS ALLIANCE FOR A STRONG U.S. BATTERY
SECTOR AND MICROPOROUS, LLC'S OPPOSITION TO
RESPONDENTS' EMERGENCY MOTION FOR CLARIFICATION
REGARDING STAY MOTIONS AND, IF NECESSARY,
REVOCATION OF ADMINISTRATIVE STAY**

———————————

BARBARA A. SMITH
**BCLP LLP**
211 North Broadway, Ste. 3600
St. Louis, MO 63102
Telephone: (314) 259-2367
barbara.smith@bclplaw.com


*Counsel for Microporous LLC*

DANIEL J. FEITH
 *Counsel of Record*
SAMUEL B. BOXERMAN
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
dfeith@sidley.com


*Counsel for Petitioner Alliance for
a Strong U.S. Battery Sector*

## INTRODUCTION

EPA's emergency motion involves a purported emergency of EPA's own making. On Monday, January 13, 2025, the U.S. Court of Appeals for the Fifth Circuit entered a temporary administrative stay of the final rule at issue in these consolidated cases, *Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA)*, 89 Fed. Reg. 102,568 (Dec. 17, 2024) ("Rule"), and ordered EPA to respond to the motion for a stay pending review filed by Petitioner Alliance for a Strong U.S. Battery Sector ("Alliance") by Friday, January 17. Had EPA adhered to that schedule, this Court would have been in a position to resolve the Alliance's stay motion within days, before any Alliance member had to incur the significant costs detailed in the Alliance's motion to comply with a Rule the Alliance had demonstrated is unlawful in numerous ways.

Instead, in an effort to allow the Rule to take effect immediately, before EPA must venture to defend the Rule's merits and before the "full consideration" of the Alliance's motion contemplated by the Fifth Circuit, EPA filed the instant "emergency" motion. *See* No. 25-1083, Dkt. 7

("Mot.").[1] In it, EPA offers no defense of the Rule's merits, responding to *none* of the multiple ways the Alliance demonstrated that the Rule was infeasible, unscientific, unreasoned, and unlawful. Nor does EPA meaningfully dispute the Alliance's showing that, to meet the deadlines that will be in place once the Rule takes effect, battery-separator manufacturers must *immediately* begin to incur significant, nonrecoverable compliance costs. These factors, discussed in detail in the Alliance's stay motion and in Microporous, LLC's[2] similar stay motion in the Sixth Circuit (both of which have now been transferred to this Court's docket), demonstrate why both a temporary administrative stay and stay pending review are warranted. *See* Dkt. 4 ("Alliance Stay Motion"); No. 25-1080, Dkt. 2.

---

[1] Unless otherwise noted, all citations to docket entries refer to the entries in *Alliance for a U.S. Strong Battery Sector v. EPA*, No. 25-1083 (3d Cir.). EPA's motion was also filed in each of the other consolidated cases: No. 25-1079, Dkt. 4; No. 25-1080, Dkt. 5; No. 25-1081, Dkt. 4; No. 25-1082, Dkt. 4; No. 25-1083, Dkt. 7; No. 25-1084, Dkt. 4.

[2] Petitioner Microporous, LLC ("Microporous"), a battery-separator manufacturer, filed its own motion to stay in the Sixth Circuit, which has now been transferred to this Court. *See* No. 25-1080, Dkt. 2. Microporous joins in the filing of this Opposition in light of the numerous harms Microporous would *immediately* suffer absent the administrative stay, as described in Microporous's motion and accompanying declarations. *Id.*

Meanwhile, the arguments EPA does make for revoking the administrative stay are meritless.

*First*, under the guise of a request for "clarification," EPA suggests the stay is no longer in effect because it did not transfer with the case from the Fifth Circuit. But EPA simply ignores the plain text of the multi-circuit lottery statute, which makes clear that a stay entered by a court prior to the multi-circuit lottery remains in effect and "may thereafter be modified, revoked, or extended" by the court designated under the lottery. 28 U.S.C. § 2112(a)(4).

