# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## Nos. 25-1079,1080, 1081, 1083, 1084, 1118, 1132, 1133, 1183

ALLIANCE FOR A STRONG U.S. BATTERY SECTOR; TEXAS CHEMISTRY COUNCIL; MICROPOROUS, LLC;
OHIO CHEMISTRY TECHNOLOGY COUNCIL; OLIN CORPORATION;
MISSOURI ALLIANCE FOR A STRONG US BATTERY SECTOR; AMERICAN CHEMISTRY COUNCIL; GEORGIA CHEMISTRY COUNCIL; TRENT CAPITAL PARTNERS, LLC; PPG INDUSTRIES,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.

Respondents.

## MOTION TO INTERVENE IN SUPPORT OF RESPONDENT

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW), the International Union, United Automobile, Aerospace & Agricultural Workers of America, (UAW), and the Center for Environmental Health (CEH) (collectively referred to as "Movants" )

move to intervene in support of Respondents U.S. Environmental Protection Agency and Acting Administrator James Payne (collectively "EPA") and in opposition to the petitions for review filed by Industry Petitioners.[1]

Counsel for Movants contacted counsel for the other parties to determine their position on this motion. Counsel for EPA and the Environmental Defense Fund consent to the motion. Counsel for the various Industry Petitioners have either taken no position or have stated that they do not consent to this Motion.

USW, UAW and CEH have each filed a petition for review challenging a Final Rule of the Environmental Protection Agency (EPA), "Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA)," 89 Fed. Reg.102568 (Dec. 17, 2024) (the Rule).[2] Movants challenge the Rule because it does not fully eliminate the unreasonable risk EPA has identified and seek an order directing EPA to strengthen the rule. Movants seek to intervene in the seven cases filed by various industry parties that either must comply with the Rule or represent

---

[1] The Industry Petitioners are as follows (with the Third Circuit docket number for each petition indicated in parenthesis): Olin Corporation (No.25-1132); Missouri Alliance for a Strong US Battery Sector (No.25-1133); American Chemistry Council and Georgia Chemistry Council (No.25-1079); Trent Capital Partners (No. 25-1084); Microporous LLC (No.25-1080); Alliance for a Strong US Battery Sector and Texas Chemistry Council (No. 25-1083); Ohio Chemistry Technology Council (No.25-1081); and PPG Industries (No 25-1118).

[2] USW's petition is No. 25-1055; UAW's petition is No. 25-1098; CEH's petition is No. 25-1144.

owners and operators who must comply. The Industry Petitioners seek to weaken or invalidate the TCE Rule, and Movants desire to intervene on behalf of EPA to defend the rule from industry challenges. Intervention is particularly important because, as indicated by EPA's "Request to Extend Deadlines for Sixty Days: Withdrawal of Emergency Motion to Lift Stay," No. 25-1055, Docket No. 17 ("Request to Extend Deadlines"), the position of the new Administration on the Rule is not yet clear. These unique circumstances raise concerns that EPA may not adequately the interests of Movants.

Exposure to TCE is a serious, widespread and well- recognized health hazard. EPA has conducted a comprehensive risk evaluation on TCE under TSCA and determined that it presents an unreasonable risk to health. 89 Fed. Reg. 102572. TCE has an unusually large number of serious health effects, several of which are known to occur at very low levels of exposure. EPA found "that while some of the adverse effects from TCE exposure are experienced following acute single exposures, other risks are incurred following long-term, repeat exposures. . . . [F]etal cardiac defects and autoimmunity, are the most sensitive adverse effects following exposure." *Id*. TCE is also a demonstrated carcinogen that has been determined to cause liver and kidney tumors and non-Hodgkins lymphoma. Other non-cancer effects of TCE exposure include liver toxicity kidney toxicity,

3

neurotoxicity, immunosuppression, reproductive toxicity and developmental toxicity. *Id.*

Under section 6(a) of TSCA, 15 U.S.C. §2605(a), when EPA finds that a chemical substance presents an "unreasonable risk to health or the environment," the Agency "shall" promulgate a rule restricting the chemical "to the extent necessary so that the chemical substance no longer presents such risk."

TCE is used as a solvent, frequently in cleaning and degreasing (including spot cleaning, vapor degreasing, cold cleaning, and aerosol degreasing). Other solvent uses are in a variety of commercial and consumer applications, including in lubricants, adhesives and sealants, paints and coatings, and other miscellaneous products. EPA's risk evaluation found that these solvent uses present unreasonable risks.

