## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

UNITED STEEL, PAPER, AND FORESTRY, )
RUBBER, MANUFACTURING, ENERGY, )
ALLIED INDUSTRIAL AND SERVICE )
WORKERS INTERNATIONAL UNION, )
AFL-CIO; ALLIANCE FOR A STRONG U.S. )
BATTERY SECTOR; TEXAS CHEMISTRY )   Lead Case No. 25-1055
COUNCIL; MICROPOROUS, LLC; )
MASSACHUSETTS COALITION FOR )   Consolidated with Case Nos.
OCCUPATIONAL SAFETY AND HEALTH; )   25-1079, 25-1080, 25-1081,
ENVIRONMENTAL DEFENSE FUND; )   25-1082, 25-1083, 25-1084,
OHIO CHEMISTRY TECHNOLOGY )   25-1093, 25-1098, 25-1118,
COUNCIL; OLIN CORPORATION; )   25-1132, 25-1133, and 25-1144
MISSOURI ALLIANCE FOR A STRONG )
US BATTERY SECTOR; CENTER )
FOR ENVIRONMENTAL HEALTH; )
AMERICAN CHEMISTRY COUNCIL; )
GEORGIA CHEMISTRY COUNCIL; )
TRENT CAPITAL PARTNERS, LLC; )
UNITED AUTOMOBILE AEROSPACE; )
AGRICULTURAL IMPLEMENT )
WORKERS OF AMERICA, AFL-CIO; )
and PPG INC. )
                                  )
      Petitioners, )
                                    )
v. )
                                    )
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, ET AL. )
                                    )
      Respondents. )
_____ )

## ENVIRONMENTAL DEFENSE FUND'S OPPOSED MOTION FOR
## LEAVE TO INTERVENE IN SUPPORT OF RESPONDENTS

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27, Environmental Defense Fund moves for leave to intervene in support of U.S. Environmental Protection Agency ("EPA") and its Administrator (collectively, "Respondents") in the petitions in this consolidated case challenging EPA's regulation "Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA)," 89 Fed. Reg. 102568 (Dec. 17, 2024) ("Rule"), except for any petitions challenging the Rule as insufficiently stringent.

Counsel for the following Petitioners consent to the filing of this motion: Respondents Environmental Protection Agency and its Administrator; Center for Environmental Health; Massachusetts Coalition for Occupational Safety and Health; United Automobile Aerospace and Agricultural Implement Workers of American, AFL-CIO; and United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO.

Counsel for the following Petitioners take no position on the filing of this motion: American Chemistry Council; Georgia Chemistry Council; and the Texas Chemistry Council. Counsel for Petitioner Olin Corporation takes no position for now on the filing of this motion.

Counsel for the following Petitioners <u>do not consent</u> to the filing of this motion: Alliance for a Strong US Battery Sector; Microporous, LLC; Missouri Alliance for a Strong US Battery Sector; and Trent Capital Partners.

**INTRODUCTION**

For decades, the highly toxic and cancer-causing chemical trichlorethylene ("TCE") has harmed workers and communities around the country, including residents of Woburn, Massachusetts and Camp Lejeune, North Carolina. *See* EPA, *Biden-Harris Administration Announces Latest Actions under Nation's Chemical Safety Law to Protect People from Cancer-Causing Chemicals Trichlorethylene and Perchlorethylene* (Dec. 9, 2024).[1] With its Rule, EPA has required an eventual ban of TCE. Companies and trade groups who have opposed the regulation of TCE have filed petitions in this case. *See* EPA, Response to Public Comments on Proposed TCE Rule (Nov. 20, 2024), EPA-HQ-OPPT-2020-0642-0726.

EDF's members live and work in communities near such companies' facilities that use and manufacture TCE. The Rule thus provides critical safeguards for the health and welfare of EDF's members, and EDF therefore has a concrete interest in defending against the challenges to those safeguards and in ensuring the Rule's timely implementation. In addition, Respondents may not adequately

---

[1] https://www.epa.gov/newsreleases/biden-harris-administration-announces-latest-actions-under-nations-chemical-safety-law

represent EDF's interests. The Court should grant EDF's timely motion to intervene.

