# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | |
|---|---|
| UNITED STEEL, PAPER, AND FORESTRY, ) <br> RUBBER, MANUFACTURING, ENERGY, ) <br> ALLIED INDUSTRIAL AND SERVICE ) <br> WORKERS INTERNATIONAL UNION, ) <br> AFL-CIO; ALLIANCE FOR A STRONG U.S. ) <br> BATTERY SECTOR; TEXAS CHEMISTRY ) <br> COUNCIL; MICROPOROUS, LLC; ) <br> MASSACHUSETTS COALITION FOR ) <br> OCCUPATIONAL SAFETY AND HEALTH; ) <br> ENVIRONMENTAL DEFENSE FUND; ) <br> OHIO CHEMISTRY TECHNOLOGY ) <br> COUNCIL; OLIN CORPORATION; ) <br> MISSOURI ALLIANCE FOR A STRONG ) <br> US BATTERY SECTOR; CENTER ) <br> FOR ENVIRONMENTAL HEALTH; ) <br> AMERICAN CHEMISTRY COUNCIL; ) <br> GEORGIA CHEMISTRY COUNCIL; ) <br> TRENT CAPITAL PARTNERS, LLC; ) <br> UNITED AUTOMOBILE AEROSPACE; ) <br> AGRICULTURAL IMPLEMENT ) <br> WORKERS OF AMERICA, AFL-CIO; ) <br> PPG INC.; and VINYL INSTITUTE ) <br> ) <br>     Petitioners, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES ENVIRONMENTAL ) <br> PROTECTION AGENCY, ET AL. ) <br> ) <br>     Respondents. ) <br> _____ ) | Lead Case No. 25-1055 <br><br> Consolidated with Case Nos. <br>  25-1079, 25-1080, 25-1081, <br>  25-1082, 25-1083, 25-1084, <br>  25-1093, 25-1098, 25-1118, <br>  25-1132, 25-1133, 25-1144, <br>  and 25-1509 |

## OPPOSITION OF LABOR AND ENVIRONMENTAL PETITIONERS TO EPA'S MOTION TO HOLD THIS CASE IN ABEYANCE <u>FOR AN ADDITIONAL 60 DAYS</u>

## INTRODUCTION

Despite finding trichloroethylene (TCE) to be a potent toxin threatening the health of tens of thousands and publishing a rule to prevent the harm from continuing, the Environmental Protection Agency (EPA) is blocking the protections from taking effect by seeking yet another abeyance that will maintain an overbroad and unjustified stay of the regulation that has never received judicial scrutiny. Petitioners, who represent labor unions, consumers, and communities who would be protected from exposure to TCE by the rule's requirements, oppose a further abeyance that will unnecessarily place these populations at risk of cancer, birth defects, and other life-threatening effects.

At issue in these consolidated cases is the EPA risk management rule (the Rule) for TCE under the Toxic Substances Control Act (TSCA). 89 Fed. Reg. 102568 (December 17, 2014). TCE is used widely in industrial and consumer applications and has extensively contaminated drinking water. Tens of thousands of workers, consumers, and members of the public are exposed to TCE through skin contact and by breathing TCE vapors. 89 Fed. Reg. 102612.

In its comprehensive 2020 risk evaluation, EPA found that TCE causes multiple health harms at very low levels of exposure, including several types of cancer, immune suppression, kidney and liver disease, and cognitive and neurological harm. 89 Fed. Reg. 102574. The substance has also been linked with Parkinson's disease. *Id*. In recognition of these serious threats to health, EPA determined that the only way to protect exposed

2

populations was to phase out TCE use. Accordingly, the Rule imposes broad prohibitions on the manufacture, processing, and use of TCE. As promulgated, the Rule generally requires production of TCE to cease on March 17, 2025, processing and distribution of TCE and many TCE-containing products to end as of June 15, 2025, and industrial and commercial use of TCE and TCE-containing products to terminate by September 15, 2025. 40 C.F.R. § 751.305.

