No. 25-1055; 25-1079; 25-1080; 25-1081; 25-1082; 25-1083; 25-1084; 25-1098; 25-1118; 25-1132; 25-1133; 25-1144; 25-1183
MCP No. 193

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

UNITED STEEL, PAPER, AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, et al.,
*Petitioners,*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,
*Respondents,*

On Petition for Review of a Final Rule of the United States Environmental Protection Agency

**PETITIONERS ALLIANCE FOR A STRONG U.S. BATTERY SECTOR AND MICROPOROUS, LLC'S OPPOSITION TO LABOR AND ENVIRONMENTAL PETITIONERS' MOTION TO LIFT STAY**

STEVEN D. WEBER
**PARKER POE ADAMS & BERNSTEIN**
620 S Tryon Street, Suite 800
Charlotte, NC 28202
Telephone: (704) 372-9000
steveweber@parkerpoe.com

*Counsel for Microporous, LLC*

DANIEL J. FEITH
 *Counsel of Record*
SAMUEL B. BOXERMAN
JEREMY D. ROZANSKY
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner Alliance for a Strong U.S. Battery Sector*

Petitioners Center for Environmental Health (CEH), Environmental Defense Fund (EDF), International Union, United Automobile, Aerospace & Agricultural Workers of America (UAW), Massachusetts Coalition for Occupational Safety (MCOS), and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) (collectively, "Movants") ask this Court to lift the administrative stay of the TCE Rule. *See* Dkt. 12 ("Motion").[1] That stay preserves the status quo while this Court considers several motions to stay various provisions of the TCE Rule pending judicial review, including the motions of petitioners Alliance for a Strong U.S. Battery Sector ("Alliance") and Microporous, LLC. *See* Dkt. 5 (retaining administrative stay entered by Fifth Circuit); Dkt. 19 (extending administrative stay in light of Respondent EPA's stay of TCE Rule pursuant to 5 U.S.C. § 705); Dkt. 8-1 (Alliance's Motion for Stay Pending Judicial Review); Dkt. 9 (Alliance's Supplement to initial motion). Movants principally rely on the arguments in EPA's now-

---

[1] Unless otherwise noted, all citations to docket entries refer to the entries in the lead case, *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indu. & Serv. Workers Int'l Union v. EPA*, No. 25-1055 (3d Cir.).

revoked motion to lift the administrative stay. *See* Mot. 2, 4; *see also* Dkt. 4 (EPA's motion). The Alliance and Microporous accordingly incorporate by reference their arguments opposing EPA's motion, which demonstrate why the Motion should be denied. *See* Dkt. 11 (Response of Petitioners Alliance and Microporous).

The Alliance and Microporous write to make four additional points in response to the Movants' Motion.

*First*, Movants' claim that the "duty to supply respirators … does not rise to the level of irreparable injury," Mot. 4, mischaracterizes the harms battery-separator manufacturers face from the TCE Rule. As the Alliance previously demonstrated, *see* Dkt. 8-1 at 25–29, the TCE Rule imposes a broad range of immediate, irreparable compliance costs on battery-separator manufacturers beyond the respirator mandate. These include monitoring TCE exposure levels at their facilities; hiring engineers and industrial hygienists to assess what, if any, additional administrative or engineering controls are feasible; and, if any such controls exist, expending resources to design those systems, obtain necessary permits, purchase necessary materials, construct any physical infrastructure, and then implement those systems by mid-December

2025. *Id.* 26. Alliance member ENTEK International LLC estimates that the costs for assessing the feasibility of additional controls alone will total approximately $1 million, and will need to be incurred immediately. *See id.* Microporous estimates similar immediate costs for its own feasibility assessment. *See Microporous, LLC v. EPA*, No. 25-1080, Dkt. 5-1 at 14 (3d Cir.).

Even as to the respirator mandate, the costs are far broader than Movants suggest. To comply with the respirator mandate, battery-separator manufacturers must conduct a medical evaluation of each potentially exposed employee, procure large quantities of expensive respirator equipment (including powered air purifying respirators not currently in use), construct facilities to store and maintain such respirators, and develop and implement a training program for the new respirators—all before September 15. 89 Fed. Reg. 102,568, 102,629 (Dec. 17, 2024) (to be codified at 40 C.F.R. § 751.315(e)(1)). That work will have to begin immediately if and when the TCE Rule becomes effective. *See* Dkt. 8-1 at 27. Movants cite no authority for the proposition that these substantial and unrecoverable costs are not "irreparable injury." Indeed, such a proposition is belied by many authorities. *See* Dkt. 11 at 16 (citing,

*inter alia*, *Ohio v. EPA*, 603 U.S. 279, 292 (2024); *Pennsylvania v. President*, 930 F.3d 543, 574 (3d Cir. 2019); and *Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016)).

