## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

### Nos. 25-1079,1080, 1081, 1083, 1084, 1118, 1132, 1133, 1183, 1509

ALLIANCE FOR A STRONG U.S. BATTERY SECTOR; TEXAS CHEMISTRY
COUNCIL; MICROPOROUS, LLC;
OHIO CHEMISTRY TECHNOLOGY COUNCIL; OLIN CORPORATION;
MISSOURI ALLIANCE FOR A STRONG US BATTERY SECTOR; AMERICAN
CHEMISTRY COUNCIL; GEORGIA CHEMISTRY COUNCIL; TRENT
CAPITAL PARTNERS, LLC; PPG INDUSTRIES; AND VINYL INSTITUTE,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.

Respondents.

## UNION PETITINERS' OPPOSITION TO MOTION FOR A STAY PENDING JUDICIAL REVIEW

These consolidated cases are before the Court on petitions to review the

Final Rule issued by the Environmental Protection Agency (EPA),

"Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act

(TSCA)," 89 Fed. Reg.102568 (Dec. 17, 2024) (the Rule).[1] The United Steel,

Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service

Workers International Union (USW) and the International Union, United

Automobile, Aerospace & Agricultural Workers of America (UAW) (collectively,

the Union Petitioners) argue the Rule does not fully eliminate the unreasonable risk

posed by workplace exposure to TCE. Two environmental groups, the

Environmental Defense Fund (EDF) and the Center for Environmental Health

(CEH), challenge the TCE Rule as inadequate to protect the public.[2] Several

industry petitioners challenge the Rule as beyond the scope of EPA's authority

under TSCA.[3]

On January 13, 2025, before the Panel on Multidistrict Litigation ordered the

petitions consolidated in this Court, the Fifth Circuit issued an administrative stay

---

[1] USW's petition is No. 25-1055; UAW's petition is No. 25-1098.

[2] EDF's petiton is No.25-1082; CEH's is No. 25-1144.

[3] The following industry parties have filed petitions for review. The Third Circuit docket number for each petition is indicated in parenthesis. Olin Corporation (No. 25-1132); Missouri Alliance for a Strong US Battery Sector (No. 25-1133); American Chemistry Council and Georgia Chemistry Council (No. 25-1079); Trent Capital Partners (No. 25-1084); Microporous LLC (No. 25-1080); Alliance for a Strong US Battery Sector and Texas Chemistry Council (No. 25-1083); Ohio Chemistry Technology Council (No. 25-1081); PPG Industries (No. 25-1118); and Vinyl Institute (No. 25-1509). We refer to them collectively as "Industry Petitioners."

of the entire Rule on motion by Petitioner Alliance for a Strong U.S. Battery Sector (Alliance). This Court continued the stay pending decision on three motions currently pending in this Court: separate motions by the Alliance, PPG Industries, and Microporous LLC to stay the portion of the Rule that requires each company to comply with the Rule's Workplace Chemical Protection Program (WCPP). [4]

The Union Petitioners oppose these motions. While the Movants claim they will prevail on their challenge to EPA's unreasonable risk determination (a contention with which we disagree), their main arguments center on their assertions that they cannot feasibly comply with the Rule's Existing Chemical Exposure Limit (ECEL) of 0.2 parts per million (ppm) without requiring their employees to wear powered air-purified respirators (PAPRs), a cumbersome and uncomfortable form of respiratory protection, on a full-time basis. Movants contend, in sum and substance, that they would either have to reconfigure their operations or their employees would quit rather than wear such respirators full-time.

Each motion relies on evidence limited to the burden imposed by compliance with an ECEL of 0.2 ppm in two conditions of use by three companies.

---

[4] The Alliance's Motion is Docket Entry No.15 in case number 25-1083 and will be referred to throughout at "Alliance Mot. at ____. " Microporous' Motion is Docket Entry No. 2 in case number 25-1080 and will be referred to throughout at "Microporous Mot. at ____. " PPG's Motion is Docket Entry No. 2 in case number 25-1118 and will be referred to throughout at "PPG Mot. at ____."

