# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

UNITED STEEL, PAPER, AND FORESTRY, )
RUBBER, MANUFACTURING, ENERGY, )
ALLIED INDUSTRIAL AND SERVICE )
WORKERS INTERNATIONAL UNION, )
AFL-CIO; ALLIANCE FOR A STRONG U.S. )
BATTERY SECTOR; TEXAS CHEMISTRY )    Lead Case No. 25-1055
COUNCIL; MICROPOROUS, LLC; )
MASSACHUSETTS COALITION FOR )    Consolidated with Case Nos.
OCCUPATIONAL SAFETY AND HEALTH; )    25-1079, 25-1080, 25-1081,
ENVIRONMENTAL DEFENSE FUND; )    25-1082, 25-1083, 25-1084,
OHIO CHEMISTRY TECHNOLOGY )    25-1093, 25-1098, 25-1118,
COUNCIL; OLIN CORPORATION; )    25-1132, 25-1133, 25-1144,
MISSOURI ALLIANCE FOR A STRONG )    and 25-1509
US BATTERY SECTOR; CENTER )
FOR ENVIRONMENTAL HEALTH; )
AMERICAN CHEMISTRY COUNCIL; )
GEORGIA CHEMISTRY COUNCIL; )
TRENT CAPITAL PARTNERS, LLC; )
UNITED AUTOMOBILE AEROSPACE; )
AGRICULTURAL IMPLEMENT )
WORKERS OF AMERICA, AFL-CIO; )
PPG INC.; and VINYL INSTITUTE )
)
    Petitioners, )
)
v. )
)
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, ET AL. )
)
    Respondents. )
_____ )

## OPPOSITION OF ENVIRONMENTAL DEFENSE FUND AND
## CENTER FOR ENVIRONMENTAL HEALTH TO
## <u>A STAY OF THE TCE RULE</u>

Petitioners Center for Environmental Health and Environmental Defense Fund oppose any stay of this Rule.[1] EPA found, after a thorough and peer-reviewed scientific evaluation and rounds of public engagement, that trichlorethylene ("TCE") poses harm to humans through virtually all its known uses, exposing people to unreasonable levels of risk in their workplaces, homes, and neighborhoods. EPA concluded that TCE manufacture and use therefore must be prohibited. Under the Rule it published in December, phase outs of the chemical were to begin earlier this month, except for certain industry sectors allowed to use TCE for additional time. However, the Rule's requirements have not been implemented due to a temporary blanket administrative stay of the Rule, imposed by the Fifth Circuit in January, that has not been lifted.

No party has established that EPA's extensive risk findings are contrary to the Toxic Substances Control Act or lack substantial evidence in the rulemaking record, or that a stay of the Rule is necessary to prevent irreparable injury. Thus, there has been no showing that the established four-part standard for staying agency action has been met. The three petitioners moving for a stay present

---

[1] In addition to Movants, eight other industry parties have filed petitions for review of this Rule. None of those industry parties seek a stay of the Rule. Environmental Defense Fund, Center for Environmental Health, and the labor petitioners filed their petitions seeking review of provisions of the TCE Rule that do not fully implement the public health protections of the Toxic Substances Control Act with the goal of strengthening them, and do not seek vacatur of the Rule.

argument and facts only in support of a request to pause workplace protection requirements (the "WCPP") for their companies. Their motions provide no basis to stay application of the Rule for other sectors or uses. There is thus no justification to stay the TCE Rule in its entirety, and indeed every day the Rule does not go into effect poses serious risk to human health that EPA determined should be prevented.

## BACKGROUND

### I.     TCE is Highly Toxic and Harmful to Human Health

Trichlorethylene ("TCE") is a highly volatile and toxic solvent. The chemical is found in consumer products and used in numerous industries. Final Rule: "Trichlorethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA)," 89 Fed. Reg. 102568, 102574 (Dec. 17, 2024) ("Rule").

Through a comprehensive, peer-reviewed scientific evaluation, EPA found that TCE "is carcinogenic to humans by all routes of exposure." Rule, 89 Fed. Reg. at 102574. The chemical's many hazards in addition to cancer are well established, along with its ability to cause harm even from small exposures. Proposed Rule: "TCE, Regulation Under TSCA," 88 Fed. Reg. 74712, 74718 (Oct. 31, 2023). For example, even one-time exposure to low levels of TCE by pregnant people can cause cardiac defects in their developing fetuses. EPA, "EPA Finds Trichlorethylene Poses an Unreasonable Risk to Human Health" (Jan. 9, 2023).

