No. 25-1055; 25-1079; 25-1080; 25-1081; 25-1082; 25-1083; 25-1084; 25-1098; 25-1118; 25-1132; 25-1133; 25-1144; 25-1509
MCP No. 193

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

UNITED STEEL, PAPER, AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; ALLIANCE FOR A STRONG U.S. BATTERY SECTOR; TEXAS CHEMISTRY COUNCIL; MICROPOROUS, LLC; ENVIRONMENTAL DEFENSE FUND; OHIO CHEMISTRY TECHNOLOGY COUNCIL; OLIN CORPORATION; MISSOURI ALLIANCE FOR A STRONG US BATTERY SECTOR; CENTER FOR ENVIRONMENTAL HEALTH; AMERICAN CHEMISTRY COUNCIL; GEORGIA CHEMISTRY COUNCIL; TRENT CAPITAL PARTNERS, LLC; UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO; PPG INDUSTRIES, INC.; OLIN CORP.; AND VINYL INSTITUTE

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents.*

ON PETITION FOR REVIEW OF AGENCY ACTION OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

**RESPONDENTS' RESPONSE TO MOTIONS FOR STAY PENDING REVIEW AND MOTION TO LIFT ADMINISTRATIVE STAY**

# TABLE OF CONTENTS

Table of Contents ..................................................................................................ii

Table of Authorities ...............................................................................................iii

Introduction ............................................................................................................1

Background.............................................................................................................2

        A.     Statutory and Regulatory Background ............................................2

        B.     The TCE Rule....................................................................................3

        C.     Procedural History ............................................................................5

Standard of review ..................................................................................................8

Argument ................................................................................................................8

# TABLE OF AUTHORITIES

Cases

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ...................................................................................8

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................................................8

Statutes

5 U.S.C. § 705 .................................................................................................7

15 U.S.C. § 2605(a) .........................................................................................2

15 U.S.C. § 2605(b)(1)(B) ...............................................................................3

15 U.S.C. § 2605(b)(2)(A) ..........................................................................2, 3

15 U.S.C. § 2605(b)(3)-(4) ..............................................................................3

15 U.S.C. § 2605(c)-(d) ...................................................................................3

15 U.S.C. § 2605(g)(1) ....................................................................................3

15 U.S.C. § 2605(g)(4) ....................................................................................3

15 U.S.C. § 2608(a)-(b) ...................................................................................3

Regulations

40 C.F.R. § 751.325(a)(2) ...............................................................................1

89 Fed. Reg. 102568 (Dec. 17, 2024) ..........................................................4, 5

88 Fed. Reg. 1222 (Jan. 9, 2023) ....................................................................3

90 Fed. Reg. 8254 (Jan. 28, 2025) ..................................................................7

# INTRODUCTION

In this consolidated action, multiple petitioners challenge EPA's final rule regulating trichloroethylene, also known as TCE, under the Toxic Substances Control Act. Petitioners include manufacturers and industrial users of TCE who believe the Rule is too stringent and environmental and public health groups and labor unions who believe the Rule is too lenient.

Based on arguments about the Rule's workplace chemical protection program that applies to manufacturers and industrial users exempted from the Rule's ban of TCE, certain users ask the Court to stay the effective date of the Rule pending judicial review. By contrast, environmental and public health groups and labor unions ask the Court to lift the administrative stay imposed by the U.S. Court of Appeals for the Fifth Circuit before the pending petitions were consolidated in this Court.

EPA's new leadership is currently evaluating the provisions of the Rule that apply to facilities with exemptions that are at issue in the stay motions, and in the meantime has extended their effective dates until June 20, 2025. EPA therefore takes no position on the stay motions at this time. If the Court is inclined to address the administrative stay, it should narrow the stay's scope to encompass only the requirements imposed on the uses with exemptions. *See* 40 C.F.R. § 751.325(a)(2).

# BACKGROUND

### A.  Statutory and Regulatory Background

Congress originally enacted the Toxic Substances Control Act in 1976 "to prevent unreasonable risks of injury to health or the environment associated with the manufacture, processing, distribution in commerce, use, or disposal of chemical substances."  S. Rep. No. 94-698, at 1 (1976), as reprinted in 1976 U.S.C.C.A.N. 4491.  To that end, Congress authorized EPA to regulate chemical substances whose "manufacture, processing, distribution in commerce, use, or disposal . . . present[] an unreasonable risk of injury to health or the environment."  15 U.S.C. § 2605(a).

In 2016, Congress passed the Frank R. Lautenberg Chemical Safety for the 21st Century Act, which substantively amended the Toxic Substances Control Act.  Among other things, those amendments imposed a series of aggressive deadlines and quotas on EPA, including a requirement that the Agency begin evaluating risk and promulgating regulations for ten chemicals selected from a pre-determined list previously developed by the Agency.  15 U.S.C. § 2605(b)(2)(A).  TCE was one of the chemicals on EPA's list.

