No. 25-1055; 25-1079; 25-1080; 25-1081; 25-1082; 25-1083; 25-1084; 25-1098; 25-1118; 25-1132; 25-1133; 25-1144; 25-1509
MCP No. 193

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STEEL, PAPER, AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; ALLIANCE FOR A STRONG U.S. BATTERY SECTOR; TEXAS CHEMISTRY COUNCIL; MICROPOROUS, LLC; ENVIRONMENTAL DEFENSE FUND; OHIO CHEMISTRY TECHNOLOGY COUNCIL; OLIN CORPORATION; MISSOURI ALLIANCE FOR A STRONG US BATTERY SECTOR; CENTER FOR ENVIRONMENTAL HEALTH; AMERICAN CHEMISTRY COUNCIL; GEORGIA CHEMISTRY COUNCIL; TRENT CAPITAL PARTNERS, LLC; UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO; PPG INDUSTRIES, INC.; OLIN CORP.; AND VINYL INSTITUTE

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents.*

ON PETITION FOR REVIEW OF AGENCY ACTION OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

**DECLARATION IN SUPPORT OF MOTION TO HOLD CASE IN ABEYANCE**

1. I, Nancy B. Beck, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge, information contained in the records of the United States Environmental Protection Agency ("EPA" or "the Agency"), or information supplied to me by EPA employees under my supervision at EPA Headquarters. *See* 28 U.S.C. § 1746.

2. I am the Principal Deputy Assistant Administrator for the Office of Chemical Safety and Pollution Prevention ("OCSPP") within EPA. I have held this position since February of 2025; however, I held this position previously from December 2018 to January 2021, during which time I also served on detail as Senior Advisor to the Administrator of the Office of Information and Regulatory Affairs in the Office of Management and Budget from April 2020 to January 2021. Prior to rejoining EPA this year, I worked for a law firm as their Director of Regulatory Science. I hold a B.S. in Microbiology from Cornell University and an M.S. and Ph. D. in Environmental Health from the University of Washington.

3. The Office of Pollution Prevention and Toxics ("OPPT") in OCSPP is responsible for the administrative development of the regulation entitled, "Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA)," 89 Fed. Reg. 102568 (Dec. 17, 2024) ("TCE Rule" or "Rule"), as well as

for the underlying TCE risk evaluation and associated determination of unreasonable risk upon which the Rule is based.

4. On January 24, 2025, EPA requested a sixty-day extension of all deadlines in these consolidated matters to allow EPA time to brief new administration officials with decision making responsibility about this case and the issues presented. ECF No. 17. In particular, EPA requested the extension so that it could review the Rule and take action consistent with Executive Order, "Regulatory Freeze Pending Review," which directs EPA to "consider postponing for 60 days from [January 20, 2025] the effective date for any rules," like the one at issue here, that "have not taken effect, for the purpose of reviewing any questions of fact, law, and policy that the rules may raise."

5. On January 28, 2025, EPA issued a final rule delaying the effective date of the TCE Rule until March 21, 2025. "Delay of Effective Date for 4 Final Regulations Published by the Environmental Protection Agency between November 29, 2024 and December 31, 2024," 90 Fed. Reg. 8254 (Jan. 28, 2025).

6. On March 21, 2025, EPA signed a notice pursuant to section 705 of the Administrative Procedure Act, 5 U.S.C. § 705, further postponing the effective date of certain provisions of the Rule, including the workplace protection provisions applicable to the conditions of use subject to TSCA section 6(g), 15 U.S.C. § 2605(g), exemptions by 90-days (or until June 20, 2025). Postponement

of Effectiveness for Certain Provisions of Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA), 90 Fed. Reg. 14415 (Apr. 2, 2025). In that notice, EPA explained that the stay motions of three Industry Petitioners have raised serious questions regarding the workplace protection provisions of the TCE Rule that warrant a delay of those effective dates.

