No. 25-1055; 25-1079; 25-1080; 25-1081; 25-1082; 25-1083; 25-1084; 25-1098;
25-1118; 25-1132; 25-1133; 25-1144; 25-1509
MCP No. 193

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STEEL, PAPER, AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; ALLIANCE FOR A STRONG U.S. BATTERY SECTOR; TEXAS CHEMISTRY COUNCIL; MICROPOROUS, LLC; ENVIRONMENTAL DEFENSE FUND; OHIO CHEMISTRY TECHNOLOGY COUNCIL; OLIN CORPORATION; MISSOURI ALLIANCE FOR A STRONG US BATTERY SECTOR; CENTER FOR ENVIRONMENTAL HEALTH; AMERICAN CHEMISTRY COUNCIL; GEORGIA CHEMISTRY COUNCIL; TRENT CAPITAL PARTNERS, LLC; UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO; PPG INDUSTRIES, INC.; AND VINYL INSTITUTE

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents.*

ON PETITION FOR REVIEW OF AGENCY ACTION OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

**RESPONDENTS' RESPONSE TO MOTIONS
FOR STAY PENDING REVIEW**

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION .................................................................................................1

BACKGROUND ...................................................................................................1

       A.      Statutory and Regulatory Background..........................................1

       B.      The TCE Rule ................................................................................3

       C.      Procedural History .........................................................................5

STANDARD OF REVIEW ...................................................................................8

ARGUMENT .........................................................................................................8

CONCLUSION ......................................................................................................9

# TABLE OF AUTHORITIES

Cases

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ...................................................................................8

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................8

Statutes

5 U.S.C. § 705 .................................................................................................7

15 U.S.C. § 2605(a) .........................................................................................2

15 U.S.C. § 2605(b)(1)(B) ...............................................................................3

15 U.S.C. § 2605(b)(2)(A) ...........................................................................2, 3

15 U.S.C. § 2605(b)(3)-(4) ..............................................................................3

15 U.S.C. § 2605(c)-(d) ...................................................................................3

15 U.S.C. § 2605(g)(1) ....................................................................................3

15 U.S.C. § 2605(g)(4) ....................................................................................3

15 U.S.C. § 2608(a)-(b) ...................................................................................3

Regulations

40 C.F.R. § 751.325(a)(2) ................................................................................1

89 Fed. Reg. 102568 (Dec. 17, 2024) ..........................................................4, 5

88 Fed. Reg. 1222 (Jan. 9, 2023) .....................................................................3

90 Fed. Reg. 8254 (Jan. 28, 2025) ...................................................................7

**INTRODUCTION**

In this consolidated action, multiple petitioners challenge EPA's final rule regulating trichloroethylene, also known as TCE, under the Toxic Substances Control Act. Petitioners include manufacturers and industrial users of TCE who believe the Rule is too stringent and environmental and public health groups and labor unions who believe the Rule is too lenient.

Based on arguments about the Rule's workplace chemical protection program that applies to manufacturers and industrial users exempted from the Rule's ban of TCE, certain users ask the Court to stay the effective date of the Rule pending judicial review.

As described in further detail below, because EPA plans to reconsider the Rule through notice-and-comment-rulemaking, the Agency does not oppose a stay of the Rule's provisions that are subject to the Agency's previously-issued section 705 notice. In doing so, however, EPA takes no position on the merits of the underlying arguments in those stay motions.

**BACKGROUND**

**A.   Statutory and Regulatory Background**

Congress originally enacted the Toxic Substances Control Act in 1976 "to prevent unreasonable risks of injury to health or the environment associated with the manufacture, processing, distribution in commerce, use, or disposal of

1

chemical substances." S. Rep. No. 94-698, at 1 (1976), as reprinted in 1976 U.S.C.C.A.N. 4491.  If the Agency makes a determination that a chemical substance presents an unreasonable risk, under the conditions of use, Congress authorized EPA to regulate the "manufacture, processing, distribution in commerce, use, or disposal . . . so that the chemical substance no longer presents such risk."  15 U.S.C. § 2605(a).

In 2016, Congress passed the Frank R. Lautenberg Chemical Safety for the 21st Century Act, which substantively amended the Toxic Substances Control Act.  Among other things, those amendments imposed a series of aggressive deadlines and quotas on EPA, including a requirement that the Agency begin evaluating risk and promulgating regulations for ten chemicals selected from a pre-determined list previously developed by the Agency.  15 U.S.C. § 2605(b)(2)(A).  TCE was one of the chemicals on EPA's list.