*Second*, to the extent the stay is in effect, EPA argues the Court should revoke it supposedly because the stay harms the public interest and because battery-separator manufacturers do not face immediate irreparable harm. EPA's years-long rulemaking process, however, belies the agency's sudden sense of urgency. And, in any event, having offered no defense of the Rule's lawfulness, EPA cannot argue that allowing the Rule to take effect serves the public interest because it is well-established that there is no public interest in giving effect to unlawful agency actions. Moreover, EPA identifies no actual harm to the public interest from the

stay. Despite citing *17* pages from the Federal Register, EPA does not identify a single requirement that the stay will impair.

EPA's irreparable harm arguments fare no better. EPA principally complains that the Alliance did not quantify the specific costs manufacturers would face while a stay is litigated. But given the magnitude of anticipated compliance costs, even under an expedited briefing schedule, manufacturers would have to incur some meaningful portion of the millions of dollars in estimated compliance costs during stay litigation. And EPA's fallback suggestion that battery-separator manufacturers face no immediate compliance costs because of past steps to reduce TCE exposures blatantly contradicts the Rule, the Rule's preamble, and the record.

Accordingly, the Court should confirm that the administrative stay remains in effect and deny EPA's motion to revoke it. Alternatively, if the Court concludes the stay did not transfer, the Court should enter an administrative stay of the Rule's effective date pending "full consideration" of the Alliance's and Microporous's stay motions.

EPA issued the Rule on December 17, 2024, a full year after the Rule's comment period closed and, as EPA acknowledges, "many years" after starting the rulemaking process. Mot. 11. Despite that delay, and without explanation, EPA set the Rule's effective date only 30 days from publication in the Federal Register, on January 16, 2025—just half the length of the 60-day interval EPA had proposed, *see* 88 Fed. Reg. 74,712, 74,751 (Oct. 31, 2023), and had used in previous risk management rules under TSCA.[4] The Alliance promptly challenged the Rule in the Fifth Circuit and, on January 13, 2025, moved to stay certain provisions of the Rule pending review and to administratively stay the Rule's effective date. Before doing so, the Alliance asked EPA—both in writing and orally, through counsel—to administratively stay the Rule so that stay briefing could proceed in orderly fashion without requiring battery-separator manufacturers to begin incurring significant immediate,

---

[3] To avoid repetition, the Alliance incorporates by reference the background section of its stay motion, which describes TSCA, the role of TCE in battery-separator manufacturing, and the relevant provisions of the proposed and final Rule. *See* Alliance Stay Motion at 4–12.

[4] *See* 89 Fed. Reg. 39,254 (May 8, 2024); 89 Fed. Reg. 21,970 (Mar. 28, 2024).

nonrecoverable compliance costs. EPA denied those requests on January 16.

On January 13, 2025, shortly after the Alliance filed its motion, the Fifth Circuit entered an order directing EPA to respond by January 17 and administratively staying the Rule's effective date "temporarily to allow for a response and full consideration" of the motion. *Alliance for a Strong U.S. Battery Sector v. EPA*, 5th Cir. No. 25-60010, Dkt. 31-2 (Jan. 13, 2025). Later that same day, EPA notified the U.S. Judicial Panel on Multidistrict Litigation that 12 petitions challenging the Rule had been filed in nine circuits. The next day, pursuant to 28 U.S.C. § 2112(a)(3), the panel randomly designated this Court to hear the consolidated petitions. On Wednesday, January 15, the Fifth Circuit transferred the Alliance's petition and stay motion to this Court. *See* 5th Cir. No. 25-60010, Dkt. 36.

Later that day, more than 48 hours after the Fifth Circuit's entry of the administrative stay, EPA filed the instant motion claiming a need for "emergency" relief. Dkt. 7. On Thursday, January 16, this Court issued an order stating that "[t]he Fifth Circuit's administrative stay

remains in place until further order of this Court" and that any response to EPA's motion must be filed by January 21, 2025.[5] No. 25-1055, Dkt. 5.

## ARGUMENT

The Alliance's stay motion explains at length why the Alliance is entitled to preliminary relief, including an administrative stay of the Rule's effective date. On that showing, the Fifth Circuit agreed a temporary administrative stay is warranted. None of EPA's arguments for undoing that stay has merit.