Having found that TCE poses an unreasonable risk, EPA adopted the Rule challenged here to eliminate the risk. 89 Fed. Reg. 102571. The Rule does so by banning all consumer and industrial applications, in some cases immediately, and in others, after a transition period, during which owners/operators subject to the Rule must implement stringent worker protections. *Id.* EPA found that occupational exposure to TCE posed unreasonable risks at all exposure levels above .011 ppm – a level 10,000 times lower than the existing Occupational Safety and Health

Administration (OSHA) standard, 29 C.F.R. § 1910.1000 Table Z-2. However, because current analytic methods cannot detect TCE at .011 ppm, EPA set its occupational exposure limit at .2ppm – a level the Agency admits does not fully eliminate unreasonable risk to workers, but which it found could be measured through currently-available detection methods.

Two of the Movants, UAW and USW, are international unions whose members are occupationally exposed to TCE. CEH is a non-profit public interest organization with a long history of protecting consumers and communities from exposure to toxic chemicals. Movants have a strong interest in preserving the TCE Rule. Their claims that the Rule is not strong enough to protect workers and the public from TCE's toxic effects would obviously be undermined if Industry Petitioners' claims that the Rule is not justified prevail.

USW and UAW are labor unions that represent workers exposed to TCE on the job; the Rule promises their members long overdue protection from TCE exposures. Both unions have long histories of advocating for improved health and safety protection for their members and other workers, including advocating for protection from TCE's health effects. Health and safety is a mandatory subject of collective bargaining, as defined by the National Labor Relations Act. Each union has extensive safety and health programs, a keen interest in, and active advocacy

programs before, federal and state agencies to determine whether the chemicals to which their members are exposed pose unreasonable risks and, if so, a history of urging the adoption of company policies and government regulations to protect its members from those risks. And each union has a long history of participating in litigation, in this Court and others, to ensure Federal occupational and environmental regulation is strong enough to ensure their members do not suffer adverse health effects from on-the-job exposure.[3]

Founded in 1996, CEH is a national non-profit organization, whose mission is to protect people from toxic chemicals by working with communities, consumers, workers, government, and the private sector to demand and support business practices that are safe for public health and the environment. In particular, CEH works to protect children from toxic chemicals, as their behaviors and physical

---

[3] *See e.g., USW v. Auchter,* 763 F.2d 728 (3rd Cir. 1985) (USW challenges OSHA's hazard communication standard); *AISA v. OSHA,* 577 F.2d 825 (3rd Cir. 1975) (USW supports OSHA coke over standard); *United Steelworkers v. Marshall*, 647 F.2d 1189 (D.C. Cir. 1980) (UAW and USW support OSHA's lead standard); *Am. Iron & Steel Inst. v. OSHA*, 939 F.2d 975 (D.C. Cir. 1991) (UAW and USW support OSHA's lead remand); *UAW v. Pendergrass,* 878 F.2d 389 (D.C. Cir. 1989) (UAW supports OSHA's formaldehyde standard); *NABTU v. OSHA,* 878 F.3d 271 (D.C. Cir. 2017) (UAW and USW support OSHA's silica standard); *Safer Chemicals, Healthy Families v. EPA,* 943 F.3d 397 (9th Cir. 2019)(USW petitions for review of EPA's TSCA framework rule); *Neighbors for Environmental Justice v. EPA,* No. 20-72091 (9th Cir.) (USW challenges EPA's methylene chloride rule).

needs make them more vulnerable to toxic chemicals than adults. CEH pursues its mission using six strategies: product testing, corporate engagement, litigation, including under TSCA, communications, policy advocacy, and community involvement. Since TCE is a ubiquitous chemical, CEH supporters, staff and Board members likely are exposed to it and at risk of its adverse health effects.

## ARGUMENT

Intervention is warranted here: Movants fulfill all requirements of Federal Rule of Appellate Procedure 15(d), and intervention will ensure Movants can protect their significant interest in preserving and strengthening the TCE Rule.

Motions to intervene under Rule 15(d) must be filed within 30 days after the petition for review and include a "concise statement" of the movant's "interest" and "the grounds for intervention." Fed. R. App. P. 15(d). Application of this appellate rule is informed by the "policies underlying intervention" in district courts. *UAW, Local 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965). The Supreme Court and other Courts of Appeals look to Federal Rule of Civil Procedure 24 for further guidance on intervention. *See id.*; *Sierra Club, Inc. v. EPA*, 358 F. 3d 516, 517-18 (7th Cir. 2004); *Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1553 n.3 (D.C. Cir. 1985). In addition to timeliness,[4] movants for intervention as of right in

---

[4] This Motion is timely: The first of the Industry Petitions, No. 25-1132, was filed 30 days ago, on December 31, 2024. Fed.R.App.P. 15(d).

7

district courts must demonstrate (1) "a sufficient interest in the underlying litigation," (2) "a threat that the interest will be impaired or affected, as a practical matter," by the case's disposition, and (3) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).

This Court has recognized the "elasticity" of these requirements and observed that a "wooden" application of the rules would "contravene a major premise of intervention—the protection of third parties affected by pending litigation." *Id*. at 970-71. Other appellate courts agree that intervention requirements should "be construed liberally, and doubts resolved in favor of the proposed intervenor." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999); *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.").