**BACKGROUND**

### I. The Amended Toxic Substances Control Act Requires EPA to Address the Unreasonable Risks from Chemicals Such as TCE

In enacting the Toxic Substances Control Act ("TSCA"), Congress aimed to protect the public from toxic chemicals' risks, starting with their manufacture and continuing through their lifecycle, through disposal. "[T]he oveararching purpose of … TSCA is to protect the public from chemicals that pose an unreasonable risk to health and the environment." *Food & Water Watch v. EPA*, 302 F. Supp. 3d 1058, 1066 (N.D.Cal. 2018); *see also* S. Rep. No. 94-698, at 1 (1976). However, the law proved ineffective at spurring significant regulation of toxic chemicals, and in 2016, Congress substantially amended TSCA. Senator Edward Markey, a sponsor of the final reform legislation, specifically referenced EPA's failure to regulate TCE as a reason for reform:

> Woburn, Massachusetts was a good example of the community that had just been ravaged by industries, Monsanto, W.R. Grace and others, just using the land and the water as a dumping ground for TCE. By the way, under [the amended] TSCA, the EPA just might be able to ban TCE in the years ahead . . . hopefully TSCA will make that possible.

*Oversight of U.S. Environmental Protection Agency Enforcement and Compliance Programs, Hearing Before the Subcomm. on Superfund, Waste Mgmt. & Regul.*

*Oversight of the S. Comm. on Env't and Pub. Works*, 114th Cong. 41 (2016) (statement of Sen. Ed Markey).

With its amended law, Congress overhauled the way EPA evaluates and manages risks of existing chemicals. Congress directed EPA to conduct risk evaluations for certain chemicals, like TCE, that entered commerce in this country without having been approved by EPA. 15 U.S.C. § 2605(b)(4). In these evaluations, EPA must determine whether the chemical presents an "unreasonable risk of injury to health or the environment," without considering costs or other "nonrisk" factors. 15 U.S.C. § 2605(b)(4)(A). The Agency must also identify "potentially exposed or susceptible subpopulation[s]" and consider the risks to these groups from the chemical. *Id.*; 15 U.S.C. § 2602(12). If EPA finds that the chemcial poses unresonable risk, it must issue a risk management rule that fully eliminates such risk. 15 U.S.C. § 2605(a).

## II. EPA Determined that TCE Poses Unreasonable Risk and Issued a Rule to Eliminate the Risk

TCE is carcinogenic to humans "by all routes of exposure." 89 Fed. Reg. at 102574. In its peer-reviewed risk evaluation, EPA determined that TCE damages human development, reproductive organs, nervous systems, livers, kidneys, and immune systems. EPA, *Fact Sheet: 2024 Final Risk Management Rule for*

*Trichloroethylene under TSCA*, EPA Document #740F24015.[2] The chemical is also associated with Parkinson's Disease. 89 Fed. Reg. at 102574. Even when a person is exposed to low levels of TCE for short amounts of time, it can cause fetal heart defects. 89 Fed. Reg. at 102579. EPA identified men and women of reproductive age, adolescents, and workers – among other groups – as TCE's "potentially exposed or susceptible subpopulations." 15 U.S.C. § 2605(b)(4)(A).

Under TSCA, EPA made a risk determination that TCE presents unreasonable risk to people, which required the Agency to regulate the chemical "to the extent necessary so that the chemical … no longer presents such risk." 15 U.S.C. § 2605(a); EPA, Unreasonable Risk Determination for TCE (Dec. 2022).[3] EPA accomplished this by issuing a ban on TCE's use and manufacture. 89 Fed. Reg. 102568 (Dec. 17, 2024). However, the Agency provided multi-year "phase-outs" and exemptions for a number of TCE uses. EPA, *Fact Sheet*, https://www.epa.gov/system/files/documents/2024-12/tce-fact-sheet.pdf. EPA required companies who would still be using or manufacturing TCE under these exceptions to comply (beginning in September 2025), with a "Workplace Chemical

---

[2] https://www.epa.gov/system/files/documents/2024-12/tce-fact-sheet.pdf

[3] https://www.epa.gov/system/files/documents/2023-01/TCE_Final%20Revised%20RD_12-21-22-FINAL-v2.pdf

Protection Plan" to address risks to workers who will continue to be exposed to the chemical. *Id.*

### III.   EDF Seeks to Defend the Rule's Health Protections

Petitioners Alliance for a Strong U.S. Battery Sector, Microporous, and PPG seek to stay the Rule's effective date. Dckt. Nos. 9 (Case No 25-1055), 14-1 (Case No. 25-1080), and 2 (Case No. 25-1118). Additional Petitioners represent companies or trade groups who all, presumably, use or manufacture TCE. EDF is a national organization that seeks to protect people's health and well being, including that of their members, against harm from toxic chemicals. *See* Varner Declaration, D006. For years, EDF has urged EPA, through administrative comments, advocacy campaigns, and hearings before the Agency, to issue a regulation protecting people from TCE. *Id.*

For the reasons described below, EDF requests to participate in defending the Rule against challenges any Petitioners may bring that, if granted by the Court, could weaken or undermine the Rule.