However, to ease the burdens of compliance, the Rule allows numerous industry sectors to continue using TCE for extended periods (twenty to fifty years depending on the sector) before they must transition to safe substitutes. *See* 40 C.F.R. § 751.325. These exemptions are conditioned on compliance with worker protection standards, portions of which begin to apply on June 16, 2025, and which must be fully implemented by December 16, 2025. 40 C.F.R. § 751.315.

As promulgated, the TCE Rule was to go into effect on January 16, 2025. 89 Fed. Reg. 102568. However, three days before the effective date, a divided motions panel of the Fifth Circuit, acting before EPA filed a response, issued a temporary administrative stay of the entire Rule because a petitioner from one industry sector – lead battery separators – claimed it could not comply with the Rule's workplace protection requirements. Case No. 25-1055, Dckt. No. 44-2, at 4-5. Before EPA could respond to the merits of the stay motion, the Fifth Circuit case was transferred to this Court as a

result of an order of the Panel for Multi-District Litigation. Accordingly, the Fifth Circuit never addressed the merits of the stay.

Once the case was docketed in the this Court on January 14, 2025, EPA promptly moved to vacate the administrative stay, voicing concern about a delay of the Rule's public health protections. Case No. 25-1082, Dckt, No. 4. However, on January 24, 2025, EPA withdrew its motion and sought a 60-day postponement of all deadlines in the case to enable the new Administration to review the Rule. Case No.25-1144, Dckt. No. 5. This Court granted EPA's motion on January 27, 2025. Dckt. No. 18. As a result, two months later, the TCE Rule remains on hold even though there has been no judicial determination whether the stringent criteria have been met for staying agency action.

Equally troubling, the stay suspends compliance with the entire Rule, despite the fact that the stay movants represent a minuscule portion of the industry sectors the Rule covers and no evidence has been presented to justify staying any portions of the Rule beyond the workplace requirements applying to them. Accordingly, the health protections the Rule promises are on hold for all of TCE's many uses, leaving large populations exposed.

EPA now seeks an additional 60-day postponement of deadlines in this case. Case No. 25-1055, Dckt. No. 44-2. To grant this request without lifting the temporary administrative stay would circumvent the well-established criteria for blocking agency action from taking effect. This would leave the labor and environmental petitioners and

4

the TCE-exposed populations they represent without the ability to oppose the stay and present the case for immediate effectiveness of the Rule.

While an incoming administration has a right to reexamine its predecessors' rules, that does not mean a court must hold in abeyance a pending legal challenge to a rule of the former administration merely because an agency's new leadership seeks to review it. The agency "bears the burden of showing that the circumstances justify" abeyance, *Nken v. Holder*, 556 U.S. 418, 433–34 (2009), and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to some one else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

EPA has not shown in its new abeyance motion why it needs 60 more days to continue to review the Rule. Nor has it explained why that review cannot proceed in parallel with further briefing and adjudication of the stay motions. Indeed, those stay motions would effectively be "granted" if all deadlines in this case are suspended, as EPA's motion demands. The only "prejudice" to EPA from leaving the current deadlines in place is that it would need to respond to the stay motions promptly and explain (if it supports granting the motions) why it believes the movants meet the stringent four-part test for staying agency regulations.

On the other side of the ledger, as EPA itself acknowledged when it earlier moved to vacate the stay, the important public health interests that the Rule advances would be

effectively blocked if this case is frozen for another 60 days. By keeping the stay in place by default, a further abeyance would result in delaying all protections afforded by the Rule without a judicial determination that the pause of the Rule is warranted. This would leave workers and consumers at risk of birth defects and immune suppression from short-term TCE exposure and cancer and other chronic health effects from long-term exposure. To withhold the Rule's vital health benefits by delaying briefing on a stay of the entire rule that has never been justified or judicially scrutinized would be unwarranted and inequitable. Accordingly, based on the balance of equities, the Court should deny EPA's abeyance motion, promptly vacate the Fifth Circuit's temporary administrative stay of the entire Rule, and decide whether to grant or deny the narrower stays of the Rule sought by the industry movants.