*Second*, as between Movants and the Alliance and Microporous, the balance of the equities favors a stay. *See Nken v. Holder*, 556 U.S. 418, 434–36 (2009). The Alliance and Microporous have repeatedly identified the substantial and nonrecoverable compliance costs battery-separator manufacturers will immediately incur if the Rule becomes effective, *e.g.*, Dkt. 8-1 at 25–27, and have also shown how the Rule will harm battery-separator manufacturers' workers and local economies, *id.* at 28–29. To make this showing, the Alliance attached numerous declarations, including from Alliance member ENTEK's employees and from industrial hygienists who have studied ENTEK's facility. *See* Dkt. 8-4. By contrast, Movants have repeatedly failed to explain how a temporary, administrative stay harms them. Most of them have failed to file a single declaration of any member. The two who have filed declarations—CEH and EDF—were unable to identify a member with a "certainly impending" injury, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013), let alone one that is traceable to the stay, which would be

necessary for the purposes of their Motion. *See* Dkt. 34 at 6–8. Ironically, their claim of harm is a harm *from the status quo*. *See* Mot. 4 (claiming harm because "workers and the public will continue to be exposed" at current levels); Mot. 5 (asserting "harm workers and others will sustain from continued exposure"). That admission all but confirms that a temporary administrative stay is proper, as such stays are used to "maintain the status quo in order to permit appellate review." *Prometheus Radio Project v. FCC*, 2003 WL 22052896, at *1 (3d Cir. Sept. 3, 2003) (per curiam).

*Third*, with respect to the "public interest" analysis, Movants make the same mistake as the government did in *Alabama Association of Realtors v. Department of Health & Human Services*, 594 U.S. 758 (2021) (per curiam). Their vague assertion that a stay harms "the public," Mot. 4, fails to grapple with the important—indeed *overriding*—public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994). As the Supreme Court said in *Alabama Association of Realtors*, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." 594 U.S. at 766.

*Finally*, Movants fail to demonstrate why the administrative stay should not remain in place, at a minimum, as to the portions of the TCE Rule applying the Workplace Chemical Protection Program to battery-separator manufacturers. *See* 89 Fed. Reg. at 102,633–34 (to be codified at 40 C.F.R. § 751.325(a)(2), (b)(5)(iii)–(iv)). To begin with, as explained above, Movants fail to refute the showing by the Alliance and Microporous that the TCE Rule imposes immediate, irreparable harm on battery-separator manufacturers. Nor do they offer any defense of the TCE Rule's merits, responding to *none* of the ways the Alliance and Microporous demonstrated that the Rule is infeasible, unscientific, unreasoned, and unlawful. Thus, Movants fail to demonstrate any basis for lifting the administrative stay as to battery-separator manufacturers.

Furthermore, on March 21, 2025, EPA administratively postponed the effective date of the conditions for each of the TCE Rule's exempted uses by 90 days in light of the "serious questions" raised by the Alliance, Microporous, and others "concerning the validity of the workplace conditions imposed by the final rule's TSCA section 6(g) exemptions for lead-acid battery separator manufacturing and specialty polymeric microporous sheet materials." Dkt. 44-2 at 4–5 (EPA Prepublication

6

Notice of Postponement of Effective Date for Certain Provisions of Trichloroethylene (TCE) Regulation under the Toxic Substances Control Act (TSCA)); *see* Dkt. 44-1 at 5. EPA's action postpones the effective date of the portions of the TCE Rule applying the Workplace Chemical Protection Program to battery-separator manufacturers at least through June 19, 2025. *See* 40 C.F.R. § 751.325(b)(5)(iii)–(iv). Given EPA's action, continuing the administrative stay as to those discrete portions of the TCE Rule imposes no harms on Movants or the broader public. Rather, it simply allows this case to proceed in an orderly manner by giving EPA the necessary time to evaluate the "serious questions" the Alliance and Microporous have raised before having to respond to their stay motions. Indeed, EPA proposes to respond to those motions well before the 90-day postponement expires.[2] *See* Dkt 44-1 (EPA motion seeking to extend all deadlines by 60 days).

---

[2] In light of the postponement, EPA similarly argues that the administrative stay should remain in place at least as to the provisions covered by the postponement. *See* Dkt. 46 at 3–4. As discussed above, those provisions include the portions of the TCE Rule applying the Workplace Chemical Protection Program to battery-separator manufacturers, which the Alliance and Microporous have challenged in their stay motions.

7

For the foregoing reasons and those set forth in Dkt. 11, the Court should deny Movants' motion to lift the administrative stay. Alternatively, at a minimum, the Court should deny the Motion, and leave the administrative stay in place, as to the portions of the TCE Rule applying the Workplace Chemical Protection Program to battery-separator manufacturers.

| | |
|---|---|
| March 28, 2025 | Respectfully submitted, |
| | /s/ *Daniel J. Feith* |
| Steven D. Weber | Daniel J. Feith |
| **PARKER POE ADAMS & BERNSTEIN** | Samuel B. Boxerman |
| | Jeremy D. Rozansky |
| 620 S Tryon Street, Suite 800 | **SIDLEY AUSTIN LLP** |
| Charlotte, NC 28202 | 1501 K Street, NW |
| Telephone: (704) 372-9000 | Washington, DC 20005 |
| steveweber@parkerpoe.com | Telephone: (202) 736-8000 |
| | dfeith@sidley.com |
| *Counsel for Microporous, LLC* | *Counsel for Alliance for a Strong U.S. Battery Sector* |

# CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2025, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

/s/ *Daniel J. Feith*
DANIEL J. FEITH

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 32(c) and Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1,439 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

Dated: March 28, 2025  /s/ *Daniel J. Feith*
DANIEL J. FEITH