There is *no* evidence of the need for broader stay. Movants have failed to meet their burden to justify a stay pending review. Moreover, even with respect to the two limited industries for which the Movants have presented evidence, their evidence focuses on the hardships of compliance with the ECEL of 0.2 ppm and is wholly inadequate to justify a stay of all aspects of the WCPP.

For more than fifty years, unions have argued against relying principally on continuous use of respirators to protect workers because in real world conditions, they are often ineffective, burdensome to the workers who must wear them, likely to create a false sense of protection, and can create safety hazards. This Court's has agreed. *Public Citizen v. U.S. Dep't of Labor,* 557 F.3d 165, 179-180 (3rd Cir. 2009) (observing, in the OSHA context, that "[no case] reviewing an airborne toxin standard can be read to support a technological feasibility rule that would effectively encourage the routine and widespread use of respirators."). However, even if Movants' contentions that routine reliance on respirators would be required to meet the Rule's ECEL were true – and they have submitted no actual monitoring data to support their claims -- those arguments do not justify staying all the occupational controls EPA has found necessary to protect the TCE-exposed workforce or permitting unlimited exposure to TCE. The stay Movants are requesting would halt exposure monitoring to determine the levels to which workers are exposed, relieve the movants of training their employees on the

hazards of TCE and means of reducing exposure, and stop the development and implementation of exposure control plans to reduce exposures as low as feasible. If the Court were persuaded that some stay is justified, we urge the Court to reject Movants efforts to stay all portions of the WCPP other than the ECEL because all three Movants can easily comply with them.

Finally, the Court should ignore EPA's suggestion, filed one day ago leaving the Unions little time to respond, that the Court issue a judicial stay that mirrors the administrative stay the Agency has issued. [5] EPA's stay applies to all industries that would be required to comply with the WCPP, even though only two industries presented evidence to the Agency requesting a stay. The stay was issued without notice to the public or opportunity to comment and, by effectively extending the effective date of the TCE rule, likely violates this Court's decision in *NRDC v. EPA,* 683 F.2d 752 (3rd Cir. 1982). Just as importantly, EPA admits that it did not apply the four- factor test for issuing a judicial stay that this Court must apply. *See infra* at p. 9

## I.    Background

Exposure to TCE is a well-recognized health hazard. EPA found "that while some of the adverse effects from TCE exposure are experienced following acute

---

[5] EPA's administrative stay has not yet been published in the Federal Register. A pre-publication copy can be found here. prepubcopy_8317.1-01-ocspp_tce_postponement_apa705_20250321_admin_0.pdf

single exposures, other risks are incurred following long-term, repeat exposures...

[F]etal cardiac defects and autoimmunity, are the most sensitive adverse effects

following exposure." 89 Fed. Reg. 102572. Other risks of TCE exposure include:

"non-cancer effects (liver toxicity kidney toxicity, neurotoxicity,

immunosuppression, reproductive toxicity and developmental toxicity) as well as

cancer (liver, kidney, and non-Hodgkins lymphoma)." *Id.* Based on these

findings, EPA determined that TCE presents an unreasonable risk to workers at

exposure levels above 0.0011ppm – a level 10,000 times lower than the existing

OSHA standard. 89 Fed. Reg. at 102579. [6]

Under TSCA Section 6(a), 15 U.S.C. §2605(a), when EPA finds that a

chemical substance presents an "unreasonable risk to health or the environment,"

the Agency "shall" adopt a rule "to the extent necessary so that the chemical

substance no longer presents such risk." 89 Fed. Reg. 102572. EPA adopted the

Rule challenged here to accomplish this statutory duty. *Id.* at 102571. The Rule

does so by banning continued use of TCE in all 52 of the "conditions of use" in

which EPA found TCE poses an unreasonable risk. *Id.* For a number of these uses,