Studies also link TCE exposure with numerous other harms, including problems with reproduction, like decreased sperm quality, and Parkinson's disease. 89 Fed. Reg. at 102574; 88 Fed. Reg. at 74718.

## II. Exposure to TCE is Widespread in the United States

People are exposed to TCE in numerous ways, including through vapors that enter their homes, via contaminated water, through breathing and skin contact during workplace tasks, and when using consumer products like spot removers, hobby kits, and brake cleaners. EPA, "Risk Evaluation for Trichlorethylene" (Nov. 24, 2020), https://www.regulations.gov/document/EPA-HQ-OPPT-2019-0500-0113.

Communities across the country are harmed by TCE. The chemical is found in nearly half the nation's Superfund National Priority List sites. EPA, Search Superfund Site Information, https://cumulis.epa.gov/supercpad/cursites/srchsites.cfm. Well-known community tragedies include Woburn, Massachusetts, where over 20 children were diagnosed with leukemia after TCE containers leaked into the local water supply. Vivi Smilgius, *EPA Proposes Full Ban on Chemical Linked to Woburn Leukemia Cluster: The Childhood Cancer Cases and Subsequent Litigation Were Chronicled in 'A Civil Action,'* BOSTON GLOBE, Oct. 23, 2023, https://www.bostonglobe.com/2023/10/23/metro/senator-markey-proposes-tce-

ban/?p1=BGSearch_Overlay_Results. At the Camp Lejeune base, an estimated 500,000 to 1,000,000 marines, their families, and nearby residents may have been exposed to the chemical, for which the federal government is expected to pay billions in compensation through the Camp Lejeune Justice Act of 2021. Institute of Medicine Committee, "Review of VA Clinical Guidance for the Health Conditions Identified by the Camp Lejeune Legislation" (March 16, 2025); Congressional Budget Office, Cost Estimate (Feb. 28, 2022), https://www.cbo.gov/system/files/2022-02/HR3967_RCP.pdf.

### III. EPA Determined that TCE Presents Serious and Widespread Unreasonable Risk and Should be Banned

In 2016, Congress substantially strengthened TSCA, the nation's principal law for addressing unsafe chemicals. Pub. L. No. 114-182, 130 Stat. 448 (June 22, 2016) ("TSCA"). EPA's first tasks under the new law included evaluating ten widely-used chemicals known to cause serious health harms, including TCE. 15 U.S.C. § 2605(b). Under the first Trump administration, EPA conducted a peer-reviewed risk evaluation and found that virtually all TCE's known uses pose unreasonable risks to health. https://www.regulations.gov/document/EPA-HQ-OPPT-2019-0500-0113.

EPA also determined, per TSCA's requirements, that certain groups have greater exposure or susceptibility to TCE's hazards than the general population. 15 U.S.C. § 2605(b)(4)(A). These groups include people exposed to the chemical

while working in industrial plants; men and women of reproductive age; adolescents; consumer users; and biologically susceptible subpopulations. EPA, Unreasonable Risk Determination (Dec. 2022), at 6.[2]

Given TCE's serious threats to these groups and others, EPA determined that to fulfill TSCA's requirement to eliminate unreasonable risk, 15 U.S.C. § 2605(a), TCE must be phased out entirely. 89 Fed. Reg. 102581 ("Given the risk profile for TCE, EPA is addressing the unreasonable risk through prohibition"). Accordingly, the Agency's Rule requires cessation of the manufacture, processing, and use of the chemical, but gives certain industry sectors lengthy exemptions during which they may continue using TCE. *Id*. Relevant to the stay movants, EPA permitted 15 years for manufacturers of "polymeric microporous sheet material" to continue using TCE, and 20 years for lead-acid battery separator makers. 40 C.F.R. § 751.325(5) and (6); 89 Fed. Reg. at 102598.

To protect workers during the lengthy exemption periods for certain industries, the Rule requires these sectors to limit workplace exposures to TCE. 40 C.F.R. § 751.315. The exempted facilities have until December 18, 2025, to implement all workplace protections. 40 C.F.R. § 751.315.