The Toxic Substances Control Act, as amended, sets up a three-step process by which EPA identifies and regulates chemicals.  First, EPA designates a chemical as either a "high-priority substance" or a "low-priority substance."  *Id.* at

2

§ 2605(b)(1)(B).  Second, EPA must conduct a "risk evaluation" to determine whether the substance presents an unreasonable risk of injury to health or the environment under the chemical's conditions of use.  *Id.* § 2605(b)(3)–(4).  Third, if EPA determines that the chemical presents an unreasonable risk, EPA proceeds to risk management to regulate the chemical "to the extent necessary so that the chemical substance or mixture no longer presents such risk."  *Id.* § 2605(a), (c)–(d).[1]

Section 2605(g) permits EPA to grant exemptions to bans or other risk management measures for a specific condition of use in certain circumstances, including when compliance would "significantly disrupt the national economy, national security, or critical infrastructure."  *Id.* § 2605(g)(1)(B).  As part of an exemption, EPA must include conditions on the exempted use of the chemical "to the extent that the Administrator determines the conditions are necessary to protect health and the environment while achieving the purposes of the exemption."  *Id.* § 2605(g)(4).

### B. The TCE Rule

TCE is a volatile organic compound used predominantly as an intermediate in the manufacture of refrigerants and a solvent in other commercial processes.

---

[1] EPA also may refer the matter or parts of the matter to another EPA program or appropriate federal agency.  *Id.* § 2608(a)–(b).

EPA's Risk Evaluation for TCE concluded that the chemical presents an unreasonable risk of injury.  *See* 88 Fed. Reg. 1222 (Jan. 9, 2023).

In light of this determination in the Risk Evaluation, EPA promulgated the final risk management rule under review here, entitled "Trichloroethylene (TCE); Regulation under the Toxic Substances Control Act (TSCA)."  89 Fed. Reg. 102568 (Dec. 17, 2024) (the "Rule").  The Rule covers a wide range of TCE uses and "prohibits manufacture, processing, distribution in commerce, and all industrial and commercial use of TCE and TCE-containing products."  *Id.* at 102595.  Relevant here, the Rule finalized section 2605(g) exemptions from the prohibition for TCE use as a processing aid for lead acid battery separator manufacturing and specialty polymeric microporous sheet material manufacturing.[2]  *Id.* at 102586–87.

To mitigate the risks associated with the continued use of TCE during the section 2605(g) exemption period, EPA requires regulated entities, including lead acid battery separator manufacturers and specialty polymeric microporous sheet material manufacturers, to comply with a workplace chemical protection program ("WCPP").  *Id.* at 102579.  Among other things, the WCPP requires that, to the

---

[2] A lead-acid battery separator is a microporous layer placed between the anode and cathode components that make batteries work.  *Id.* at 102586.  Specialty polymeric microporous sheet materials are films used in drivers' licenses, passports, chemical drum labels, and other products.  *Id.* at 102587.

extent possible, workers not be exposed to concentrations of TCE above an exposure limit. *Id.* In the proposed risk management rule, EPA considered an exposure limit of 0.0011 parts-per-million expressed as an 8-hour total working average. *Id.* However, given comments regarding the feasibility of reducing exposure below an exposure limit of 0.0011 parts-per-million, as well as limitations in the available technology for detecting TCE levels at that concentration, EPA finalized an exposure limit of 0.2 parts-per-million. *Id.* at 102580–81.

The Rule requires non-federal owners and operators of facilities covered by section 2605(g) exemptions to (1) complete initial monitoring by June 15, 2025; (2) implement exposure limits and a workplace information and training program and provide personal protective equipment by September 15, 2025; and (3) develop and implement an exposure control plan by December 18, 2025.

### C.     Procedural History

Multiple petitions for review challenge the Rule, which the Judicial Panel on Multidistrict Litigation consolidated in this Court. *See* ECF No. 5. Prior to the consolidation, Petitioners Alliance for a Strong U.S. Battery Sector and Microporous LLC filed stay motions in the Fifth and Sixth Circuit Courts of Appeals, respectively, seeking to stay the effective date and portions of the Rule that apply to battery separator manufacturers. ECF No. 8 at 12; Pet'r's Stay Mot.

(ECF No. 5) at 3, *Microporous LLC v. EPA*, No. 25-3007 (6th Cir. Jan. 13, 2025). The Fifth Circuit Court of Appeals entered an administrative stay January 13, 2025, which stayed the effective date of the Rule pending judicial consideration of Petitioner Alliance for a Strong U.S. Battery Sector's stay motion. Order at 2, *Alliance v. EPA*, No. 25-60010 (5th Cir. Jan. 13, 2025).