7. On March 21, 2025, Respondents United States Environmental Protection Agency, et al. filed a request to extend all litigation deadlines in this matter for an additional sixty days. ECF No. 44. EPA requested the second extension because EPA's new leadership was continuing to evaluate the provisions of the Rule at issue in the stay motions, including the compliance dates now further postponed by the section 705 notice. *Id.*

8. The Court granted the EPA's request and set a May 27, 2025, deadline for EPA to respond to the motions.

9. EPA has also received petitions under section 21 of TSCA, 15 U.S.C. § 2620, from petitioners PPG Industries, Inc., Alliance for a Strong U.S. Battery Sector and Microporous, LLC on March 24, 2025 and April 30, 2025. The petitions request that EPA amend the TCE Rule to modify certain TSCA section 6(g) exemptions that are related to the pending litigation. Under TSCA section 21(b)(3), 15 U.S.C. § 2620(b)(3), EPA has 90 days to grant or deny the petition.

10. OCSPP has now completed its review of the TCE Rule and determined that the TCE Rule at issue in these consolidated petitions for review should be reconsidered through further rulemaking. Accordingly, EPA, by and through OCSPP, believes that further abeyance of this action for Agency reconsideration of the challenged Rule is appropriate.

11. This declaration is filed in support of EPA's motion for abeyance. The purpose of this declaration is to explain the considerations informing EPA's request for abeyance and EPA's rationale for requesting abeyance.

12. Statutory Background

   a. The Toxic Substances Control Act ("TSCA") requires EPA to review chemical substances in commerce to determine whether they "present[] an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant to the risk evaluation by the Administrator, under the conditions of use." 15 U.S.C. § 2605(b)(4)(A).

   b. In conducting a risk evaluation, TSCA requires, among other things, that EPA "integrate and assess available information on hazards and exposures for the conditions of use of the chemical substance" to determine whether its use presents an unreasonable risk. *Id.* § 2605(b)(4)(F)(i). EPA conducts peer review activities on TSCA risk evaluations consistent with applicable peer

review policies, procedures, and methods, *see id.* § 2625(h) and (o)(1)–(2), and must publish draft risk evaluations for public comment, *id.* § 2605(b)(4)(H). EPA must respond to peer review analysis and public comments, including any data received, when finalizing the risk evaluation.

  c. A determination of unreasonable risk triggers the next step in the process, risk management. *Id.* § 2605(a), (c). During the risk management phase, EPA goes through a public rulemaking process, selecting among various risk management tools laid out in § 2605(a) to "apply one or more . . . requirements . . . to the extent necessary so that the chemical substance . . . no longer presents" the unreasonable risk of injury to health or the environment, under the conditions of use, determined in the risk evaluation. *Id.* § 2605(a).

  d. In "selecting among prohibitions and other restrictions," section 2605(c) requires EPA to "factor in, to the extent practicable," several considerations, including the chemical substance's effects on health and the environment, the magnitude of exposure to the chemical substance, its benefits for various uses, and "the reasonably ascertainable economic consequences of the rule." *Id.* § 2605(c)(2)(A)-(B). Additionally, in deciding whether to prohibit or restrict a condition of use of a chemical substance (and in setting an appropriate transition period, *id.* § 2605(d)), EPA must "consider, to the extent practicable, whether technically and economically feasible alternatives that benefit health or

6

the environment, compared to the use so proposed to be prohibited or restricted, will be reasonably available as a substitute when the proposed prohibition or other restriction takes effect." *Id.* § 2605(c)(2)(C).

        e.     Both the risk evaluation and subsequent risk management rulemaking must also meet statutory requirements that the actions be based on the best available science, the weight of the scientific evidence, and "information relating to a chemical substance or mixture, including hazard and exposure information, under the conditions of use, that is reasonably available to the Administrator." *Id.* § 2625(h), (i), (k).

13.    During abeyance, OCSPP intends to reconsider the TCE Rule through notice-and-comment rulemaking, including the use of the Existing Chemical Exposure Limit (ECEL) of 0.2 ppm promulgated as part of the Workplace Chemical Protection Program for TCE as applied to uses with TSCA section 6(g), 15 U.S.C. § 2605(g), exemptions. OCSPP may also reconsider other aspects of the TCE Rule.

14.    OCSPP intends to solicit early stakeholder input, issue a proposed rule seeking public comment on potential changes to the TCE Rule, and finalize a new rule based on public input. EPA expects this process, including any regulatory changes, to take between 18-24 months.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Nancy B. Beck, Ph.D., DABT
Principal Deputy Assistant Administrator
Office of Chemical Safety and Pollution Prevention
U.S. Environmental Protection Agency