The Toxic Substances Control Act, as amended, sets up a three-step process by which EPA identifies and regulates chemicals.  First, EPA designates a chemical as either a "high-priority substance" or a "low-priority substance." *Id.* at § 2605(b)(1)(B).  Second, EPA must conduct a "risk evaluation" to determine whether the substance presents an unreasonable risk of injury to health or the environment under the chemical's conditions of use.  *Id.* § 2605(b)(3)–(4).  Third, if EPA determines that the chemical presents an unreasonable risk, under the

conditions of use, EPA proceeds to risk management to regulate the chemical "to the extent necessary so that the chemical substance or mixture no longer presents such risk." *Id.* § 2605(a), (c)–(d).[1]

Section 2605(g) permits EPA to grant exemptions to bans or other risk management measures for a specific condition of use in certain circumstances, including for "critical or essential use for which no technically and economically feasible safer alternative is available" or when compliance would "significantly disrupt the national economy, national security, or critical infrastructure." *Id.* § 2605(g)(1)(A)–(B). As part of an exemption, EPA must include conditions on the exempted use of the chemical "to the extent that the Administrator determines the conditions are necessary to protect health and the environment while achieving the purposes of the exemption." *Id.* § 2605(g)(4).

### B. The TCE Rule

TCE is a volatile organic compound used predominantly as an intermediate in the manufacture of refrigerants and a solvent in other commercial processes. EPA's Risk Evaluation for TCE concluded that the chemical presents an unreasonable risk of injury. *See* 88 Fed. Reg. 1222 (Jan. 9, 2023).

---

[1] EPA also may refer the matter or parts of the matter to another EPA program or appropriate federal agency. 15 U.S.C. § 2608(a)–(b).

In light of this determination in the Risk Evaluation, EPA promulgated the final risk management rule under review here, entitled "Trichloroethylene (TCE); Regulation under the Toxic Substances Control Act (TSCA)." 89 Fed. Reg. 102568 (Dec. 17, 2024) (the "Rule"). The Rule covers a wide range of TCE uses and "prohibits manufacture, processing, distribution in commerce, and all industrial and commercial use of TCE and TCE-containing products." *Id.* at 102595. Relevant here, the Rule finalized section 2605(g) time-limited exemptions from the prohibition for TCE use as a processing aid for lead acid battery separator manufacturing and specialty polymeric microporous sheet material manufacturing.[2] *Id.* at 102586–87.

To mitigate the risks associated with the continued use of TCE during the section 2605(g) exemption period, EPA requires regulated entities, including lead acid battery separator manufacturers and specialty polymeric microporous sheet material manufacturers, to comply with a workplace chemical protection program ("WCPP"). *Id.* at 102579. Among other things, the WCPP requires that, to the extent possible, workers not be exposed to concentrations of TCE above an exposure limit. *Id.* In the proposed risk management rule, EPA considered an

---

[2] A lead-acid battery separator is a microporous layer placed between the anode and cathode components that make batteries work. *Id.* at 102586. Specialty polymeric microporous sheet materials are films used in drivers' licenses, passports, chemical drum labels, and other products. *Id.* at 102587.

exposure limit of 0.0011 parts-per-million expressed as an 8-hour total working average. *Id.* However, given comments regarding the feasibility of reducing exposure below an exposure limit of 0.0011 parts-per-million, as well as limitations in the available technology for detecting TCE levels at that concentration, EPA finalized an exposure limit of 0.2 parts-per-million. *Id.* at 102580–81.

The Rule requires non-federal owners and operators of facilities covered by section 2605(g) exemptions to (1) complete initial monitoring by June 16, 2025; (2) implement exposure limits and a workplace information and training program and provide personal protective equipment by September 15, 2025; and (3) develop and implement an exposure control plan by December 18, 2025.

C.  **Procedural History**

Multiple petitions for review challenge the Rule, which the Judicial Panel on Multidistrict Litigation consolidated in this Court. *See* ECF No. 5. Prior to the consolidation, Petitioners Alliance for a Strong U.S. Battery Sector and Microporous LLC filed stay motions in the Fifth and Sixth Circuit Courts of Appeals, respectively, seeking to stay the effective date and portions of the Rule that apply to battery separator manufacturers. ECF No. 8 at 12; Pet'r's Stay Mot. (ECF No. 5) at 3, *Microporous LLC v. EPA*, No. 25-3007 (6th Cir. Jan. 13, 2025). The Fifth Circuit Court of Appeals entered an administrative stay January 13,

2025, which stayed the effective date of the Rule pending judicial consideration of Petitioner Alliance for a Strong U.S. Battery Sector's stay motion. Order at 2, *Alliance v. EPA*, No. 25-60010 (5th Cir. Jan. 13, 2025).

On January 16, 2025, this Court confirmed that the Fifth Circuit's administrative stay remained in effect until further order of the Court and ordered that EPA respond to the stay motions by January 28, 2025. *See* ECF No. 5.

On January 21, 2025, Petitioners Center for Environmental Health; Environmental Defense Fund; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; and United Steel, Paper and Forestry, Rubber Manufacturing, Energy, and Allied Industrial Workers International Union moved to revoke the administrative stay. ECF No. 12. On the same day, Petitioner PPG Industries, Inc. filed its own motion to stay the Rule in this Court. Pet'r's Stay Mot., *PPG Indus. v. EPA*, No. 25-1118 (3rd Cir. Jan. 21, 2025, ECF No. 2.