## I. The Stay Entered by the Fifth Circuit Remains in Effect.

EPA first argues that the Fifth Circuit's administrative stay "does not transfer with the case" to this Court and so "is not in effect." Mot. 8. This Court's order from January 16 appears to disagree with that proposition and dispose of it. *See* No. 25-1055, Dkt. 5. But to the extent there is any question whether the Fifth Circuit's stay transferred, the text of the multi-circuit lottery statute plainly confirms that it did.

---

[5] The Court's January 16 order further provided that "[i]f any petitioners want to file new stay motions or supplement the pre-transfer stay motions filed in other circuits," they must do so by January 21, 2025, and that EPA's response to those stay motions is due by January 28, 2025. No. 25-1055, Dkt. 5. The Alliance and Microporous are separately filing supplements to their respective stay motions.

To begin with, the statute authorizes "[a]ny court of appeals in which proceedings with respect to an order of an agency … have been instituted" to "stay the effective date of the order." 28 U.S.C. § 2112(a)(4). That is just what the Fifth Circuit did here. The statute then provides that "[a]ny such stay may thereafter be modified, revoked, or extended" by the court of appeals designated through the multi-circuit lottery. *Id.* This provision presupposes that any stay of the effective date transfers with the case, for otherwise there would be no stay for the designated court of appeals to modify, revoke, or extend. The statute's plain text thus provides the clarity EPA seeks: The Fifth Circuit's stay transfers with the case, and so remains in effect.

Without addressing this statutory language, EPA contends that administrative stays should not transfer because they are grounded in a court's inherent authority to manage its docket. Mot. 8–9. This argument, however, is completely divorced from the statutory text. The statute applies to "any" stay of an order's effective date and draws no distinction between administrative stays and stays pending review. 28 U.S.C. § 2112(a)(4); *see Kirtz v. Trans Union LLC*, 46 F.4th 159, 165 (3d Cir. 2022) ("As a general matter, Congress uses the expansive modifier 'any'

to bring within a statute's reach all types of an item."). The Court "may not carve a broad exclusion from a plain statute on [its] own initiative." *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr.*, 98 F.4th 463, 469 (3d Cir. 2024).

Moreover, EPA's premise is wrong. While managing dockets is *one* purpose of administrative stays, *another* is "to minimize harm while an appellate court deliberates," based on a "first-blush judgment about the relative consequences of staying [the agency order] versus allowing it to go into effect." *United States v. Texas*, 144 S. Ct. 797, 798 n.1 (2024) (Barrett, J., concurring in denial of applications to vacate stay). As discussed *infra* Part II, the stay entered by the Fifth Circuit here serves this purpose. EPA identifies no reason why, in principle, Congress would have wanted stays designed to minimize harm to evaporate simply because a case moved to another circuit.

Indeed, EPA's position that administrative stays categorically do not transfer would be harmful and inequitable if adopted. EPA cannot seriously dispute that there are cases where administrative stays are necessary to prevent serious irreparable harm (even if EPA asserts this case is not one of them). Yet under EPA's view, a party that needed an

administrative stay to avoid serious irreparable harm could not receive the full protection such a stay affords if by happenstance the party's case were subject to the transfer provisions of 28 U.S.C. § 2112(a), because in that situation the transfer would dissolve the stay. Again, EPA offers no rationale for such an unjust result.

Accordingly, as the Court already appears to have done in its January 16 order, the Court should confirm that the administrative stay remains in effect.

## II. The Court Should Leave the Administrative Stay in Place.

EPA next argues that, if the Fifth Circuit's stay remains in effect, this Court should revoke it because the stay harms the public interest and is unnecessary to shield battery-separator manufacturers from irreparable harm. Mot. 9–13. EPA is wrong on both counts.[6]

---

[6] The Alliance's and Microporous's stay motions demonstrate why they satisfy the four factors governing stays pending review under *Nken v. Holder*, 556 U.S. 418, 434 (2009), and why they are entitled to an administrative stay. To the extent the *Nken* factors are "on the court's radar" here, *Texas*, 144 S. Ct. at 799 (Barrett, J., concurring in denial of applications to vacate stay), the Petitioners incorporate by reference those arguments to avoid repetition, and limit their discussion here to the specific points raised in EPA's motion. Furthermore, to the extent the Court concludes that the Fifth Circuit's stay does not transfer, Petitioners respectfully request that the Court immediately enter a