**A. Movants Have A Strong Interest to Protect that Would Be Impaired by the Industry Petitioners' Challenge**

Federal Rule of Civil Procedure 24(a)(2) requires that to intervene by right, a party must claim "an interest relating to the property or transaction that is the subject of the action." This Court has found "pragmatism" to be a substantial factor to be considered in determining what interests are enough for intervention. *Kleiser,*

8

157 F.3d at 970, describing the test as "who might be disadvantaged by disposition of the action." *Id.* (citations omitted).

Each Movant has an undeniably strong interest in litigation concerning the validity of the TCE Rule. The TCE rule would ban several consumer products and many other uses of TCE and, for those uses permitted to continue, require owners and operators to ensure that workplace exposures do not exceed an exposure limit of .2 ppm -- providing workers with more than 1000 times the health protections that currently exist. 29 C.F.R. § 1910.1000, Table Z-2 (setting permissible exposure limit for TCE at 100 ppm). During EPA's rulemaking proceeding, the unions and CEH filed comments strongly supporting the TCE rule, and they are continuing to provide support by seeking to both protect and strengthen the Rule in these consolidated cases. The movants' members and supporters would experience concrete harm if the health safeguards afforded by the Rule were weakened or eliminated.

Movants meet the requirements of Federal Rule of Civil Procedure 24(a)(2) if "their interest *might* become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (emphasis in original). Here, Movants surpass this bar. There can be no doubt that UAW, USW and CEH all have a strong interest in preserving those health protections for their

members and supporters and that the success of the industry petitions would impair their ability to protect their interests by putting workers and communities at risk of adverse health effects. If the Industry Petitioners' challenges to the TCE Rule succeed, UAW and USW members and CEH supporters, staff and Board members exposed to TCE will lose vital health protections. Further, the Movants have a strong interest in succeeding in their claims that the TCE rule does not adequately protect their members, and if Industry Petitioners were to prevail, the petitions filed by the UAW, USW and CEH to strengthen the TCE rule will be more likely to fail.

### B.  Existing Parties May Not Adequately Represent Movants' Interests

The burden of establishing inadequacy of representation is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). A prospective intervenor need not demonstrate a certainty that existing parties will inadequately represent its interests, only that such representation "may be" inadequate. *Id.*

There is serious doubt as to whether EPA will adequately represent Movants' interest in preserving the health protections provided by the TCE Rule. On Jan. 24, 2025, EPA filed its "Request to Extend Deadlines," temporarily abandoning its effort to lift the existing administrative stay of the TCE Rule that the Fifth Circuit issued before the Multidistrict Litigation Panel transferred these cases to this Court. In that document, EPA informed the Court that the incoming Administration

planned to review the TCE Rule, consistent with an Executive Order on regulatory review. EPA has since published a notice in the Federal Register postponing the effective date of the TCE Rule for sixty days. EPA, "Delay of Effective Date for 4 Final Regulations Published by [EPA] Between November 29, 2024, and December 31, 2024," 90 Fed. Reg. 8254 (Jan. 28, 2025). Clearly, as a result of the change in administrations, EPA's position in this case is evolving, and there is substantial uncertainty over whether the new Administration's approach will be aligned with the Movants' interests in maximizing health protections for the workers and members of the public affected by the TCE rule.

Although there is a "rebuttable presumption" of adequacy when one party is a government agency "charged by law with representing [Movants'] interests," *Pennsylvania*, 888 F.3d at 60, "[w]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light," *Kleissler*, 157 F.3d at 972. Here, the government's willingness to defend the TCE Rule is in doubt. For that reason alone, it is clear that EPA "might" not adequately represent Movants' interest.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to intervene in

opposition to the Industry petitions for review and in support of Respondent EPA.

                                                            Respectfully submitted,
/s/Randy S. Rabinowitz
Randy S. Rabinowitz
Victoria L. Bor
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
Telephone: 202-256-4080
Telephone: 301-785-3204
randy@oshlaw.org
victoriabor87@gmail.com

Counsel for USW and USW

*/s/ Robert M. Sussman*
Robert M. Sussman
Sussman & Associates
3101 Garfield Street, NW
Washington DC, 20008
Telephone: 202-716-0118
bobsussman1@comcast.net

Counsel for Center for Environmental Health

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion for Leave to Intervene contains 2398 words, as counted by counsel's word processing system, and thus complies with the 5,200-word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

*/s/ Randy S. Rabinowitz*

Randy S. Rabinowitz

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January 2025, I served the Motion to Intervene In Support of Respondent on counsel of record by filing the Motion with the Court's CM/ECF system.

/s/ Randy S. Rabinowitz

**CERTIFICATE OF SERVICE**