### ARGUMENT

EDF fulfills all requirements of Federal Rule of Appellate Procedure 15(d), and intervention will ensure EDF can protect its significant interest in defending the Rule.

Motions to intervene under Rule 15(d) must be filed within 30 days after the petition for review is filed and include a "concise statement" of the movant's "interest" and "the grounds for intervention." The Supreme Court and other Courts of Appeals look to Federal Rule of Civil Procedure 24 for further guidance on intervention. *See Building & Constr. Trades Dep't v. Reich,* 40 F.3d 1275, 1282–83 (D.C. Cir. 1994). Thus, in addition to timeliness, movants for intervention as of right in district courts must demonstrate (1) "a sufficient interest in the litigation," (2) "a threat that the interest will be impaired or affected, as a practical matter," by the case's disposition, and (3) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). *See also* Federal Rule of Civil Procedure 24(a)(2).

This Court has recognized the "elasticity" of these requirements and observed that a "wooden" application of the rules would "contravene a major premise of intervention—the protection of third parties affected by pending litigation." *Id.* at 970-71. Other courts agree that intervention requirements should "be construed liberally, and doubts resolved in favor of the proposed intervenor." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999). *See also United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002)

("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.") (citations omitted).

## A. EDF's Motion is Timely

Olin Corporation filed its petition for review on December 31, 2024. Dckt. No. 24-3634 (8th Circuit), and other petitions were later filed in various Courts of Appeals. This motion is thus timely. Federal Rule of Appellate Procedure 15(d).

## B. EDF and Its Members Have a Clear Interest in the Rule

EDF and its members have a clear "interest" in this matter within the meaning of Federal Rule of Appellate Procedure 15(d). *See* Declarations, D001-D008. EDF's members live, work, breathe, and spend time outdoors near facilities that emit TCE and are covered by the Rule. *Id.* Exposure to TCE in the air, water, and soil may harm members' health and welfare. Moreover, members and their family and friends who have particular vulnerability or heightened exposures, such as pregnant people and their infants, people who are exposed both at work and at home, and people with preexisting health conditions, may be particularly harmed by their exposure to TCE from the regulated facilities. *Id.*

EDF meets the Federal Rule of Civil Procedure 24(a)(2) requirements if its "interest <u>might</u> become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995). EDF well surpasses

this. If Petitioner companies prevail in this litigation, the Rule may be weakened or undone, which would prolong and exacerbate EDF members' exposure to the toxic substance, and deny them the Rule's "benefit[s]." *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015) (interest prong is met "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit"). *See also Pennsylvania v. President, United States of America*, 888 F.3d 52, 58-59 (3d Cir. 2018).

Intervenors in petitions for review of agency actions need not show Article III standing. EDF seeks to intervene in support of Respondents and thus does not affirmatively invoke this Court's jurisdiction. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (explaining that "it was not … incumbent on [a party] to demonstrate its standing" when it participated "as an intervenor in support of the State Defendants," or "as an appellee" on appeal, "[b]ecause neither role entailed invoking a court's jurisdiction"). In the alternative, for the reasons set forth above and as demonstrated by the accompanying declarations, EDF's interests at stake establish standing. *See* Declarations, D001-008; *Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019) (finding standing for petitioner environmental group challenging a facility's Clean Air Act permit, which if

modified could reduce air pollution and "alleviate harm [its] members continue to suffer").

## C. EDF's interests may not be adequately represented by EPA

Finally, the EPA Respondents may not adequately represent EDF's interests. EDF's burden to show that the existing parties may not adequately represent their interests is "minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). The burden is satisfied by a "potential" conflict, *Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986), or the "possibility of disparate interests," even where one "cannot predict now the specific instances" in which conflicts will arise. *NRDC v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977). The test for adequacy of representation is "not onerous" and the standard is "low." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735, 736 n.7 (D.C. Cir. 2003).