## THE TCE RULE

TSCA, the nation's principal law for addressing unsafe chemicals, was strengthened in 2016 by the Lautenberg Chemical Safety for the 21st Century Act, which was enacted by an overwhelming bipartisan majority. Pub. L. No. 114-182, 130 Stat. 448 (June 22, 2016). The new framework required by Congress created a two-part process for addressing chemicals that raise serious health or environmental concerns. First, EPA must conduct an evaluation of the chemical's toxicity and exposure profile and determine whether it presents an unreasonable risk of injury, without consideration of costs or other nonrisk factors, under its conditions of use. 15 U.S.C. § 2605(b)(3)-(4). If the Agency

finds that the chemical poses an unreasonable risk to health or the environment, EPA is then required to issue a risk management rule imposing requirements necessary to eliminate that risk. *Id.* § 2605(a), (c). Congress established enforceable deadlines to ensure that risk evaluations and risk management rules were completed expeditiously. *Id*. § 2605(b)(2)(A)-(C), (c)(1).

EPA's first task under the 2016 TSCA amendments was to evaluate the risks of 10 widely-used chemicals that were long known to cause serious health effects, *id.* § 2605(b)(2)(A), and TCE was selected as one of these substances. 81 Fed. Reg. 91927 (December 19, 2016). EPA's peer-reviewed risk evaluation for TCE was completed in 2020, under the Trump Administration. https://www.epa.gov/sites/default/files/2020-11/documents/1._risk_evaluation_for_trichloroethylene_tce_casrn_79-01-6.pdf. The evaluation (supplemented in December 2022) found unreasonable risks to workers and consumers for 52 out of 54 known TCE uses. EPA, Unreasonable Risk Determination (Dec. 2022).[1] According to the evaluation, people are exposed to TCE in numerous ways, including through vapors that enter homes and workplaces and are inhaled, via ingestion of contaminated drinking water, during skin contact from workplace exposure, and by using consumer products like spot removers, hobby kits, and brake cleaners.

---

[1] https://www.epa.gov/system/files/documents/2023-01/TCE_Final%20Revised%20RD_12-21-22-FINAL-v2.pdf

Through the comprehensive, peer-reviewed evaluation, EPA found that TCE "is carcinogenic to humans by all routes of exposure." 89 Fed. Reg. at 102574. TCE harms health even at very low levels of exposure, and its many hazards in addition to cancer are well established. Proposed Rule: "TCE, Regulation Under TSCA," 88 Fed. Reg. 74712, 74718 (Oct. 31, 2023). For example, even one-time exposure to TCE by pregnant people can cause cardiac defects in their developing fetuses. EPA, "[EPA Finds Trichlorethylene Poses an Unreasonable Risk to Human Health](#)" (Jan. 9, 2023). The evaluation also found that, following brief exposures, TCE also causes immune suppression, in which the body's immune system mistakenly attacks its own healthy tissues and organs. EPA, Unreasonable Risk Determination (Dec. 2022), at 6. Longer-term exposure has been shown to cause non-Hodgkin lymphoma, as well as non-cancer liver and kidney disease. 89 Fed. Reg. at 102574. Studies also link TCE exposure with numerous other harms, including problems with reproduction, like decreased sperm quality, and Parkinson's disease. 89 Fed. Reg. at 102574; 88 Fed. Reg. at 74718.