---

[6] The current permissible exposure limit (PEL) for TCE is 100 parts per million
(ppm) imposed by the Occupational Safety and Health Administration (OSHA), 29
C.F.R. § 1910.1000, Table Z-2. OSHA set its 100 ppm PEL for TCE in 1972,
based on a then-existing consensus standard that represented the "lowest common
denominator" of industry agreement. *Public Citizen v. Chao,* 314 F.3d 143, 146 (3rd
Cir. 2002) (describing consensus standards OSHA adopted as exposure limits
under Section 6(a) of the OSH Act, 29 U.S.C. § 655(a)).

the Agency granted partial exemptions, permitting continued use of TCE over specified periods of time, so long as the owners/operators implement stringent worker protections. *Id.*

Those workplace protections are codified in the Rule's WCPP, 40 C.F.R. §751.315, which consists of a series of requirements designed to minimize worker exposure to TCE. In particular, the WCPP requires covered owners and operators to reduce workplace exposures to an ECEL of 0.2 ppm – a level substantially above that which causes serious health effects. *Id.* at 751.315(b)((2). 89 Fed. Reg. at 102580-81.

The WCPP requires owner/operators to implement engineering controls and work practices to reduce exposures to the extent feasible, and to supplement those preferred methods of control with respiratory protection, if necessary to meet the ECEL. 40 C.F.R. §751.315(c). The WCPP also requires owner/operators to conduct periodic monitoring of their workplaces to determine the levels of TCE exposure, *id.* at §751.315(b)(3); to provide information regarding the monitoring results to their employees and their employees' designated representatives, *id.* at §751.315(b)(3)(vi); to establish regulated areas, in which anyone entering would have to be protected from exposures, *id.* at §751.315(b)(4); to establish, and make available to employees, exposure control plans, detailing the measures taken to control TCE exposures, *id.* at §751.315(c)(2); to conduct worker training and

education about the hazards TCE poses and the measures to protect against exposure, *id.* at §751.315(d); and where personal protective equipment is required, to implement measures to ensure they are properly selected, fitted, used and maintained. *Id.* at §751.315(e).

TSCA Section 6(g) provides EPA with authority to grant exemptions from TSCA rules when a use is "critical or essential" and no "feasible safer alternative is available." 15 U.S.C. §2605(g)(1)(A). Based on record evidence, EPA found using TCE as a processing aid in manufacturing separators for lead acid batteries was important for national security applications or for other critical needs. Microporous and Entek, a member of the Alliance, are the two companies that benefit from that exemption. The Agency granted the battery-separator industry twenty years to phase out TCE's use, conditioned on their compliance with the Rule's WCPP. 89 Fed. Reg. at 102572, 102586. In addition, EPA found that the polymeric microporous sheet material that PPG manufactures for coating passports and other forms of identification was a "fundamental component of critical and essential products," for which "no feasible alternative was available," and accordingly granted that industry fifteen years to phase out its use of TCE, again conditioned on its industry's compliance with the WCPP. *Id.* at 102587.

**ARGUMENT**

## I.      Standard of Review

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. United States,* 272 U.S. 658, 672 (1926). It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case."  The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." See, *e.g., Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *Clinton v. Jones,* 520 U.S. 681, 708 (1997); *Landis v. North Am. Co.,* 299 U.S. 248, 255 (1936).

The traditional factors the Court must weigh in deciding whether to grant a stay pending judicial review are (1) the likelihood of success on the merits; (2) the risk of irreparable injury absent preliminary relief; (3) the balance of equities; and (4) the public interest. *Winter v. NRDC,* 555 U.S.7, 20 (2008).  Even if the movant is likely to succeed on the merits, the Court must balance all four factors in an exercise of its equitable powers and may deny a stay when it finds the resultant harm is not irreparable.  *Del. State Sportsmens Ass'n v. Del. Dep't of Safety & Homeland Security,* 108 F.4th 194, 202 (3rd Cir. 2024).