---

[2] https://www.epa.gov/system/files/documents/2023-01/TCE_Final%20Revised%20RD_12-21-22-FINAL-v2.pdf

## IV. Three Petitioners Seek Limited Stays of Worker Protection Elements of the Rule for their Own Operations

Before these cases were consolidated in this Court by the Judicial Panel on Multi-District Litigation, petitioner Alliance for a Strong U.S. Battery Sector ("Alliance") filed with the Fifth Circuit an opposed motion to "stay the Rule's effective date and provisions applying the WCPP to battery-separator manufactures," and issue a "temporary administrative stay" while the Court decided the motion. Case No. 25-1055, Dckt. No. 8-1 at 1, 30.[3] The Alliance's motion focused only on the alleged infeasibility of the workplace protections EPA required for battery separator manufacturers and described potential harm to its member company. *Id.* at 1-30.

The same day, a divided motions panel of the Fifth Circuit, before allowing for EPA's response, issued a temporary administrative stay of the Rule's January 16, 2025 effective date. Case No. 25-60010, Dckt. No. 31-2 (5th Cir. Jan 13, 2025). The temporary stay was not limited to the portion of the Rule from which the Alliance claimed harm. Instead, the Fifth Circuit effected an across-the-board pause of the Rule.

---

[3] Per an order of this Court to the Alliance to file its motion in this court, this is a docketing, on January 21, 2025, of the motion the Alliance filed in the Fifth Circuit on January 15, at Case No. 25-1083, Dckt. No. 4. This motion, along with its later supplemented motion, contains redactions and therefore petitioners have not been able to access all arguments made by the Alliance.

This stay, however, was to apply only while the court decided the Alliance's stay motion. *Id.* ("Petitioner's motion for an administrative stay of the Rule's effective date while the court considers the motion for stay is GRANTED temporarily to allow for a response and full consideration."). Accordingly, the Fifth Circuit ordered EPA to respond to the Alliance motion within four days. *Id.* Before EPA could respond, however, the Fifth Circuit transferred Alliance's case to this Court pursuant to the multi-circuit lottery. Case No. 25-1083, Dckt. No. 38 (Jan. 15, 2025). In transferring the case, the Fifth Circuit did not refer to the administrative stay. *Id.*

That day, EPA filed an emergency motion with this Court to clarify that the Fifth Circuit administrative stay ceased when that court lost jurisdiction over the Alliance petition. Case No. 25-1005, Dckt. No. 4 (Jan. 15, 2025). EPA also asked the Court, in the alternative, to "affirmatively revoke the Fifth Circuit's administrative stay pending adjudication of the merits of Petitioner Alliance's motion." *Id.* at 9. The Agency emphasized that the "Alliance and [the other battery separator petitioner] will not be irreparably harmed if the Rule goes into effect during the brief period while the Court considers their motions on the merits, whereas the harm to EPA and the public from delaying the effectiveness of a duly promulgated public-health regulation is manifest." *Id.* at 9-10.

EPA also urged that, at the minimum, this Court "should narrow the Fifth Circuit's blanket stay to apply only to the [workplace exposure] elements of the Rule challenged by movant-Petitioners, and only as applied to them." *Id.* at 12. As EPA emphasized, "[t]he motions allege harms to battery and battery-separators manufacturers and do not speak to any other entities regulated under the Rule" and "[t]he production volume of TCE for battery and battery-separators manufacturers is miniscule in comparison to the rest of regulated uses and industries." *Id.* at 12.[4]

The next day, this Court ordered that the administrative stay would remain in place during an expedited briefing on EPA's motion and any new or supplemental stay motions. Case No. 25-1055, Dckt. No. 5 (Jan. 16, 2025). The Alliance supplemented its stay motion, Case No. 25-1083, Dckt. No. 16-1 (Jan. 21, 2025) (Alliance Brief"),[5] and the labor and environmental petitioners filed a motion joining EPA's request that the Court lift the 5th Circuit stay. Case No. 25-1055, Dckt. No. 12 (Jan. 21, 2025).

---

[4] See Section V, *infra*.

[5] Petitioner Microporous, which is a battery separator manufacturer, originally sought review of the Rule in the Sixth Circuit and – like the Alliance – moved in that Court for a stay of the worker protection requirements. *See* Case No. 25-1118, Dckt. No. 13, at 3. The motion, on which the Sixth Circuit did not act, was transferred to this Court when Microporous and other petitions were consolidated here. Another petitioner, PPG Industries, also filed a stay motion with this Court regarding a polymer coating operation that also received a section 6(g) exemption under EPA's Rule. *Id.*

Four days after the change in presidential administrations, however, EPA moved to withdraw its motion to lift the administrative stay. Case No. 25-1055, Dckt. No. 17. The Agency also moved to extend for 60 days all deadlines, including the stay motions briefing. *Id.* This Court granted EPA's motion. Case No. 25-1055 at Dckt. No. 19 (Jan. 27, 2025).