On January 16, 2025, this Court confirmed that the Fifth Circuit's administrative stay remained in effect until further order of the Court and ordered that EPA respond to the stay motions by January 28, 2025. *See* ECF No. 5.

On January 21, 2025, Petitioners Center for Environmental Health; Environmental Defense Fund; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; and United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial Workers International Union ("Environmental Petitioners") moved to revoke the administrative stay. ECF No. 12. On the same day, Petitioner PPG Industries, Inc. filed its own motion to stay the Rule in this Court. Pet'r's Stay Mot. (ECF No. 2), *PPG Industries v EPA*, No. 25-1118 (3rd Cir. Jan. 21, 2025).

The Court subsequently granted EPA's request for a 60-day extension of all case deadlines. ECF No. 19. EPA requested the extension so that it could review the Rule and take action consistent with Executive Order, "Regulatory Freeze Pending Review," which directs EPA to "consider postponing for 60 days from

6

[January 20, 2025] the effective date for any rules," like the one at issue here, that "have not taken effect, for the purpose of reviewing any questions of fact, law, and policy that the rules may raise."

On January 28, 2025, EPA issued a final rule delaying the effective date of the TCE Rule until March 21, 2025. "Delay of Effective Date for 4 Final Regulations Published by the Environmental Protection Agency between November 29, 2024, and December 31, 2024," 90 Fed. Reg. 8254 (Jan. 28, 2025).

On March 21, 2025, EPA signed a notice pursuant to section 705 of the Administrative Procedure Act, 5 U.S.C. § 705, further postponing the effective date of the provisions applicable to the conditions of use subject to Toxic Substances Control Act section 2605(g) exemptions by 90 days (or until June 20, 2025). Pre-publication Notice: "Postponement of Effective Date for Certain Provisions of Trichloroethylene (TCE); Regulation under the Toxic Substances Control Act (TSCA)" (Mar. 21, 2025) (attached as Exhibit 1).[3] In that notice, EPA explained that Petitioners in this matter have raised serious questions regarding the workplace protection provisions of the Rule warranting a delay of those effective dates. *Id.* at 6.

---

[3] Due to a document error, EPA resubmitted that notice for publication on March 28, 2025.

7

Also on March 21, 2025, EPA filed a request for a 60-day extension for all deadlines in this case, including to respond to the pending motions to stay and the pending motion to revoke the administrative stay. ECF No. 44. That motion remains pending.

## STANDARD OF REVIEW

A stay "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Petitioners Alliance for a Strong U.S. Battery Sector, Microporous LLC, and PPG Industries, Inc. ("Industry Petitioners") must establish that: (1) they are likely to succeed on the merits; (2) they will be imminently and irreparably injured absent a stay; (3) a stay will not injure other parties, and (4) a stay would be consistent with the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Where, as here, "the Government is the opposing party," the final two factors merge. *Id.* at 435.

## ARGUMENT

EPA takes no position on Industry Petitioners' stay motions at this time. As the Court is aware, a new Administration took office on January 20, 2025. The new Administration should be permitted to complete its evaluation of the Rule, including considering Industry Petitioners' arguments. Because EPA continues to

review the Rule, the Agency takes no position on Industry Petitioners' stay motions at this time.

Environmental Petitioners ask the Court to lift the administrative stay entered by the Fifth Circuit. If the Court is inclined to modify the administrative stay, it should narrow the stay's scope administrative to cover only the provisions subject to the section 705 extension and contested by Industry Petitioners in their stay motions. A narrowed administrative stay would permit the uncontested portions of the Rule to go into effect.

## CONCLUSION

Because EPA continues to review the Rule, the Agency takes no position on Industry Petitioners' stay motions at this time. If the Court is inclined to address the administrative stay, EPA does not object to narrowing its scope.

Respectfully submitted,

ADAM R. F. GUSTAFSON
*Acting Assistant Attorney General*

*Of Counsel:*
STEPHANIE SCHWARZ
AMANDA WELLS
   Office of the General Counsel
   U.S. Environmental Protection Agency
   Washington, D.C.

March 28, 2025

/s/ Laura J. Glickman
LAURA J. BROWN
LAURA J. GLICKMAN
*Environmental Defense Section*
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-6390
*Laura.Glickman@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing motion complies with the requirements of Fed. R. App. P. 27(d) because it contains 1844 words and is formatted in double-spaced 14-point Times New Roman font.

Dated: March 28, 2025

*/s/ Laura J. Glickman*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2025, I electronically filed the foregoing motion with the Clerk of the Court by using the appellate CM/ECF system. Service by the appellate CM/ECF system will be accomplished on the participants in this case that are registered CM/ECF users and have entered an appearance

*/s/ Laura J. Glickman*