The Court subsequently granted EPA's request for a 60-day extension of all case deadlines. ECF No. 19. EPA requested the extension so that it could review the Rule and take action consistent with Executive Order, "Regulatory Freeze Pending Review," which directs EPA to "consider postponing for 60 days from [January 20, 2025] the effective date for any rules," like the one at issue here, that

"have not taken effect, for the purpose of reviewing any questions of fact, law, and policy that the rules may raise."

On January 28, 2025, EPA issued a final rule delaying the effective date of the TCE Rule until March 21, 2025. "Delay of Effective Date for 4 Final Regulations Published by the Environmental Protection Agency between November 29, 2024, and December 31, 2024," 90 Fed. Reg. 8254 (Jan. 28, 2025).

On March 21, 2025, EPA signed a notice pursuant to section 705 of the Administrative Procedure Act, 5 U.S.C. § 705, further postponing the effective date of the provisions applicable to the conditions of use subject to section 2605(g) exemptions by 90 days (or until June 20, 2025). Postponement of Effectiveness for Certain Provisions of Trichloroethylene (TCE); Regulation under the Toxic Substances Control Act (TSCA), 90 Fed. Reg. 14415 (Apr. 2, 2025). In that notice, EPA explained that Petitioners Alliance for a Strong U.S. Battery Sector, Microporous LLC, and PPG Industries, Inc. ("Industry Petitioners") raised serious questions regarding the WCPP that warrant a delay of the effective dates of those provisions. *Id.* at 14416.

On March 28, 2025, the Court lifted the administrative stay except as to the provisions that are subject to EPA's section 705 notice. ECF No. 53. The Court also ordered EPA to file any response to the pending stay motions by May 27, 2025. *Id.*

On May 27, 2025, EPA moved to hold the case in abeyance so that it can reconsider the Rule through notice-and-comment rulemaking. ECF No. 57. Relevant here, EPA will revisit the exposure limit set as part of the WCPP that applies to conditions of use subject to section 2605(g) exemptions. Decl. of Dr. Nancy B. Beck, ECF No. 57-2, ¶ 13.

## STANDARD OF REVIEW

A stay "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Petitioners Alliance for a Strong U.S. Battery Sector, Microporous LLC, and PPG Industries, Inc. ("Industry Petitioners") must establish that: (1) they are likely to succeed on the merits; (2) they will be imminently and irreparably injured absent a stay; (3) a stay will not injure other parties, and (4) a stay would be consistent with the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Where, as here, "the Government is the opposing party," the final two factors merge. *Id.* at 435.

## ARGUMENT

In light of the issues raised in Petitioners' stay motions, EPA's intent to revisit through notice-and-comment rulemaking the Rule's exposure limit applicable to conditions of use subject to section 2605(g) exemptions, and Industry Petitioners' allegations of harm from the provisions being revisited, EPA does not

oppose Industry Petitioners' request to stay the effective date of those provisions. Put differently, EPA does not oppose a judicial stay of the Rule's provisions that are currently subject to the Agency's section 705 notice. In doing so, however, EPA takes no position on the merits of Industry Petitioners' underlying arguments. EPA intends to closely review the provisions at issue and arguments raised by Industry Petitioners as EPA develops the forthcoming notice-and-comment rulemaking. Accordingly, EPA is unable to represent its ultimate conclusions on these issues at this time, and does not make any concessions here as to issues that will be addressed in that rulemaking.

## CONCLUSION

EPA does not oppose a stay of the Rule's provisions that are currently subject to the Agency's section 705 notice.

Respectfully submitted,

ADAM R. F. GUSTAFSON
  *Acting Assistant Attorney General*

*Of Counsel:*
STEPHANIE SCHWARZ
AMANDA WELLS
  Office of the General Counsel
  U.S. Environmental Protection Agency
  Washington, D.C.

May 27, 2025

 /s/ Laura J. Glickman
LAURA J. BROWN
LAURA J. GLICKMAN
  *Environmental Defense Section*
  Environment and Natural Resources Division
  U.S. Department of Justice
  P.O. Box 7611
  Washington, D.C. 20044
  (202) 514-6390
  *Laura.Glickman@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Response complies with the requirements of Fed. R. App. P. 27(d) because it contains 1866 words and is formatted in double-spaced 14-point Times New Roman font.

Dated: May 27, 2025

<em>/s/ Laura J. Glickman</em>

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2025, I electronically filed the foregoing Response with the Clerk of the Court by using the appellate CM/ECF system. Service by the appellate CM/ECF system will be accomplished on the participants in this case that are registered CM/ECF users and have entered an appearance.

*/s/ Laura J. Glickman*