***Public interest.*** EPA's claim that the stay harms the public interest rests primarily on the assertion that the Rule reflects "many years of scientific discourse" and aims to protect public health. Mot. 11. Yet EPA never explains why, after EPA took "many years" to issue the Rule, the delay of a few additional days contemplated by the Fifth Circuit's stay and briefing schedule would materially harm the public interest. Plainly, it would not.

Furthermore, EPA offers no response whatsoever to the Alliance's showing that the Rule is unlawful in numerous respects, including in ways that cast doubt on its scientific basis. *See* Alliance Stay Motion at 12–25. For example, as the Alliance has shown, the exposure limit set by the Rule violates TSCA's requirements because it does not reflect the "best available science" or "weight of the scientific evidence." 15 U.S.C. § 2625(h)–(i); *see* Alliance Stay Motion at 20–22. In addition, EPA separately failed to consider commenters' proposal that it adopt an exposure limit in line with that set by European and British environmental regulators. Alliance Stay Motion at 18–20. Having offered

temporary administrative stay of its own as to all petitioners for the reasons set forth here and in the Petitioners' stay motions.

no defense of the Rule's legality, EPA cannot claim that revoking the stay serves the public interest because it is well-established that "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). The Rule's putative health benefits do not affect this conclusion. Simply put, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021).

Furthermore, even setting aside its own years-long delay, EPA fails to identify *how* the temporary stay harms public health. EPA vaguely asserts that the stay "delays … protections from taking effect and harms the public interest through adverse health effects" and cites, without elaboration, a 17-page swath of the Rule's preamble. Mot. 12. But EPA does not specify a single prohibition that will be enforceable on the day the Rule goes into effect—because there is none. Rather, all the Rule's prohibitions begin at a later point. *See* 89 Fed. Reg. at 102,624–25 (to be codified at 40 C.F.R. § 751.305(b)). It is only the compliance costs for regulated parties that begin immediately upon the Rule's taking effect and setting those compliance dates in place.

***Irreparable Harm.*** The Alliance's stay motion and supporting declarations detail how, once the Rule takes effect, battery-separator manufacturers will immediately have to begin incurring significant, nonrecoverable compliance costs. Alliance Stay Motion at 25–29. To briefly recap: The Rule requires that by December 18, 2025, battery-separator manufacturers must implement all feasible engineering and administrative controls for reducing TCE exposure levels and must explain, in writing, what other controls they considered and why they deemed them infeasible. *See* 89 Fed. Reg. at 102,628 (to be codified at 40 C.F.R. § 751.315(c)(1)(i)–(ii), (2)(i)). Once the Rule takes effect and that compliance deadline is in place, meeting it will—as multiple sworn declarations, including from experienced industrial hygienists, attest, *see* Dkt. 5—require manufacturers to immediately hire engineers and industrial hygienists to identify any additional feasible engineering or administrative controls and, if such controls exist, to incur costs to design them, obtain necessary permits and materials, and construct and implement those systems. Alliance Stay Motion at 26. Alliance member ENTEK International LLC estimates that the cost of the assessment alone will be approximately $1 million. *Id.*

The Rule, once in effect, will also require implementation of a respirator mandate by September 15, 2025, and this too would require costly immediate steps to prepare. By that date, manufacturers must have medically evaluated each potentially exposed employee; procured and equipped each potentially exposed employee with the appropriate respirator; constructed facilities to store, clean, and maintain the respirators; and developed, documented, and implemented a training program on respirator use for all potentially exposed employees. *See* 89 Fed. Reg. at 102,629 (to be codified at 40 C.F.R. § 751.315(e)(1)). Again, as attested to in sworn declarations, accomplishing all of that by the compliance date for each of ENTEK's several hundred employees will require immediately beginning to incur costs associated with each of these tasks, which ENTEK estimates will total several million dollars. *See* Alliance Stay Motion at 27; Dkt. 5.