In applying this test to cases where a private party seeks to intervene on the side of a government entity, the D.C. Circuit "ha[s] often concluded that governmental entities do not adequately represent the interests of aspiring intervenors," *Fund for Animals*, 322 F.3d at 736. Mere general alignment of EDF and EPA on defending EPA's Rule, if such alignment exists, is not dispositive. *See id.* ("[T]reating general alignment as dispositive ... [goes] against the weight of authority in this Circuit.").

EDF and its members have a unique interest in defending the Rule because they face distinct harm from the TCE emitted by facilities regulated under the Rule. EPA does not face the same type of harm and, thus, does not have EDF's same interests.

Further, "skeptic[ism] [regarding] government entities serving as adequate advocates for private parties" is specifically warranted here. *Crossroads*, 788 F.3d at 321. EPA recently moved to withdraw its motion to lift the Fifth Circuit stay of the Rule, which the Agency had filed only nine days before, on January 15, 2025. Dckt. Nos. 4 and 17 (Case No. 25-1055). Therefore, there is certainly a "possibility" that EPA will change positions during this litigation, *Costle*, 561 F.2d at 912. That potential for adversity is sufficient to establish that EPA may be an inadequate representative. *Mandan, Hidatsa and Arikara Nation v. U.S. Dep't of the Interior*, 66 F.4th 282, 284-85 (D.C. Cir. 2023) (a change in agency litigating position "in itself is enough to disqualify [the agency] as a faithful representative"); *Fund For Animals*, 322 F.3d at 737 (explaining actual adversity is not required). Thus, the possibility that EPA will shift its policy supports a finding that EPA may not be an adequate representative. *Kleissler*, 157 F.3d at 974 ("it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts"). *See also Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 111 (M.D. Pa. 2011) (finding that EPA may not provide adequate

representation to proposed intervenor who argued that divergence of interests "may lead EPA to settle or otherwise resolve this litigation in a matter unfavorable to [EDF's] interests, or may dissuade EPA from appealing a decision that adversely affects [EDF's] interests").

Finally, assuming that EPA does not change positions and continues to support its Rule, EDF "may well have honest disagreements with EPA on legal . . . matters" and thus may advance different legal arguments in support of the Rule. *Costle*, 561 F.2d at 912.

## CONCLUSION

For the reasons stated above, EDF respectfully requests that the Court grant it leave to intervene in support of Respondents in all challenges to the Rule, except for any petitions challenging the Rule as insufficiently stringent.

Dated: January 30, 2025

Respectfully submitted,

*/s/* Samantha Liskow
Samantha Liskow
ENVIRONMENTAL DEFENSE FUND
257 Park Ave S
New York, NY 10010
(212) 616-1247
sliskow@edf.org

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure ("Rule") 27(d)(2)(A) because it contains 2,460 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). The motion also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED: January 30, 2025

*/s/ Samantha Liskow*
Samantha Liskow

## CERTIFICATE OF THIRD CIRCUIT BAR MEMBERSHIP

Pursuant to Local Appellate Rule 28.3(d), I certify that I am a member of the bar of this Court.

Dated: January 30, 2025

/s/ Samantha Liskow
Samantha Liskow

**CERTIFICATE OF SERVICE**

I certify that today I filed the foregoing motion and the accompanying declarations on counsel of record by filing this document with the Clerk of the Court for the United States Court of Appeals for the Third Circuit, through the Electronic Case Filing (ECF) system.