The 2024 risk management rule triggered by EPA's 2020 unreasonable risk determination recognized that the only way to eliminate TCE's unreasonable risk to people's health was to prohibit its use. Accordingly, the Rule imposes phased-in prohibitions on TCE manufacture, processing, and use. The initial implementation deadlines set by the Rule have already passed, and the prohibitions associated with these deadlines would be in effect if the Rule had not been stayed. 40 C.F.R § 751.305. In

addition, the Rule grants "critical use" exemptions to numerous industry sectors under 15 U.S.C. § 2605(g) ("TSCA section 6(g)"); 40 C.F.R. § 751.325. These exemptions allow continued TCE use for lengthy periods (ranging between twenty and fifty years depending on the sector) before TCE must be replaced with safe substitutes.

To protect workers in these exempt sectors, the Rule requires employers to implement a Workplace Chemical Protection Program that establishes an interim Existing Chemical Exposure Limit ("ECEL") for occupational exposures to TCE, as well as other measures EPA found necessary to protect exposed workers. 40 C.F.R. § 751.315. In response to concerns industry expressed about the feasibility of the exposure limits EPA had initially proposed, the Agency significantly eased these requirements in the final rule by setting a higher ECEL. 89 Fed. Reg. at 102579-81.

TCE contaminates the drinking water systems of 17 million people across the U.S. *See* https://www.ewg.org/tapwater/contaminant.php?contamcode=2984#. The chemical is present at over 50 percent of federal Superfund sites. Chiu, Weihsueh, *Human Health Effects of Trichlorethylene*, Environmental Health Perspectives, 121:303–311 (2012). TCE contamination is also widespread at military bases, where families of service members have suffered serious health effects linked to TCE exposure, such as the harm to members of the military and their families at Camp Lejeune in North Carolina. ATSDR, "Camp Lejeune, North Carolina," https://www.atsdr.cdc.gov/camp-

lejeune/about/index.html. Continued unrestricted use of TCE would add to this growing legacy of contamination and harm.

## HISTORY OF THIS CASE

In late December and early January, several petitions to review the TCE Rule were filed in various circuit courts of appeals. On January 14, 2025, the Judicial Panel on Multidistrict Litigation (MDL) consolidated the petitions in this Court. However, the previous day, a divided motions panel of the Fifth Circuit issued a temporary administrative stay of the Rule in response to the "emergency motion" of petitioner Alliance for a Strong U.S. Battery Sector ("Alliance"). Case No. 25-60010, Dckt. No. 31-2 (5th Cir. 2025). This motion narrowly focused on the impacts of the Rule's workplace protections on manufacturers of battery separators, one of the many industry sectors to which the Rule applies. Nonetheless, the effect of the stay order was to suspend compliance with the entire Rule, which was to take effect on January 16. This administrative stay order, issued without any consideration of EPA's views or an explanation of the panel's reasoning, was intended to briefly maintain the status quo while the Court considered EPA's substantive response to the stay motion. *Id.* However, further Fifth Circuit action was preempted by the transfer of the case to this Court one day after the Fifth Circuit issued the temporary stay.

On January 15, 2025, EPA filed an emergency motion with this Court to clarify that the Fifth Circuit administrative stay ceased to be in effect when that court lost

jurisdiction over the Alliance petition for review. Case No. 25-1005, Dckt. No. 4. EPA took the position that "[b]ecause the administrative stay power comes only from a court's authority over its own docket, an administrative stay should dissolve once the matter is no longer on that court's docket." *Id.* at 9. In the alternative, EPA asked the Court to "affirmatively revoke the Fifth Circuit's administrative stay pending adjudication of the merits of Petitioner Alliance's motion." *Id.* at 9. The Agency emphasized that the "Alliance [and a specific battery separator] will not be irreparably harmed if the Rule goes into effect during the brief period while the Court considers their motions on the merits, whereas the harm to EPA and the public from delaying the effectiveness of a duly promulgated public-health regulation is manifest." *Id.* at 9-10.