## II.     Movants Have Not Established A Likelihood of Success on the Merits of their Claims

Here, three specific companies using TCE under two conditions of use: (1) the manufacture of lead acid battery separators; and (2) of tensil, a coating used in

passports and for other purposes – are seeking a stay pending judicial review. Other than their submissions regarding the burden they claim an ECEL of 0.2ppm imposes on them, no party has submitted evidence of any arguable harm from provisions of the Rule other than the WCPP, nor of any harm whatsoever to owners/operators in the other *fifty* conditions of use in which EPA found TCE to cause unreasonable harm.[7]

All three Movants make similar claims. They allege a likelihood of success on the merits because: (1) TCE's toxic effects are not as substantial as EPA has found; and (2) it is not feasible to rely on full-time respirator use among all employees to meet the 0.2 ppm ECEL.[8] Movants also claim that if their workforces are required to wear powered air purifying respirators (PAPRs) all day every day, the workers will quit and the companies will have to go out of business.[9] The evidence demonstrates that Movants attack on the TCE WCPP will not succeed on the merits.

---

[7] Insofar as PPG appears to be seeking an across-the-board stay of the entire Rule in all conditions of use, it has offered no evidence to meet its burden to justify a broad stay as to it and lacks standing to seek such a stay as to others.

[8] Alliance Mot. at 20; PPG Mot. at 16-20; Microporous Mot. at 15-23.

[9] Movants also claimed, in response to EPA's proposed TCE rule, that their employees might be required to wear self-contained breathing apparatus (SCBA) with a protection factor of up to 10,000 to meet an ECEL of 0.0011 ppm. Alliance Mot. at 8-9. Since EPA did not adopt an ECEL of 0.0011 these claims are no longer relevant.

A. The Movants Have Failed to Establish a Likelihood of Succeeding on their Challenge to EPA's Unreasonable Risk Finding

Movants claim that EPA incorrectly found TCE poses unreasonable risk to health and the environment. When evaluating scientific determinations under the substantial evidence test, this Court's review "is limited and deferential." *Public Citizen,* 557 F.3d at 175. "Furthermore, the 'best available evidence' requirement affords latitude, and so long as they are supported by a body of reputable scientific thought, the Agency is free to use conservative assumptions in interpreting the data with respect to carcinogens, risking error on the side of overprotection rather than underprotection." *Id.* at 176, citing *Industrial Union Dep't v. Am. Petroleum Inst.,* 448 U.S. 607, 656 (1980) ("*Benzene*") (internal quotations omitted). *See* 15 U.S.C. §2625(h)(2) (directing EPA to use the "best available science").

The Environmental Defense Fund (EDF) and the Center for Environmental Health (CEH) have filed an opposition to the stay motions that details the health hazards posed by TCE and the overwhelming record evidence that TCE exposure to workers, consumers, and communities poses an unreasonable risk and the Union Petitioners incorporate that discussion by reference. EPA's thousands of pages of scientific analysis, peer-reviewed by an independent panel of experts, is based on a reasonable body of scientific thought and clearly meets the substantial evidence test. *Benzene,* 448 U.S. at 656. Movants' citation to various studies they believe

are inconsistent with EPA's scientific conclusions is inadequate to call into question the large body of scientific evidence on which EPA relied. Movants have failed to establish a likelihood of overturning EPA's unreasonable risk determination.

B. Movants Have Failed to Establish They Will Prevail on their Claim that Compliance with the WCPP Is Infeasible

Movants argue that the Rule is invalid because EPA has failed to establish that the WCPP provisions are feasible, and therefore, that the terms of the Section 6(g) waiver will achieve its purposes. Alliance Mot. at 13. PPG Mot. at 18-19.