Since the change of administrations, EPA has also signed two Federal Register notices concerning the effectiveness of the Rule. In its first notice, EPA asserted that "[b]ecause of the decisions of the Fifth and Third Circuits, the [TCE] rule never went into effect and is therefore also covered by the terms of the Regulatory Freeze Pending Review memorandum," and set a new effective date for the Rule of March 21, 2025. 90 Fed. Reg. 8254.

EPA followed up with another, narrower notice issuing a 90-day Agency-imposed stay "of the conditions for each of the TSCA section 6(g) exemptions." EPA, "Postponement of Effective Date for Certain Provisions of Trichlorethylene (TCE)," Case No. 25-1055, Dckt. No. 44-2 (March 21, 2025), at 4.[6] The notice will thus postpone the application of workplace exposure protections for all exempted industry sectors. *Id.* at 6. EPA did not explain the rationale for granting this relief for all sectors even though the implementation concerns it cited only pertain to the two sectors (battery separation and manufacture of the PPG polymer) that have

---

[6] As of the filing of this brief, EPA has not published this notice.

sought stays of the Rule. *See id.* at 7 ("Several petitioners have raised serious questions concerning the validity of the workplace conditions imposed by the final rule's TSCA section 6(g) exemptions for lead-acid battery separator manufacturing and specialty microporous sheet material … [a]lthough EPA does not concede the allegations"). EPA asserted in both Federal Register notices that no public comment process was necessary.

On the same day that EPA signed the new notice, it also moved for an abeyance of deadlines for another 60 days, which Environmental Defense Fund, Center for Environmental Health, and the labor petitioners opposed. Case No. 25-1055, Dckt. No. 46. Yesterday, EPA replied and informed the Court that "EPA does not object to narrowing the scope of the judicial administrative stay to cover only the provisions that are subject to EPA's APA section 705 effective-date postponement (i.e., the Rule's provisions that apply to the Rule's TSCA section 6(g) exemptions")." Case No. 25-1055, Dckt. No. 46 (March 27, 2025), at 3-4. The Agency also noted that it had not conferred with petitioners about this proposal. *Id.* at 4.

Had the Agency sought the environmental petitioners' position, the petitioners would have objected, including on the basis that no party has presented evidence even purporting to support a stay of all provisions that apply to the Rule's numerous TSCA section 6(g) (15 U.S.C. § 2605(g)) exemptions.

## V. Movants' Employment of TCE is "Miniscule" Relative to the Broad Uses Amongst Many U.S. Industries

The three petitioners seeking a stay of part of the TCE rule ("Movants") use what EPA termed a "miniscule" volume of the universe of TCE employed. Case No. 25-1055, Dckt. No. 4, at 12.

Collectively, Movants total three companies[7] using TCE at three sites, out of the 23,000 domestic sites where the chemical is used.[8] TCE is used in more than 200 industry sectors; Movants represent two of them. Case No. 25-1083, Dckt. No. 15-2 (EPA Economic Analysis) at 245-280. Movants engage in two specific uses of TCE out of over 50 uses that EPA has deemed unreasonably risky to human health. *Id. at* 196-98; 89 Fed. Reg. at 102572.

In addition, as EPA has pointed out, Movants' activities involve a fraction of the production volume of TCE used in this country, of which over 83% is used in the manufacturing of refrigerants. Case No. 25-1083, Dckt. No. 15-2 (EPA

---

[7] One Movant-Petitioner is a trade group called "Alliance for a Strong U.S. Battery Sector" ("Alliance"), incorporated in 2024. Its only member relevant to the motion is ENTEK, an Oregon company. *See* Case No. 25-60010, Dckt. No. 15-4 (Jan. 21, 2025) (Alliance president describing prospective harm to ENTEK); Case No. 25-3007, Dckt. No. 5-4 at 3 (6th Cir.) ("Microporous is one of only two manufacturers of lead acid battery separators in the U.S. Entek International, LLC is the other").