EPA does not actually dispute that manufacturers must incur these compliance costs, that these compliance costs must begin immediately given the compliance dates, or that these costs will total millions. *See* Mot. 12. Instead, EPA faults the Alliance for not specifying the costs

manufacturers will incur during a standard motions-briefing schedule. *Id.*

But the Alliance and Microporous have identified multiple categories of costs that would have to begin immediately—*i.e.*, during a standard motions-briefing schedule. *See supra* at 12–14. Even under an expedited briefing schedule, battery-separator manufacturers would have to incur some material percentage of the millions of dollars in compliance costs they will need to expend to meet the compliance deadlines. Even if the Rule were ultimately vacated, those costs would be unrecoverable due to EPA's sovereign immunity, and thus constitute immediate and irreparable harm. *See Ohio v. EPA*, 603 U.S. 279, 292 (2024) ("nonrecoverable" compliance costs establish irreparable harm); *Pennsylvania v. President*, 930 F.3d 543, 574 (3d Cir. 2019), *rev'd on other grounds sub nom. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) ("unredressable financial consequences" constitute irreparable harm); *see also Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016) ("When determining whether injury is irreparable, it is not so much the magnitude but the irreparability that counts" (cleaned up)).

After suggesting that manufacturers will not have to incur immediate compliance costs, EPA suggests the opposite: that manufacturers should, as a practical matter, choose to undertake compliance costs even while the Rule is stayed, in expectation of the Rule later being allowed to take effect. Mot. 10 n.3. This argument boils down to the idea that agency action should have *in terrorem* effects on regulated parties regardless of whether such action is lawful or under judicial review. It cannot be that regulated parties have no recourse when unlawful rules are designed to impose immediate costs.

Finally, EPA seemingly suggests that battery-separator manufacturers will not face immediate compliance costs because they "have already … undergone significant engineering and administrative control revamps." Mot. 11. This argument is baffling in multiple respects. For one thing, it appears that EPA does not understand its own regulation. The Rule does not permit manufacturers simply to assert that the status quo is good enough. Instead, they must assess what, if any, additional controls are feasible, implement any such controls, and explain to EPA's satisfaction why other controls were not feasible. *See* 89 Fed. Reg. at 102,628 (to be codified at 40 C.F.R. § 751.315(c)(1)–(2)). As

explained above, that process must begin immediately and will cost approximately $1 million. *See supra* at 12–13. And if manufacturers cannot sufficiently reduce TCE exposure levels through engineering controls, the Rule imposes a respirator mandate that, as explained above, will independently impose significant immediate costs on them. *See supra* at 13–14.

This argument also flatly contradicts the administrative record, and goes to the heart of what is arbitrary and capricious about this Rule. While it is true that battery-separator manufacturers ENTEK and Microporous *have* installed state-of-the-art engineering and administrative controls, the record is clear that even with those controls, they do not come anywhere near meeting the exposure limit prescribed by the Rule. *See* Alliance Stay Motion at 18 (citing ENTEK Comment Letter). The record thus demonstrates that manufacturers will *not* be able to rely on existing controls and will need to implement respirator programs, with all the associated, immediate costs that entails. *See id.* It is telling that to justify revoking the stay, EPA must contradict both the Rule and the record.

## CONCLUSION

For the foregoing reasons, the Court should confirm that the stay entered by the U.S. Court of Appeals for the Fifth Circuit remains in effect and should deny Respondents' motion to revoke the stay. Alternatively, if the Court concludes the stay did not transfer, the Court should enter an administrative stay of the Rule's effective date pending full consideration of the Alliance's and Microporous's stay motions.