DATED: January 30, 2025

*/s/ Samantha Liskow*
Samantha Liskow

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

UNITED STEEL, PAPER, AND FORESTRY, )
RUBBER, MANUFACTURING, ENERGY,   )
ALLIED INDUSTRIAL AND SERVICE    )
WORKERS INTERNATIONAL UNION,     )
AFL-CIO; ALLIANCE FOR A STRONG U.S. )
BATTERY SECTOR; TEXAS CHEMISTRY  )        Lead Case No. 25-1055
COUNCIL; MICROPOROUS, LLC;       )
MASSACHUSETTS COALITION FOR      )        Consolidated with Case Nos.
OCCUPATIONAL SAFETY AND HEALTH; )          25-1079, 25-1080, 25-1081,
ENVIRONMENTAL DEFENSE FUND;      )          25-1082, 25-1083, 25-1084,
OHIO CHEMISTRY TECHNOLOGY        )          25-1093, 25-1098, 25-1118,
COUNCIL; OLIN CORPORATION;       )          25-1132, 25-1133, and 25-1144
MISSOURI ALLIANCE FOR A STRONG   )
US BATTERY SECTOR; CENTER        )
FOR ENVIRONMENTAL HEALTH;        )
AMERICAN CHEMISTRY COUNCIL;      )
GEORGIA CHEMISTRY COUNCIL;       )
TRENT CAPITAL PARTNERS, LLC;     )
UNITED AUTOMOBILE AEROSPACE;     )
AGRICULTURAL IMPLEMENT           )
WORKERS OF AMERICA, AFL-CIO;     )
and PPG INC.                     )
                                 )
    Petitioners,             )
                                 )
v.                               )
                                 )
UNITED STATES ENVIRONMENTAL      )
PROTECTION AGENCY, ET AL.        )
                                 )
    Respondents.             )
_____ )

## DECLARATIONS ACCOMPANYING ENVIRONMENTAL DEFENSE
## FUND'S MOTION FOR LEAVE TO INTERVENE

# TABLE OF CONTENTS

**Declaration**                                                                                           **Page**

Declaration of Angela Esslinger …………………………………………….DEC-001

Declaration of Paige Varner …………………………………………….…...DEC-006

# DECLARATION OF ANGELA ESSLINGER

I, Angela Esslinger, declare as follows:

1.       My name is Angela Esslinger. I have been a member of Environmental Defense Fund ("EDF") since 2015. I became particularly interested in environmental issues when I learned about threats to environmental protections. I stay involved by reading about issues such as toxic chemicals, signing petitions to agencies, and educating my friends on social media.

2.       My family and I have resided on our block in Wichita, Kansas, for 45 years. We bought a house on this block in 1979. Ten years later, we bought and moved into the house next door.

3.       I currently live in the house with my husband. My husband is 72, and I will turn 70 next month. We are both retired and spend a lot of our time at home. We plan to stay in this house.

4.       All of my children and grandchildren live in the area. I have four children, ten grandchildren and one great grandchild, who is two years old.

5.       The two-year-old, along with the younger grandchildren, come to my house frequently. My husband and I babysit the children, and they also come over to visit with their parents. When the children are over, they play outside constantly.

6. My husband and I also are outside as much as weather permits, either working in the yard, being with our two dogs, or watching and playing with the grandchildren.

7. From the environmental news I have read and the petitions I have signed, I learned about the chemical trichlorethylene, also known as TCE. I became aware that the chemical was very toxic and that the Environmental Protection Agency was trying to regulate it.

8. I have more recently learned that five separate facilities near my home emit TCE. I am aware that, according to data reported to the EPA Toxic Release Inventory, the facilities Spirit Aerosystems, Textron Aviation, 3P Processing, Globe Engineering, and Metal Finishing combined, from 2017 to 2022, have reported emitting over 400,000 pounds of TCE.

9. Most of my children and grandchildren also live near these facilities.

10. My husband worked for years at the Spirit facility, as an industrial engineer. I now have a son-in-law who works at the same plant. And, my son works at the Textron facility. He works with various chemicals, and wears gloves for protection. These activities likely have increased my family's exposure to TCE.

11. I am aware that data from EPA's Toxics Release Inventory indicates that some of the facilities near me have some of the highest releases of TCE across the country. In fact, because of these releases, my census block group has greater

2

cancer risks from TCE than 99% of the rest of the block groups in the country, according to EPA's AirToxScreen.

12.     Our area has long dealt with toxic issues. A train spilled TCE into our soil that has contaminated our groundwater for many years.

13.     Down on Kellogg, there is a company that refines old oil. When they are processing it, we get smells like a rendering plant.

14.     About two years ago, I began noticing a film that would develop on top of the water in our bird bath. I've called my husband out to look at it, and we could not figure out what it was. I often dump out the water and refill the bird bath, but the next day, the film will be back.

15.     My husband and I both have asthma. Our symptoms did not develop until the mid-1980s.

16.     Five of my grandchildren have asthma. They seem to have particular trouble with their asthma when there is a strong wind outside. My six-year-old granddaughter and my 12-year-old grandson cannot be around a campfire without their symptoms becoming severe, and that grandson was hospitalized during an asthma attack. My son-in-law was also hospitalized for asthma.