EPA also urged that, if it did not revoke the stay entirely, the Court "should narrow the Fifth Circuit's blanket stay to apply only to the [workplace exposure] elements of the Rule challenged by movant-Petitioners, and only as applied to them." *Id.* at 12. As EPA emphasized, "[t]he motions allege harms to battery and battery-separators manufacturers and do not speak to any other entities regulated under the Rule" and "[t]he production volume of TCE for battery and battery-separators manufacturers is miniscule in comparison to the rest of regulated uses and industries." *Id.* at 12.[2]

---

[2] In fact, the volume of TCE used by the industry stay movant petitioners is well under 17%, and the movants represent just two industry sectors out of more than 200 that use TCE. EPA, "Economic Analysis of the Regulation of Trichlorethylene under TSCA Section 6(a)," Case No. 25-1083, Dckt. No. 16-2, at 198 ("The primary use of TCE is as

The next day, this Court issued an order keeping the administrative stay in place but setting an expedited schedule for filing responses to EPA's motion and any new or supplemental stay motions. Case No. 25-1118, Dckt. No. 13 (Jan. 16, 2025). The order also directed EPA to respond to all stay motions by January 28. *Id.* The Alliance supplemented its stay motion on January 21, Case No. 25-1083, Dckt. No. 16-1,[3] and the same day the labor and environmental petitioners filed a motion joining in EPA's request to lift the 5th Circuit stay. Case No. 25-1055, Dckt. No. 12.

However, on January 24, four days after the change in presidential administrations, EPA withdrew its motion to lift the Fifth Circuit temporary stay and instead moved to extend for 60 days all deadlines in the case, including the date for responding to the stay motions. Case No. 25-1055, Dckt. No. 17. On January 27, the Court granted EPA's abeyance motion and extended by sixty days the deadlines for responding to the industry stay motions and the labor and environmental petitioners' motion supporting EPA's motion to vacate the stay. *Id.* at Dckt. No. 19.

---

an intermediate during the manufacture of refrigerants [not movants' industrial sector] … which accounts for about 83.6% of TCE's annual production volume") and *id.* at 245-280.

[3] Petitioner Microporous, which is a battery separator manufacturer, originally sought review of the Rule in the Sixth Circuit and moved for a stay of the worker protection requirements for its sector in that Court. *See* Case No. 25-1118, Dckt. No. 13, at 3. The motion, which the Sixth Circuit did not act on, was transferred to this Court when the Microporous and other petitions were consolidated in the Third Circuit. Another petitioner, PPG Industries, also filed a stay motion with this Court regarding a polymer coating operation that also received a section 6(g) exemption under EPA's Rule. *Id.*

To justify this abeyance, EPA's motion pointed to a need "to allow the Agency to brief new administration officials with decision-making responsibility about this case and the issues presented." *Id.* at 2. According to the Agency, it also needed "time to review and take action consistent with the [January 20] Executive Order, 'Regulatory Freeze Pending Review,' which directs EPA to 'consider postponing for 60 days . . . the effective date for any rules' . . .that 'have not taken effect, for the purpose of reviewing any questions of fact, law, and policy that the rules may raise.'" *Id. See also* 90 Fed. Reg. 8249 (January 28, 2025).

In a January 28 Federal Register notice, EPA asserted that "[b]ecause of the decisions of the Fifth and Third Circuits, the [TCE] rule never went into effect and is therefore also covered by the terms of the Regulatory Freeze Pending Review memorandum." 90 Fed. Reg. 8254, 8255. The notice set a new effective date for the Rule of March 21, 2025 but cautioned that "[w]here appropriate, the Agency may consider further delaying the effective date[]." *Id.*

EPA followed up with another, narrower notice (signed the same day as EPA's new abeyance motion and attached thereto) that issued a 90-day agency-imposed stay "of the conditions for each of the TSCA section 6(g) exemptions."[4] EPA, "Postponement of Effective Date for Certain Provisions of Trichlorethylene (TCE)," Case No. 25-1055, Dckt. No. 44-2 (March 21, 2025), at 4. The stay thus postponed the application of all

---

[4] As of the filing of this opposition brief, EPA has not published this notice.