Section 6(g) does not impose a feasibility requirement; the section mentions feasibility only in discussing whether a "feasible safer alternative is available." 15 U.S.C. §2605(g)(1)(A). The Court need not address the statutory argument, however, because even if the statute did impose a feasibility requirement, Movants have not shown that they can do no more to protect workers than they are already doing. As the D.C. Circuit observed in *United Steelworkers v. Marshall,* 647 F.2d 1189, 1269 (D.C. Cir. 1980), a framework for evaluating feasibility which this Court has adopted, *Public Citizen v. DOL,* 557 F.3d at 170, a company cannot "simply refuse to pursue engineering or work practice controls by asserting their infeasibility. Rather it would have to attempt to install controls to the limits of contemporary technical knowledge and of their own financial resources." Furthermore, EPA may adopt rules "which require improvement in existing

12

technologies or which require the development of new technology" as long as there is "technology that looms on today's horizon." *Am. Iron & Steel Inst. v. OSHA,* 577 F.2d 825, 838 (3d Cir. 1978) (internal quotations and citations omitted) *See* 15 U.S.C. § 2605(c)(2)(A) (iv)(I) (EPA to take into consideration technological innovation in developing its risk management rules). None of the companies seeking a stay have established that EPA must show its rules are feasible or that they can do no more to reduce the TCE exposures their employees face. Movants have failed to show a likelihood of success on their feasibility claims.

### III. Movants Will Not Suffer Irreparable Harm If Required to Comply with a Modified WCPP Pending Judicial Review

All three Movants assert that they cannot feasibly meet the ECEL because to do so their employees would have to wear cumbersome respirators all day – a requirement they contend would drive away their workforce and would require that they completely reconfigure their manufacturing facilities. Alliance Mot. at 15-16; PPG Mot. at 21; Microporous Mot. at 11-13.

But the fact, if true, that Movants cannot meet an ECEL of 0.2ppm without full-time reliance on respirators does not mean they can do nothing more to protect their workforce from TCE exposure. *United Steelworkers v. Marshall,* 647 F.2d at 1269. Entek asserts that it has reduced TCE exposures to below 6 ppm. Alliance Motion at 18. PPG's motion states that it has an internal TCE exposure limit of 5 ppm and exposures routinely fall between 4-5ppm. PPG Mot. at 11. Microporous'

filing indicates exposures in their single plant are 10 ppm (10% of the existing OSHA PEL of 100 ppm) and that workers are only exposed to TCE for 15 minutes at a time. Microporous Mot. at ADD1-210. Thus, while all three Movants complain that compliance with an ECEL of 0.2 ppm poses economic and practical burdens, each has indicated an ability to feasibly comply with an ECEL substantially lower than the existing OSHA PEL – the level of exposure that would apply if a stay were issued and would present an extraordinary level of risk to workers.

Although none of the Movants submitted any actual monitoring data to support their claims, if TCE exposures at each of the three companies are as described, the only respirators that would be required are half or full-facepiece respirators with a protection factor of 50 – similar to the respirators each company claims to already utilize.[10] Microporous already provides its TCE-exposed employees with air purifying respirators (ADD at 1-174). PPG requires employees to wear respirators "during short-term tasks with the potential for elevated TCE exposures." PPG Mot. at 23. Entek told EPA during the rulemaking that it supports requiring respiratory protection programs, indicating that some of its employees

---

[10] The National Institute for Occupational Safety and Health (NIOSH) describes several types of respirators with a protection factor of between 25-50 – the level of protection that would be required given the exposure levels the Movants have described. PAPRs are not the only respirator choice available to Movants. https://www.cdc.gov/niosh/npptl/topics/respirators/disp_part/respsourceTypes.html

may be required to wear respirators and others may request them. Alliance Add. at

709.  If so, Movants falsely attribute their costs to develop a respiratory protection

program, to conduct fit testing and medical exams, to purchase and store

respirators and to replace respirator cartridges to EPA's TCE Rule when those

expenses are separately required by existing OSHA regulation at 29 C.F.R.

§1910.134. [11]  Compliance with this pre-existing regulatory requirement does not

constitute irreparable harm.