[8] Motion to stay of Microporous, Case No. 25-1080, Dckt. No. 14-1 (Jan. 21, 2025) ("Microporous Brief") at 9; Motion to stay of PPG, Case No. 25-1118, Dckt. No. 2 (Jan. 21, 2025) ("PPG Brief") at 8; EPA, "Economic Analysis of the Regulation of Trichlorethylene under TSCA Section 6(a)," Case No. 25-1083, Dckt. No. 15-2, at 204; Alliance Brief at Dckt. 15-2, at 671.

Economic Analysis) at 198. The Movant companies, on the other hand, use TCE solely as a solvent, and only to make battery separators and Teslin, two of many products for which companies presently employ TCE across the country.

Overall, therefore, Movants' businesses expose TCE to a relatively small number of the people whom the Rule is meant to protect. For example, over 50,000 workers are exposed while working with TCE, along with almost 15,000 workplace bystanders. Case No. 25-1083, Dckt. No. 15-2 (EPA Economic Analysis) at 204. In comparison, the Movant companies employ less than 500 potentially exposed people in total. Microporous Brief at 4 (165 people); PPG Brief at 21 (up to 100 employees); Alliance Brief at Dckt. 15-4, at 2 (170).

In addition to workers, over 20,000 consumers are exposed to the chemical, Case No. 25-1083, Dckt. No. 15-2 (EPA Economic Analysis) at 198, along with many more people who live near facilities that emit the chemical. Over 8 million people live within one mile of a TCE facility and over 100 million people within 5 miles. *Id.* at 225. Some people live close enough to more than one plant to be exposed to multiple sources at once. For example, certain communities in Kentucky and Louisiana are exposed to over ten TCE-using facilities. *Id*.

Despite the fact that Movants represent a relatively small portion of facilities releasing TCE, their harmful impacts on their adjacent residential communities is notably high. In 2023, EPA published its analysis of the cancer risk to communities

surrounding facilities releasing TCE into the ambient air. EPA, "Trichlorethylene Fenceline Technical Support – Ambient Air Pathway," (Oct. 31, 2023), Docket [EPA-HQ-OPPT-2020-0642-0091](EPA-HQ-OPPT-2020-0642-0091). Out of 217 total TRI facilities that release TCE into the ambient air, the movants' three facilities account for 10% of the total cancer risk for all of the fenceline communities.[9]

## STANDARD OF REVIEW

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right." *New Jersey v. Trump*, 2025 U.S.App. LEXIS 5580, at *8 (1st Cir. March 11, 2025) (citing *Nken v. Holder*, 556 U.S. 418, 427 (2009)). Stay requestors have the burden to show, at the minimum, that they have a strong likelihood of success on the merits of their appeal; will suffer irreparable harm without the requested stay; that the stay will not substantially injure other parties interested in the proceedings; and that the stay would be in the public interest. *See Ohio v. EPA*, 603 U.S. 279, 291 (2024); *Nken*, 556 U.S at 433-34.

---

[9] *See id. at* 15-37 (Table_Apx C-1). Analysis was performed by adding the figures in the table's "arithmetic average" risk column for the central tendency statistic (a model assuming median TCE air concentrations). Where release data was available for only one year, the risk estimate from the single year was used. The total risk from the three Movant facilities was then divided by the total risk from all facilities and converted into a percentage.

# ARGUMENT

Movants are three petitioners from just two industry sectors among the more than 200 sectors subject to the Rule. They have presented argument and facts concerning one aspect of the Rule, and assert that continuation of that part of the Rule during this litigation would harm their three companies. *See* Microporous Brief at 3 ("Specifically, Microporous seeks to stay the portion of the Rule applying the WCPP to battery separator manufacturers"); *id.* at 25 (seeking a stay of 40 C.F.R. § 751.325(b)(5)(iii)-(iv)); Alliance Brief at 3-4 (seeking to stay the effective date and other portions of the Rule applying the WCPP to battery-separator manufacturers); *id.* at 12 (focusing on 40 C.F.R. § 751.325(b)(5)(iii)-(iv)); PPG Brief at 1-2; 17-24 (same, as applied to its *Teslin* material manufacturing).[10]

As EPA has noted, a stay is an "extraordinary remedy," and it has not been justified here. Case No. 25-1055, Dckt. No. 4, at 9. *See also J.G.G. v. Trump*, 2025 U.S.App.LEXIS 7131, at *39 (March 26, 2025). The Labor petitioners will be