January 21, 2025

Respectfully submitted,

/s/ *Barbara A. Smith*
Barbara A. Smith
**BCLP LLP**
211 North Broadway, Ste. 3600
St. Louis, MO 63102
Telephone: (314) 259-2367
barbara.smith@bclplaw.com


*Counsel for Microporous LLC*

/s/ *Daniel J. Feith*
Daniel J. Feith
Samuel B. Boxerman
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
dfeith@sidley.com


*Counsel for Alliance for a Strong U.S. Battery Sector*

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2025, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system, which served copies on all interested parties registered for electronic filing. I have also emailed a copy to the following:

**Counsel for Respondents**
Laura J. Brown Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3376
Laura.J.S.Brown@usdoj.gov

**Counsel for Petitioner Massachusetts Coalition for Occupational Safety and Health**
Rachel Smit
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 841-8188
rachel@fairworklaw.com

Randy S. Rabinowitz
Victoria L. Bor
OCCUPATIONAL SAFETY AND HEALTH LAW PROJECT, LLC
P.O. Box 3769
Washington, D.C. 20027
(202) 256-4080
(301) 785-3204
randy@oshlaw.org

victoriabor87@gmail.com

**Counsel for Petitioner Environmental Defense Fund**
Samantha Liskow
Environmental Defense Fund
257 Park Ave S.
New York, NY 10010
(212) 616-1247
sliskow@edf.org

**Counsel for United Steel, Paper United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO**
Randy S. Rabinowitz
Victoria L. Bor
OCCUPATIONAL SAFETY AND HEALTH LAW PROJECT, LLC
P.O. Box 3769
Washington, D.C. 20027
(202) 256-4080
(301) 785-3204
randy@oshlaw.org
victoriabor87@gmail.com

**Counsel for Petitioner Microporous LLC**
Ms. Melanie Black Dubis
Parker Poe Adams & Bernstein
P.O. Box 389
Raleigh, NC 27602-0389
melaniedubis@parkerpoe.com

**Counsel for Petitioner Center for Environmental Health**
Robert M. Sussman
Sussman & Associates
3101 Garfield St. NW
Washington DC 20008
bobsussman1@comcast.net
202-716-0118

**Counsel for Petitioners American Chemistry Council and Georgia Chemistry Council**
David Y. Chung
Warren Lehrenbaum
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
dchung@crowell.com

**Counsel for Petitioner Olin Corporation**
Keith Bradley
Kayla Marie Mendez
717 Seventeenth Street, Suite 1825
Denver, CO 80202
Tel: 303-830-1776
Fax: 894-9239
Keith.Bradley@squirepb.com
kayla.mendez@squirepb.com

Samuel B. Ballingrud
2550 M Street, NW
Washington, DC 20037
samuel.ballingrud@squirepb.com
W. Caffey Norman
2550 M Street NW
Washington, DC 20037
Tel: (202) 460-9495
caffeynorman@outlook.com

**Counsel for Petitioner Missouri Alliance for a Strong U.S. Battery Sector**
Barbara A. Smith
BRYAN CAVE LEIGHTON PAISNER, LLP 211 N. Broadway, Ste. 3600

St. Louis, MO 63102
(314) 259-2367
barbara.smith@bclplaw.com

**Counsel for Texas Chemistry Council, Inc.**
David A. Terry
Hunton Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, Texas 77002
(713) 220-3667
dterry@huntonak.com
blevey@huntonak.com

**Counsel for Petitioner Trent Capital LLC**
Brandon O. Moulard
PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree St. NE, Suite 1500
Atlanta, Georgia 30309
Phone: 678.690.5750
brandonmoulard@parkerpoe.com

**Counsel for Petitioner Ohio Chemistry Technology Council**
Robert J. Karl
Eric B. Gallon
Porter, Wright, Morris & Arthur LLP
41 S. High Street, Suite 3000
Columbus, OH 43215-6194
Telephone: 614-227-1925
Rkarl@porterwright.com
Egallon@porterwright.com

**Counsel for Petitioner United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO**
Randy Rabinowitz
Occupational Safety and Health Law Project, LLC P.O. Box 3769
Washington, D.C. 20027
202/256-4080

randy@oshlaw.org

Victoria L. Bor

Occupational Safety and Health Law Project, LLC P.O. Box 3769
Washington, D.C. 20027

301/785-3204

victoriabor87@gmail.com

/s/ *Daniel J. Feith*

DANIEL J. FEITH

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 32(c) and Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,469 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

Dated: January 21, 2025

/s/ *Daniel J. Feith*
DANIEL J. FEITH