17.     Two other of my grandchildren repeatedly get sick and get infections.

18.     I worry about my health and the health of my family. I understand that TCE is a concern, and a potential health harm, particularly because we are close to

3

so many facilities that release it. I understand that TCE causes cancer, and can affect the nervous system, kidneys, and liver. Even small amounts can be highly toxic and can hurt the immune system and development during pregnancy. I am also concerned about the harms from breathing in other industrial emissions in my area, which can cause some of the same health effects as TCE and increase the risk and severity of these harms.

19.     I worry about my grandchildren playing outside – especially those children with asthma – and I worry about the fact that TCE harms fetuses, as I have children and grandchildren who are likely to have more children. After learning about TCE emissions near me from the facilities, I do not feel as comfortable with my family being outside.

20.     I understand that EPA issued a regulation to ban TCE. I also understand that it is now being challenged in a court case. It is very important to me that this law stay in place, so that the TCE emissions in our community will stop.

21.     I am submitting this declaration in support of the intervention and litigation of EDF to help show why the national TCE rule should not be weakened, and should be strengthened, to protect our health from the TCE emissions in our area, and to prevent and reduce the serious harm that my family and my community face from these sources' pollution.

I declare under the penalty of perjury that, to the best of my knowledge, the above is true and correct

Date: January 29, 2025.

Angela Esslinger

5

# DECLARATION OF PAIGE VARNER

I, Paige Varner, declare as follows:

1.      I am a scientist at Environmental Defense Fund ("EDF"). In this role, I work within the Healthy Communities department to integrate scientific knowledge on environmental health and toxicology to reduce exposure to toxic chemicals and protect public health. The information in this declaration is based on my personal knowledge and experience. I am submitting this declaration in support of EDF's motion to intervene on behalf of Respondents in the case, in the U.S. Court of Appeals in the Third Circuit, that consolidated petitions for review of EPA's Trichloroethylene TSCA rule ("Rule").

2.      Through my role, I am familiar with EDF's structure, mission, activities, and membership. EDF is a national nonprofit organization that links science, economics, and the law to create innovative, equitable, and cost-effective solutions to urgent environmental problems. EDF is one of the world's largest environmental organizations, with hundreds of thousands of members across the United States and a staff of over 1,000 scientists, policy experts, and other professionals from around the world.

3.      EDF was founded in 1967 to address the impacts of the toxic pesticide DDT. Since then, EDF has continued to advocate for regulation of toxic chemicals.

EDF played a central role in the 2016 bipartisan reform of the Toxic Substances Control Act ("TSCA").

4.     Since passage of TSCA's amendments, EDF has closely tracked every aspect of implementation of the new law, continuously advocating for health- and environment-protective practices, policies, and regulations. EDF has filed thousands of pages of comments on EPA's proposed actions, publicly reported on the Agency's policies and rules implementing the reforms, and engaged with EPA in public meetings.

5.     EDF has long advocated for regulation of the toxic chemical trichloroethylene ("TCE") that would protect the health of people living in this country, including our members. Many of our members are exposed to TCE. For example, focusing on just a subset of EDF members who may be exposed to TCE – specifically, those who reside near U.S. facilities that use TCE for an industrial process known as batch vapor degreasing or for producing the HFC 134a gas – over 8,000 EDF members reside within ten miles of these facilities. Some of these members live in Census block groups that have cancer risks from TCE greater than 99% of the rest of the U.S.

6.     EDF and its members have engaged in many activities to reduce harm from TCE. For example, in 2023 over 10,000 EDF members responded to an "action alert" to have comments submitted to EPA urging the Agency to rapidly

ban TCE. And EDF staff have submitted over 15 administrative comments to EPA, and testified at hearings, urging the Agency to fully evaluate the risks of TCE, and then issue a fully protective TSCA regulation.

7.      The Rule contains significant protections for EDF's members for which EDF has long advocated. If the Court grants any petitioners' request to narrow or undo the Rule, it will harm the many EDF members who are exposed to TCE, along with many others in this country.

I declare under the penalty of perjury that, to the best of my knowledge, the above is true and correct.

Date: January 30, 2025

_____
Paige Varner, PhD