workplace exposure protections for all exempted industry sectors. *Id.* at 6. EPA's notice did not explain the rationale for granting this relief for all sectors even though the implementation concerns it cited only pertain to the two sectors (battery separation and manufacture of the PPG polymer) that have sought stays of the Rule. *See id.* at 7 ("Several petitioners have raised serious questions concerning the validity of the workplace conditions imposed by the final rule's TSCA section 6(g) exemptions for lead-acid battery separator manufacturing and specialty microporous sheet material … [a]lthough EPA does not concede the allegations"). The two Federal Register notices asserted that no public comment process was necessary.

## ARGUMENT

### I. Abeyances of Pending Challenges to Rules of Previous Administrations Are Not Automatic And Require Courts to Balance Hardships and Equities

While agencies may reexamine and revise final rules issued by prior administrations, an agency is not automatically entitled to an abeyance of a pending judicial challenge merely because it wants to reconsider a rule of its predecessor. As this Court has observed, "[i]t is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068 (3d Cir. 1983) (quoting *Landis v. N. Am. Co.*, 299 US. 248, 254-55 (1936)). In determining whether an abeyance would be appropriate, "benefit and hardship

would have to be set off, the one against the other, and a balance ascertained." *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 216 (1937) (citing *Landis*, 299 U.S. at 248).

For example, the D.C. and Fifth Circuits recently denied contested abeyance motions that were not supported by the balance of equities. In *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. EPA*, the D.C. Circuit denied the Trump EPA's motion to delay oral argument and hold in abeyance a challenge to the Biden EPA's risk evaluation framework rule under TSCA. Order, Case No. 24-1151, Dckt. No. 2100857 (D.C. Cir. Feb. 14, 2025). Petitioners in that case had opposed the abeyance on the ground that the case presented questions of statutory interpretation requiring judicial resolution under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and that EPA's reconsideration of these issues would delay, but not eliminate, the need for a decision by the court. Labor Petitioners' Opposition, Case No. No. 24-1151, Dckt. No. 2099993 at 5-7 (D.C. Cir. Feb. 11, 2025).

In *State of Utah v. EPA*, Case No. 23-1157, the D.C. Circuit considered a Trump EPA motion for a 60-day abeyance of the consolidated cases seeking review of aspects of the Good Neighbor Rule, a Clean Air Act regulation restricting interstate ozone pollution by limiting ozone-forming emissions from large power plants and other high-polluting industries. As it has here, EPA argued that a pause in these cases was needed so that its new leadership would have time to review the Rule. A group of state intervenors opposed

the motion because it could severely prejudice state air quality programs by postponing the Rule's protections from interstate pollution during the impending ozone season. Case No. 23-1157, Dckt. No. 2100268, at 2-4 (D.C. Cir. Feb. 12, 2025). The Court denied EPA's request for an abeyance. Order, Case No. 23-1157, Dckt. No. 2102088 (Feb. 21, 2025).

In *East Fork Enterprises v. EPA*, Case No. 24-60256, the Fifth Circuit initially granted the Trump EPA's motion for a 120-day abeyance of judicial challenges to the Agency's TSCA risk management rule for methylene chloride. However, industry petitioners sought reconsideration of the order granting the motion, maintaining that they were entitled to prompt adjudication of their claims that the rule was unlawful because its requirements were in effect and imposing compliance obligations on industry. Petitioners' Motion for Review and Lifting of Abeyance, Case No. 24-60256, Dckt. No. 195 (5th Cir. Feb. 20, 2025). Based on these arguments, the Court withdrew its order holding the case in abeyance. Order, Dckt. No. 200 (5th Cir. Feb. 25, 2025).

In this case, there is an even more compelling need for the Court to reject EPA's second abeyance request: that the administrative stay entered by the Fifth Circuit has placed on hold all aspects of the Rule applying to all exposed parties, all industries, and all health protections mandated by the Rule. As EPA recognized, "the harm to EPA and the public from delaying the effectiveness of [this] duly promulgated public-health regulation is manifest." Case No. 25-1005, Dckt. No. 4 (Jan. 15, 2025), at 9-10.