The TCE Rule requires owner/operators to conduct initial monitoring of

their workplaces by June 16, 2025. 40 C.F.R. § 751.311(b)(3)(ii). While Entek

claims it conducts "real time monitoring" of TCE exposures, it nevertheless also

claims that initial monitoring under the TCE rule – which permits reliance on any

monitoring conducted in the past 5 years -- would cost it $20,000 Decl. of Keith at

¶32 Attached to Alliance Motion; Alliance Add. at 709-710. During the

rulemaking, it advocated to EPA that each facility with TCE exposure "gather an

initial additional set of baseline TCE exposure measurements," and its motion

indicates that it had comprehensive breathing zone monitoring in place in

---

[11] Under OSHA's respirator protection standard, 29 CFR §1910.134, when an
employer requires workers to wear respirators, it must develop a written
respiratory protection program, conduct medical exams to ensure a worker can
wear a respirator, conduct quantitative fit testing to ensure a respirator fits properly,
clean and maintain respirators so they function properly, and train workers on how
to use respirators properly, among other requirements.

December 2023. Decl. of Dodge at 19. PPG claims to have a continuous monitoring program in place. PPG Mot. at APP 96. Microporous conducted regular monitoring between 2017-2019 but discontinued the program because TCE exposures were so low. (Microporous Mot. at ADD1-175). Its' industrial hygiene consultant recommended in 2021that it implement a "more robust air monitoring program," a recommendation it apparently did not follow. (*Id.* at ADD 1-176). Conducting monitoring to determine current exposure levels, when each company either already conducts monitoring or its industrial hygiene consultant recommended they do so, hardly represents irreparable harm.

The WCPP requires owner/operators to develop written exposure control plans, detailing how they will implement engineering or work practice controls to the extent such controls are feasible and to supplement them with respirators. 40 C.F.R. §751.315 (c)(2). Entek claims to have already invested "millions of dollars to implement all feasible engineering and administrative controls." Decl. of Keith at ¶ 22 (Attached to Alliance Motion). Even though Entek claims it has evaluated and installed all feasible engineering and work practice controls, it incongruously claims that documenting that fact would cost $1 million. Alliance Mot. at 26. PPG has already hired a consultant to evaluate the feasibility of implementing additional engineering and work practice controls to further reduce TCE exposures. PPG Mot. at 22. Microporous claims to have implemented "robust" engineering and

administrative controls. Microporous Mot. at 1031. None of the Movants have explained why documenting their already completed analysis of feasible controls would represent irreparable harm.

Each company also claims to already conduct training for employees. PPG Mot. at APP 96; Alliance Add. at 710. Microporous' training program, however, does not mention TCE. (Mot. at ADD 1-173). Again, providing training to employees on the hazards of TCE exposure hardly constitutes irreparable harm, particularly when OSHA regulations already require similar training. 29 C.F.R. §1910.1200(h).

The WCPP requires owner/operators to demarcate the areas where TCE exposures exceed the ECEL and limit access to those areas. 40 C.F.R. §751.315 (b)(4). Entek indicates that its manufacturing areas are already "completely separated from areas with the greatest potential for TCE exposure." Decl. of Keith at ¶ 22. PPG asserts that the areas of TCE exposure are isolated from other parts of its plants, and that its employees only enter those areas "on occasion" and for brief periods of time. PPG Mot. at APP 97-98. Microporous makes a similar claim indicating its employees enter TCE areas for no more than 15 minutes at a time. (Microporous Mot. at ADD 1-174).

Accordingly, no Movant has made a showing of irreparable harm necessary to warrant a stay. On the contrary, their own submissions demonstrate that they

already comply with substantial portions of the WCPP (or are required to do so under OSHA's respiratory protection standard) and already provide workers with the type of respirator that they would be required to utilize to lower their exposure levels to the TCE Rule's ECEL. Accordingly, any incremental costs that they would incur to achieve full compliance with the WCPP fall far short of irreparable harm.