---

[10] Although in its conclusion Movant PPG generically seeks a stay of the Rule pending review, Brief at 24, the company points only to the purported infeasibility of complying with the Rule's exposure limit. *See* PPG Brief at 1-2 ("the TCE Rule requires PPG's manufacturing plant to comply with a stringent TCE exposure limit … if the limit remains in place, PPG will be forced to stop producing *Teslin* altogether.") As PPG presented nothing that would support a stay as to any other company or use of TCE, nor to any portion of the Rule aside from the exposure limits, any claim for a broader stay must fail.

submitting a separate brief seeking denial of Movants' request for a stay of purportedly infeasible workplace requirements, or in the alternative seeking to limit the scope of the stay, and the environmental petitioners agree that the stay motions should be denied. Moreover, Movants' interests concern a relatively tiny part of the Rule's broad protections. *See* Section V, *supra* (TCE is used at over 20,000 sites in the U.S., exposing tens of thousands of workers, consumers, and community members to over 50 categories uses of the chemical that pose unreasonable risk).

For example, Movants do not manufacture products for consumer use. The Rule's protections for consumers were set to begin on March 17, 2025 (and would be in place now if not for the continued blanket administrative stay of the Rule imposed by the Fifth Circuit). 40 C.F.R. § 751.305. This Court has no cause to consider a stay of any portion of the Rule concerning consumer product manufacturing, processing, or distribution, because no party is before it arguing for such a stay, much less has established any prospect of harm from the onset of those provisions. *See Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) ("given preliminary injunctions' inherent risks, the challengers' generalized claim of harm is hardly enough to call for this 'extraordinary and drastic remedy.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

In contrast, Petitioners here establish that widespread harm will result from a blanket stay of the Rule. After comprehensive, peer-reviewed scientific evaluation under TSCA and notice-and-comment rulemaking, EPA established that the Rule's phaseouts of TCE in this country are necessary to protect human health. A blanket stay of the Rule – or, indeed, any stay of any portion of the Rule for which Movants have not met the stay factors – is thus legally unwarranted. *Nken v. Holder*, 556 U.S. 418, 427 (2009). It is also patently unjust for the broad swath of the Rule's beneficiaries to be denied health protections due to a specific-to-three-companies request for suspension of one portion of this important Rule.[11] Public interest demands the rejection of such a delay. "[T]he Supreme Court has overturned an injunction based solely on the balance of equities and the public interest." *Del. State Sportsmen's Ass'n* 108 F.4th at 202 (citing *Winter v. NRDC*, 555 U.S. 7, 26, 32 (2008)).

## CONCLUSION

For the reasons stated above, CEH and EDF respectfully request that the Court deny a stay of the Rule.

---

[11] For the same reasons, no basis exists for the continuation of the blanket administrative stay imposed by the Fifth Circuit in January. *See* Opposition of Labor and Environmental Petitioners to EPA's Motion to Hold this Case in Abeyance, Case No. 25-1055, Dckt. No. 45.

Dated: March 28, 2025              Respectfully submitted,

*/s/* Samantha Liskow
Samantha Liskow
ENVIRONMENTAL DEFENSE FUND
257 PARK AVE S
NEW YORK, NY 10010
(212) 616-1247
sliskow@edf.org
*Counsel for Environmental Defense Fund*


/s/ Robert M. Sussman
Robert M. Sussman
Sussman & Associates
310 Garfield St., N.W.
Washington, D.C. 20008
202-716-0118
bobsussman@comcast.net

*Counsel for Center for Environmental Health*

**CERTIFICATE OF COMPLIANCE**

This response brief complies with the type-volume limitation of Federal Rule of Appellate Procedure ("Rule") 27(d)(2)(A) because it contains 3,822 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). The motion also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED: March 28, 2025

*/s/ Samantha Liskow*
Samantha Liskow

**CERTIFICATE OF THIRD CIRCUIT BAR MEMBERSHIP**

Pursuant to Local Appellate Rule 28.3(d), I certify that I am a member of the bar of this Court.


Dated: March 28, 2025


/s/ Samantha Liskow
Samantha Liskow

**CERTIFICATE OF SERVICE**

I certify that today I filed the foregoing response brief by filing this document with the Clerk of the Court for the United States Court of Appeals for the Third Circuit, through the Electronic Case Filing (ECF) system.

DATED: March 28, 2025

*/s/ Samantha Liskow*
Samantha Liskow