16

## II. Granting the Abeyance Would Continue the Administrative Stay and Harm the Public Interest by Increasing Health Risks Workers, Consumers, and Communities

As with the recent orders denying abeyances, the balance of equities strongly weighs against granting EPA's motion to delay all filing deadlines in this case by 60 more days. For example, the Rule as promulgated prohibits production of consumer products containing TCE by March 17, 2025, and prohibits the processing and distribution of these products by June 15, 2025. However, the first deadline has already been delayed because the Court's initial abeyance order enabled the Fifth Circuit stay to remain in effect and, if EPA's new abeyance motion is granted, the second deadline may be delayed as well. Thus, despite EPA's determinations of unreasonable risks, exposure to TCE by users of products subject to the Rule and communities residing near TCE-using plants is continuing beyond the deadlines EPA imposed to protect public health. Given EPA's finding that even limited short-term exposure to TCE can cause birth defects and immunosupresion, Unreasonable Risk Determination at 6,[5] prolonging TCE exposure to consumer and commercial products that EPA has banned will increase the likelihood of these harmful effects as well as the longer-term risks of cancer and other diseases from chronic exposure to the chemical.

---

[5] https://www.epa.gov/system/files/documents/2023-01/TCE_Final%20Revised%20RD_12-21-22-FINAL-v2.pdf,

In addition, allowing the stay to remain in effect for additional months will enable industry to postpone investments in the Rule's required protections for workers. This will delay compliance with the workplace ECEL, now required to be fully implemented on December 18, 2025, by the many sectors granted exemptions from the Rule's near-term prohibitions on TCE use. According to EPA's risk evaluation, tens of thousands of workers in these sectors are now exposed to TCE levels well in excess of the ECEL, and continued non-compliance increases their risks of the short and long-term health harms that EPA has determined are caused by TCE. As EPA emphasized when it sought to vacate the Fifth Circuit's administrative stay, "[s]taying the Rule's effective date delays [its] protections from taking effect and harms the public interest through the adverse health effects caused by exposure to TCE." Case No. 25-1005, Dckt. No. 4, at 12.

III.    **Continuation of the Fifth Circuit Stay of the Entire Rule Would Circumvent Well-Established Standards for Delaying the Effectiveness of Final Rules**

Appellate courts' issuance of administrative stays "do not typically reflect the court's consideration of the merits of the stay application. Rather, they freeze legal proceedings until the court can rule on a party's request for expedited relief." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stay). Once the court has taken short-term action to preserve the status quo, it must apply the well-established criteria for determining whether a stay of agency action is warranted. *Id.* at 799 ("When entered, an administrative stay is supposed

to be a short-lived prelude to the main event: a ruling on the motion for a stay pending appeal.") A stay is an "extraordinary remedy" and can only be granted if the court addresses: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). As Justice Barrett has emphasized, allowing an administrative stay to linger without an adjudication of its merits effectively negates the traditional four-factor test that should govern whether litigants are entitled to a stay of a rule:

> The real problem—and the one lurking in this case—is the risk that a court will avoid *Nken* for too long. An administrative stay should last no longer than necessary to make an intelligent decision on the motion for a stay pending appeal.

*United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring).

EPA's March 21 notice staying the Rule's requirements for the sectors receiving TSCA section 6(g) exemptions does not obviate the need for the Court to apply the four-factor test to the *judicial* stay now in effect. In fact, EPA's new notice calls into question the Agency's rationale for seeking a further abeyance. As EPA acknowledges, it did not employ "the four-factor test for a judicial stay that courts typically use in determining whether to issue a preliminary injunction." Dckt. No. 44-2 at 6. Nor did it consider how the stay might affect public health and balance it against the financial interests of industry. Because EPA bypassed accepted procedural and substantive protections that

govern delays of rules' effective dates, the Court should give no weight to the Agency's simultaneous decision to stay portions of the TCE rule pending judicial review.