### IV. The Balance of Harms Supports Nothing More Than a Limited Stay of the ECEL

Movants completely ignore the harm to their employees if the TCE Rule is stayed. EPA has found that exposures above the ECEL – indeed, exposures above 0.0011 ppm – pose unreasonable risks. If this Court were to issue a judicial stay of the TCE Rule, or even all elements of the WCPP, the only occupational exposure requirement any user of TCE would face is the obligation to control exposures to the current OSHA PEL of 100 ppm, a level that is orders of magnitude higher than the level at which EPA found workers faced unreasonable risk. Continued, minimally regulated exposure to a potent toxin clearly poses a manifest harm to exposed workers. Movants have not met their burden of establishing that a stay is warranted or in the public interest.

At the same time, the Unions agree that requiring employees to wear respiratory protection on a full-time basis also imposes a burden on employees. That does not, however, support the Movant's contention that the entire WCPP

should be suspended altogether. Rather, each Movant has demonstrated that their facilities are currently capable of reducing TCE exposures to well below the existing OSHA exposure limit of 100 ppm. Indeed, in its Motion, the Alliance criticizes EPA for failing to adopt an alternative ECEL of 6 ppm which "multiple commenters" suggested. Alliance Mot. at 18-19. Six parts per million is the TCE exposure limit in the European Union. *Id.* PPG has an internal exposure limit of 5 ppm. PPG Mot. at 11. And, Microporous has indicated its exposures are around 10 ppm but that employees are only exposed to TCE for 15 minutes at a time. Microporous Mot. a ADD 1-210. Actual exposure measurement would be necessary to verify the type of respirators necessary for each Movant to meet the ECEL, but they have chosen not to submit such information. This represents yet another reason to deny a stay.

However, if the Court is inclined to grant Movants request in part, the Union Petitioners urge the Court to issue a stay limited to the provisions of the Rule that require the Movants (and *only* the Movants) to meet an ECEL of 0.2 ppm and instead to exercise its equitable discretion to require Movants to reduce TCE exposures to an  interim limit, pending judicial review, no higher than 6 ppm as an 8-hour time-weighted average – the level advocated to EPA by "multiple

commenters."[12] The evidence submitted by all three Movants indicates that they can feasibly comply with an exposure limit no higher than 6 ppm. At that level, worker exposures would be substantially below the levels required to comply with the current OSHA PEL and the provisions of the WCPP would provide additional protection for employees.

A stay is an equitable remedy that requires the exercise of this Court's discretion. *Del. State Sportsmen's Ass'n, supra,* 108 F.4th at 202. We urge the court to exercise that discretion to fashion a response to the Motions for Stay that meets the Movants' legitimate concerns but also ensures that workers receive interim protections from excessive exposure to TCE.

CONCLUSION

As our argument makes clear, the Union Petitioners urge the Court to lift the administrative stay issued by the Fifth Circuit and to deny the motions for stay pending judicial review as they relate to any company beyond the three that have filed evidence with the Court describing the impact of the TCE rule on them. As to those companies that have moved for a stay, we further urge the Court either to deny the stay altogether or to issue a partial denial of the motion for a stay as to all

---

[12] At an ECEL of 6 ppm, only sporadic use of respirators would be required and only by some employees. And, the level of protection those respirators would be required to provide would be lower, so the respirators would be less cumbersome.

provisions of the TCE Rule other than 40 C.F.R. 751.315(b) – the ECEL -- and to exercise its equitable discretion to require compliance with an *interim* ECEL of 6 ppm.

Respectfully submitted,
/s/Randy S. Rabinowitz
Randy S. Rabinowitz
Victoria L. Bor
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
T: 202-256-4080
T: 301-785-3204
randy@oshlaw.org
victoriabor87@gmail.com

Counsel for the Union
Petitioners, USW and USW

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Union Petitioners' Opposition to Motion for Stay contains 4650  words, as counted by counsel's word processing system, and thus complies with the 5,200- word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

/s/ Randy S. Rabinowitz

Randy S. Rabinowitz

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March 2025, I served the Union Petitioners' Opposition to Motion for Stay on counsel of record by filing the Motion with the Court's CM/ECF system.

/s/ Randy S. Rabinowitz