Moreover, EPA's limitation of its new stay to *portions* of the Rule contradicts its position that the present administrative stay of the *entire* Rule entered by the Fifth Circuit should remain in effect. Given EPA's tacit recognition that the Rule's immediate prohibitions on TCE use are necessary for public health and should not be delayed, it is inexplicable that EPA would seek a further abeyance that would keep a judicial stay of these very requirements in place.

## IV.    There is No Legitimate Interest of EPA or Third Parties that Would Justify an Abeyance of this Case Postponing the Rule's Health Protections

EPA has not explained why it has been unable to complete its review of the TCE Rule in 60 days or what more it will seek to accomplish in the next 60 days. Nor has EPA identified any possible benefit from keeping the Fifth Circuit stay of the entire Rule in place, despite its unlimited scope and the resulting harm to public health. If EPA's only goal is to continue to examine the validity of the Rule, there is no reason why it cannot conduct that review in parallel with briefing and judicial resolution of the merits of the stay motions. Moreover, regardless of whether the stay is vacated or narrowed, EPA would be free to initiate rulemaking to modify the Rule at any time should its review of the Rule so warrant. Thus, the only possible prejudice to the Agency from denying its abeyance motion is the current effort required to respond to the stay motions, a relatively

insignificant burden. The stay movants would also not be prejudiced by denial of the abeyance since they would still be able to argue their case for a stay to this Court.

In sum, the equities overwhelmingly support denying EPA's motion for a 60-day abeyance.

## Conclusion

The Court should deny EPA's abeyance motion, promptly vacate the administrative stay entered by the Fifth Circuit, and decide whether to grant or deny the narrow stay requests of certain industry petitioners.


Dated: March 25, 2025

Respectfully submitted,

/s/ Robert M. Sussman
Robert M. Sussman
Sussman & Associates
310 Garfield St., N.W.
Washington, D.C. 20008
202-716-0118
bobsussman@comcast.net

*Counsel for Center for Environmental Health*

/s/ Samantha Liskow
Samantha Liskow
ENVIRONMENTAL DEFENSE FUND
257 PARK AVE S
NEW YORK, NY 10010
(212) 616-1247
sliskow@edf.org

*Counsel for Environmental Defense Fund*

/s/ Randy Rabinowitz
Randy Rabinowitz
Occupational Safety and Health Law Project
P.O. Box 3769
Washington, D.C. 20027
(202) 256-4080
randy@oshlaw.org

Victoria L. Bor
Occupational Safety and Health Law Project
P.O. Box 3769
Washington, D.C. 20027
(301) 785-3204
victoriabor87@gmail.com

*Counsel for International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; the Massachusetts Coalition for Occupational Safety; and United Stel, Paper, and Forestry, Rubber Manufacturing, Energy, Allied Industrial Workers International Union*

# CERTIFICATE OF COMPLIANCE

This response brief complies with the type-volume limitation of Federal Rule of Appellate Procedure ("Rule") 27(d)(2)(A) because it contains 4,975 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). The motion also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED: March 25, 2025

/s/ Samantha Liskow
Samantha Liskow

**CERTIFICATE OF THIRD CIRCUIT BAR MEMBERSHIP**

Pursuant to Local Appellate Rule 28.3(d), I certify that I am a member of the bar of this Court.

DATED: March 25, 2025

*/s/* Samantha Liskow
Samantha Liskow

**CERTIFICATE OF SERVICE**

I certify that today I filed the foregoing response brief by filing this document with the Clerk of the Court for the United States Court of Appeals for the Third Circuit, through the Electronic Case Filing (ECF) system.

DATED: March 25, 2025

/s/ Samantha Liskow
Samantha Liskow