No. 25-1055; 25-1079; 25-1080; 25-1081; 25-1082; 25-1083; 25-1084; 25-1098; 25-1118; 25-1132; 25-1133; 25-1144; 25-1509
MCP No. 193

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STEEL, PAPER, AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; ALLIANCE FOR A STRONG U.S. BATTERY SECTOR; TEXAS CHEMISTRY COUNCIL; MICROPOROUS, LLC; ENVIRONMENTAL DEFENSE FUND; OHIO CHEMISTRY TECHNOLOGY COUNCIL; OLIN CORPORATION; MISSOURI ALLIANCE FOR A STRONG US BATTERY SECTOR; CENTER FOR ENVIRONMENTAL HEALTH; AMERICAN CHEMISTRY COUNCIL; GEORGIA CHEMISTRY COUNCIL; TRENT CAPITAL PARTNERS, LLC; UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO; PPG INDUSTRIES, INC.; OLIN CORP.; AND VINYL INSTITUTE

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents.*

ON PETITION FOR REVIEW OF AGENCY ACTION OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

**EMERGENCY JOINT MOTION TO ESTABLISH BRIEFING FORMAT AND MODIFY SCHEDULE**

Pursuant to Federal Rule of Appellate Procedure 26(b), 27, and 32 and Third Circuit Rules 31.4 and 32.1, Industry[1] and Environmental Petitioners,[2] Respondents United States Environmental Protection Agency and its Administrator Lee Zeldin (collectively "EPA"), and Intervenors jointly move the Court to establish a format and schedule for briefing on the petitions for review.

Since the current deadline for filing opening briefs is April 14, 2026, we respectfully ask the Court to act on this joint motion as soon as possible.

In support of this Motion, the parties submit the following:

**I.     Background**

1.     This action involves 12 petitions for review filed by environmental groups, industry associations, and individual companies in January 2025.

2.     These petitions challenge a final rule entitled "Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA)" promulgated

---

[1] The "Industry Petitioners" are the American Chemistry Council, Georgia Chemistry Council, Texas Chemistry Council, Microporous, LLC, Alliance for a Strong U.S. Battery Sector, Missouri Alliance for a Strong U.S. Battery Sector, Trent Capital Partners, Ohio Chemistry Technology Council, PPG Industries, Inc., Vinyl Institute, Inc., and Olin Corporation.
[2] The "Environmental Petitioners" are Environmental Defense Fund ("EDF") and Center for Environmental Health ("CEH")

by EPA on December 17, 2024. 89 Fed. Reg. 102,568 (codified at 40 C.F.R. Part 751 Subpart D) ("TCE Rule").

3. The petitions were consolidated in this Circuit pursuant to the Judicial Panel on Multidistrict Litigation's January 15, 2025 order. ECF No. 5.

4. Prior to the consolidation, Petitioners Alliance for a Strong U.S. Battery Sector and Microporous, LLC filed stay motions in the Fifth and Sixth Circuit Courts of Appeals, respectively. The Fifth Circuit Court of Appeals entered an administrative stay on January 13, 2025, which stayed the effective date of the TCE Rule pending judicial consideration of Petitioner Alliance for a Strong U.S. Battery Sector's stay motion.

5. On January 16, 2025, this Court confirmed that the Fifth Circuit's administrative stay remained in effect until further order of the Court and ordered that EPA respond to the stay motions by January 28, 2025. ECF No. 5.

6. On January 21, 2025, Petitioner PPG Industries, Inc. filed its own motion to stay the TCE Rule in this Court. Pet'r's Stay Mot., *PPG Indus. v. EPA*, No. 25-1118 (Jan. 21, 2025), ECF No. 2.

7. On March 21, 2025, EPA signed a notice pursuant to section 705 of the Administrative Procedure Act (APA), 5 U.S.C. § 705, postponing the effective date of the provisions applicable to the conditions of use subject to TSCA section 6(g) exemptions by 90 days (or until June 20, 2025). "*Postponement of Effectiveness for*

2

*Certain Provisions of Trichloroethylene (TCE); Regulation under the Toxic Substances Control Act (TSCA)*," 90 Fed. Reg. 14415 (Apr. 2, 2025). In that notice, EPA explained that Petitioners Alliance for a Strong U.S. Battery Sector, Microporous, LLC, and PPG Industries, Inc. had raised serious questions regarding the TCE Rule's workplace-related conditions on those exemptions that warranted a delay of the effective dates of those provisions. *Id.* at 14416.

8.      EPA has signed four additional notices postponing the effective date of the provisions applicable to the conditions of use subject to TSCA section 6(g) exemptions. "*Extension of Postponement of Effectiveness for Certain Provisions of Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA)*," 91 Fed. Reg. 7401 (Feb. 18, 2026). The most recent notice was signed on February 12, 2026, postponing the effective date of the provisions applicable to the conditions of use subject to TSCA section 6(g) exemptions until May 18, 2026. *Id.* As a result of a comprehensive administrative stay issued by the Fifth Circuit before consolidation, the petitions were put on hold until a narrower administrative stay applicable to portions of the TCE rule was issued by the Court on March 28, 2025. ECF No. 53.

9.      EPA filed the certified index to the record on March 28, 2025. ECF No. 51.

10. EPA moved for an indefinite abeyance of briefing on May 27, 2025, explaining that the Agency intends to reconsider the Rule through notice-and-comment rulemaking. ECF No. 57.

11. On June 17, 2025, the Court granted the motions to intervene of EDF, CEH, United Steel Workers ("USW") and United Auto Workers ("UAW") (collectively "Intervenors"). ECF No. 67.

12. On November 7, 2025, the Court ordered certain parties to submit letter briefs on issues raised by the pending motions. ECF Nos. 71-7[. These briefs and responses were filed on November 23, 2025, December 23 and 30, 2025, and January 7 and 16, 2026. ECF Nos. 74-82.

13. The several pending motions were decided in an order of the Court issued on February 11, 2026. ECF No. 83. The order dismissed without prejudice as not ripe the stay motions filed by the Alliance for a Strong U.S. Battery Sector, Microporous LLC, and PPG, denied EPA's May 27, 2025 abeyance motion, lifted the Court's March 28, 2025 partial administrative stay of the rule, and directed the Clerk to issue a briefing schedule for the petitions for review.

14. On February 12, 2026, the Court issued a notice requiring the filing of opening briefs by petitioners on March 24, 2026. ECF No. 84.

15.     On March 13, 2026, industry petitioners filed an unopposed motion for an extension of time for filing opening briefs so that the parties could negotiate a revised briefing schedule and format.  ECF No. 87.

16.     On March 18, 2026, the Court granted the unopposed motion of industry petitioners for an extension of the deadline for opening briefs until April 14, 2026. ECF No. 88.

## II.     Proposed Briefing Formats and Schedules

Although all parties respectfully request that the Court establish a briefing format and modify the current schedule, they do not agree on either the appropriate format or the appropriate schedule. Thus, the parties are presenting two proposals to the Court as follows:

### A.     Proposal of Environmental Petitioners, Intervenors and EPA

Respondent EPA, the Environmental Petitioners and Intervenors propose the following briefing format and schedule:

| Date | Filing Due | No. of Words |
|---|---|---|
| May 14, 2026 | Petitioners' Opening Briefs | 18,000 collectively for Environmental Petitioners (to be divided among parties)<br><br>18,000 collectively for Industry Petitioners (to be divided among parties) |
| August 5, 2026 | EPA Response Brief | 36,000 |

| | | |
|---|---|---|
| August 21, 2026 | Intervenor Briefs | 18,000 collectively for Labor and Environmental Intervenors (to be divided among parties) |
| September 21, 2026 | Reply Briefs | 9,000 collectively for Labor and Environmental Petitioners (to be divided among parties) |
| | | 9,000 collectively for Industry Petitioners (to be divided among parties) |
| September 28, 2026 | Deferred Joint Appendix | |
| October 5, 2026 | Final Briefs | |

## B.     Proposal of Industry Petitioners

Petitioners Alliance for a Strong U.S. Battery Sector, Microporous, LLC, PPG Industries, Inc., Trent Capital Partners, and Missouri Alliance for a Strong U.S. Battery Sector (collectively, the "Section 6(g) Petitioners"), and Petitioners American Chemistry Council, Georgia Chemistry Council, Ohio Chemistry Technology Council, Texas Chemistry Council, Olin Corporation, and Vinyl Institute (collectively, the "Chemistry Council Petitioners") propose the following briefing format and schedule[3]:

_____

[3] Petitioners Alliance for a Strong U.S. Battery Sector, Trent Capital Partners and Microporous, LLC agree with the other Industry Petitioners regarding the proposed briefing format but take no position regarding the proposed briefing schedule.

| Date | Filing Due | No. of Words |
|---|---|---|
| April 14, 2026 | Petitioners Opening Briefs | 39,000 words, to be divided as follows: One standard-length brief for Environmental Petitioners One standard-length brief for Section 6(g) Petitioners One standard-length brief for Chemistry Council Petitioners |
| June 16, 2026 | EPA Response Brief | 39,000 words |
| June 23, 2026 | Intervenor Briefs | 18,200 words collectively for Labor and Environmental Intervenors (to be divided among parties) |
| July 14, 2026 | Reply Briefs | 19,500 words, to be divided as follows: One standard-length reply for Environmental Petitioners One standard-length reply for Section 6(g) Petitioners One standard-length reply for Chemistry Council Petitioners |
| July 21, 2026 | Deferred Joint Appendix | |
| July 28, 2026 | Final Briefs | |

**III. Rationale for Proposed Briefing Formats and Schedules**

**A. Position of Labor and Environmental Parties**

17. The EPA rule at issue imposes a comprehensive ban on the conditions of use of TCE, a widely used solvent which causes numerous harmful health effects, under section 6(a) of the Toxic Substances Control Act ("TSCA"). Accompanying the ban are time-limited exemptions for certain TCE uses which EPA found could not be eliminated immediately. The rule applies the enhanced regulatory authority Congress provided to EPA under the 2016 TSCA Amendments, and this Court will be examining the new statutory language for the first time. A case challenging another rule under TSCA section 6(a) has been briefed and argued before the Fifth Circuit but not yet decided. *East Fork Enterprises et al., v. EPA,* 24-60227 (5th Cir.). The petitioners seeking review of the rule include manufacturers and users of TCE and associations representing these industries, environmental and public health organizations concerned about the harmful effects of TCE on the health of workers and other exposed populations, and labor and environmental intervenors seeking to defend the rule against challenges by industry petitioners.

18. Collectively the petitioners will likely raise several issues relating to the rule's validity. The administrative record for the rule is extensive, spanning EPA's work on TCE over several years, and includes not just the section 6(a) rulemaking

itself but the comprehensive TCE risk evaluation under section 6(b) which preceded it.

19.    Briefing of the merits of this case has been on hold for 14 months as a result of extensive briefing of motions by industry petitioners seeking to stay various provisions of the rule and EPA's efforts to obtain extensions of deadlines and then an indefinite abeyance of the entire case while it reviewed and reconsidered the rule. Environmental petitioners have not sought any delays in the progress of this case and in fact opposed the delays sought by other parties. In recent briefs on industry stay motions, the environmental petitioners were the only parties who urged the Court to proceed with briefing the merits (ECF Nos. 76, 82), a recommendation the Court incorporated in its February 11 order. ECF No. 83.

20.    The environmental petitioners cannot feasibly file opening briefs by the April 14 deadline proposed by certain industry petitioners. This deadline is 15 days from today.  After 14 months of inaction in this case, the environmental petitioners had no reason to begin reviewing the voluminous administrative record and analyzing the relevant legal issues before the Court's February 12 briefing notice. The two lawyers representing these petitioners are overburdened with commitments in other cases and cannot call on additional resources. Sticking with the current April 14 deadline as certain industry petitioners propose would be highly prejudicial to environmental petitioners, who could not file a thorough, well-documented brief that

thoughtfully informs the Court about the shortcomings of the TCE rule and the justification for strengthening the health and environmental protections it affords.

21. The schedule proposed by environmental petitioners and EPA would provide an extension of only one month from the current April 14 filing date to file opening briefs. This is a modest extension and could not possibly prejudice the industry petitioners, who at no time asked the Court to set a briefing schedule during the lengthy period when this case was on hold. While the Chemical Council petitioners claim to need an expedited briefing schedule so that the Court issues a decision before they must comply with the rule, this possibility should have been apparent when the rule was finalized in December 2024. Thereafter, these petitioners could at any time have asked EPA to extend the rule's compliance deadlines or moved the Court for a stay of these deadlines, as the 6(g) petitioners did immediately after the rule was promulgated. Yet the Chemical Council petitioners were silent in the face of the lengthy delays of this case that were occasioned by the multiple motions of the section 6(g) petitioners and EPA. Even now, they have not explained or justified the claimed burdens that a delay in the timing of the Court's decision would impose on their members. Thus, their case for a truncated briefing schedule that imposes extreme hardships on environmental petitioners, EPA and the intervenors and pressures the Court for a rapid decision rests on concerns that are purely hypothetical and speculative.

22. The insistence of all the industry petitioners on filing two standard length briefs while limiting environmental petitioners to only one such brief would provide them with an unwarranted advantage at the expense of the other parties and create additional work for the Court. The normal practice in cases involving multiple parties is to divide the allotted words evenly between the different sides so their positions are equally represented before the court. Where the parties plan to brief multiple issues, the preferred remedy is not to allow parties on the same side to file two whole-length briefs but to provide additional words to both sides, as the briefing proposal of the environmental petitioners and EPA seeks to accomplish.

23. While the specific challenges to the TCE rule of the two groups of industry petitioners may differ in some respects, the issues will likely overlap and a common legal framework and set of facts will govern all of their arguments. A single joint brief with an enlarged word limit would avoid duplication while providing the Chemical Council and 6(g) petitioners sufficient space to present their positions. There is no reason to presume that the issues presented by environmental petitioners will be dramatically more limited or less complex than those presented by the industry petitioners, who are seeking twice the number of words than would be allotted to the environmental petitioners. Moreover, this unequal word allocation would be maintained for reply briefs, compounding the unfairness to environmental petitioners.

24.     The Chemical Council petitioners' proposed compression of the briefing deadlines for EPA's responsive brief, intervenors' brief and environmental petitioner replies is arbitrary and would place sizable burdens on these parties without any tangible benefit. The assumption behind these unreasonable deadlines is that, by accelerating completion of briefing by two months, the Court will render a decision in time to provide relief from the rule's compliance deadlines for TCE manufacturers and processors. But this is far from certain given the many imponderables of the judicial process  and in any case Chemical Council petitioners have not identified the specific compliance dates they hope to avoid, nor have they explained why they would be adversely affected if these dates remained in effect.

25.     CEH counsel will be unavailable from June 12 to July 11 because of a long-scheduled vacation. The Chemical Counsel proposal calls for filing of the intervenor brief on June 23, which would be infeasible given CEH counsel's absence from the U.S. The proposal schedule of the envirommental petitioners, EPA and intervenors would avoid this problem.

26.     In addition, counsel for petitioner CEH and the labor intervenors will likely be involved in the oral argument another TSCA section 6 case, *Texas Chemistry Council v. EPA*, No. 24-60193 (5th Cir.), which is scheduled for the first week of June, This is a further reason why filing intervenors' brief on June 23, as the industry proposal calls for, is simply not practicable.

**B.      Position of EPA**

27.      EPA supports the longer briefing schedule and format proposed by Environmental Petitioners, i.e., two 18,000-word opening briefs due on May 14, 2026.

28.      EPA also requests until August 5, 2026 to file its responsive brief under the briefing schedule proposed by Environmental Petitioners and agreed to by EPA. Additional time is needed because EPA will be responding to two overlength briefs and the requested deadline takes into consideration Respondents' counsel's already scheduled workload, which includes oral argument, multiple dispositive motions, and merits briefing in other cases in the next few months, as well as counsel's pre-planned vacations. The referenced oral argument is in *Texas Chemistry Council v. EPA*, No. 24-60193 (5th Cir.) and is scheduled for the first week of June, which makes the Chemistry Council petitioners' proposed June 16 deadline for EPA infeasible.

29.      Chemistry Council petitioners, a subset of Industry Petitioners, seek a more condensed briefing schedule because they allege that they may incur costs to comply with certain aspects of the TCE Rule set to become effective by the end of the year. But the Chemistry Council Petitioners' proposed briefing schedules is not substantially more likely than the majority briefing schedule to result in a decision by the end of the year.  Moreover, it should be noted that Industry Petitioners have

not attempted to move this case with any alacrity prior to this briefing schedule. And should Chemistry Council Petitioners' hypothetical future costs become more imminent, they have other means to address any purported harm at that time, including requesting appropriate relief from this Court.

30. EPA also opposes Industry Petitioners' request to file *two* 13,000-word opening briefs themselves (*i.e.*, a combined 26,000 words for this one petitioner group) as excessive for the needs of this case. EPA agrees with the Environmental Petitioners that authorizing a maximum combined word count of 18,000 words for industry petitioners (either in a single brief or split across multiple parties), a maximum combined word count of 18,000 word for Environmental Petitioners together (either in a single brief or split across multiple parties), and a maximum word count for EPA's response brief equal to the sum of all opening briefs (36,000 under the proposal in this paragraph) is consistent with the history of this type of litigation and the needs of this case. For example, in the two most recent TSCA risk management rule litigations, both of which went through the same multi-circuit petition lottery and consolidation practice as this one, the industry petitioner group received an 18,000-word limit for their opening brief. *See Texas Chemistry Council v. EPA*, No. 24-60193 (5th Cir.); *East Fork Enterprises et al., v. EPA,* 24-60227 (5th Cir.). Both of those petitions for review challenged EPA's risk evaluation, risk management rule, and interpretation of the statute. Industry Petitioners have not

adequately explained why this case requires nearly 30% more words than similarly situated cases.

31. For example, Chemical Council Petitioners plan to make two of the three statutory interpretation arguments industry petitioners made in *Texas Chemistry Council*. No. 24-60193 (5th Cir.), Dkt. No. 110-1 at 54–68. Industry petitioners in that case also challenged the adequacy of the record support for prohibitions on two separate conditions of use and the compliance deadlines for one of those conditions of use. *Id.* at 43–54, 73–75.

32. Industry Petitioners' request for two full-length briefs is particularly excessive in light of the D.C. Circuit's limits on briefing length where, as here, there are multiple aligned petitioners. For example, in a recent TSCA petition for review with both industry and labor petitioner groups, the D.C. Circuit allotted each group just 10,400 words. *See U.S. Steel, Paper and Forestry, Rubber, Mfg, Energy, Allied Indus. and Serv. Workers Int'l Union v. EPA*, No. 24-1151 (D.C. Cir.), Doc. No. 2073808; *see also* Doc. No. 2066204 (The D.C. Circuit "will, where appropriate, require a joint brief for aligned parties not to exceed the standard allotment for a single brief").

33. To the extent the Court grants Industry Petitioner's request for two full length briefs, EPA should receive at least 90 days to respond to the three total petition briefs filed in this matter. Indeed, Federal Rules of Appellate Procedure 31 and 32,

provide a respondent 30 days to respond to one 13,000-word brief and if Industry Petitioners' format request is granted, EPA will have to respond to three such briefs and thus should be afforded a commensurate amount of time. Moreover, that EPA filed a response brief in the *East Fork* matter in a shorter time-period (as noted below by Industry Petitioners) is irrelevant, because (1) only two briefs were filed in that matter (with fewer total words) and (2) EPA's schedule request before this Court is based on undersigned counsel's current workload and schedule.

### C.      Position of Industry Petitioners

34.      Environmental Petitioners' and EPA's proposal rests on the flawed assumption that "Industry Petitioners" comprise a single group with shared interests. In fact, Industry Petitioners comprise two distinct groups—the Section 6(g) Petitioners and Chemistry Council Petitioners—that throughout the case have worked separately; have raised different legal challenges; and, most importantly, have sought different relief. Indeed, as discussed below, *the relief the Section 6(g) Petitioners seek would not benefit Chemistry Council Petitioners, and vice-versa*.

35.      Thus, while Industry Petitioners agree with Environmental Petitioners that each distinct group's views should be "equally represented before the court," it is Industry Petitioners' proposal that would accomplish this by giving each group pursuing the same arguments and same relief—Environmental Petitioners, Section 6(g) Petitioners, and Chemistry Council Petitioners—a standard 13,000-word

opening brief. EPA would have a Response Brief of up to 39,000 words. The Labor and Environmental Intervenors would have 18,200 words to divide among themselves for their Intervenor Briefs in support of EPA. *Cf.* D.C. Circuit Rule 32(e)(2)(B)(i) (setting a 9,100-word limit for intervenor briefs). And each set of petitioners would have a standard-length (6,500 word) reply brief.

36. The Section 6(g) Petitioners represent parties that received exemptions from the ban on TCE. As reflected in their stay motions, these Petitioners' challenges focus on the conditions EPA imposed on their exemptions and seek relief specifically directed at those conditions.[4] The Section 6(g) Petitioners intend to continue to challenge the legality of these conditions in their opening brief. Specifically, the Section 6(g) Petitioners intend to focus on the infeasibility of the interim ECEL, EPA's failure to consider alternatives to that ECEL, EPA's failure to use the best available science to properly determine the unreasonable risk determination underlying the interim ECEL, and other issues concerning their exemptions. These arguments will involve in-depth analysis of the portions of the extensive record in this case specific to the exemptions and applicable conditions. The Section 6(g) Petitioners likewise anticipate seeking relief only from certain conditions and

---

[4] *See Alliance for a Strong U.S. Battery Sector v. EPA*, No. 25-1083 (3d Cir.), ECF No. 15; *Microporous, LLC v. EPA*, No. 25-1080 (3d Cir.), ECF No. 2; *PPG Indus., Inc. v. EPA*, No. 25-1118 (3d Cir.), ECF No. 2.

limitations EPA imposed on their exemptions. The challenges the Section 6(g) Petitioners anticipate raising, the facts they anticipate drawing on, and the relief they anticipate seeking all are limited to them and have no bearing on Chemistry Council Petitioners. Indeed, the relief the Section 6(g) Petitioners seek will not benefit Chemistry Council Petitioners (who are not representing exempted parties), period.

37. For their part, Chemistry Council Petitioners intend to focus on an entirely distinct set of issues affecting entirely different industries from those represented by the Section 6(g) petitioners. Chemistry Council Petitioners intend to challenge the prohibitions on specific conditions of use (*e.g.*, processing TCE as a reactant/intermediate and the disposal of TCE from such uses to industrial pre-treatment, industrial treatment, or publicly owned treatment works) as contrary to statute, arbitrary and capricious, and unsupported by substantial evidence. For instance, Chemistry Council Petitioners will likely argue that EPA regulated beyond the extent necessary in contravention of Section 6(a), that EPA acted contrary to the record or without record support in prohibiting certain uses, and that EPA acted contrary to TSCA Section 9. The relief Chemistry Council Petitioners seek will likewise not benefit the Section 6(g) Petitioners.

38. Given the distinctiveness and number of issues the Section 6(g) Petitioners and Chemistry Council Petitioners each intend to raise, the size and complexity of the record, the record-intensive and non-overlapping nature of their

respective arguments, and the entirely distinct relief each group of Industry Petitioners seeks, each group requires a standard-length brief to adequately develop their arguments.

39. Despite these considerations, Environmental Petitioners and EPA in effect propose that each group of Industry Petitioners should get only 9,000 words for their opening briefs and 4,500 words for their replies—just 75% the length of standard briefs. But they provide no justification for giving the Section 6(g) Petitioners and Chemistry Council Petitioners fewer words than the Federal Rules of Appellate Procedure permit petitioners to have. Indeed, this Court's briefing order did not require *any* coordination among petitioners on briefing. The Section 6(g) Petitioners and Chemistry Council Petitioners' proposal that each group receive one standard-length brief would avoid burdening the Court with redundant briefing while still ensuring the parties can fully develop their arguments in this important case.

40. Moreover, this proposal would yield a total word count comparable to that proposed by the Environmental Petitioners and EPA for the principal briefs (39,000 vs 36,000). At the same time, it would more equitably allocate words among the parties to ensure that each distinct group—as defined by the issues they are raising and relief they are seeking—has adequate space to provide the Court with the benefit of fully developed arguments from all parties.

41.     Environmental Petitioners, moreover, have not demonstrated a need for an oversized opening brief of 18,000 words. In moving to intervene to defend the TCE Rule, both Environmental Petitioners cited their similar interests in reducing or eliminating exposure to TCE.[5]  Since then, they have consistently filed joint briefs addressing the substantive issues in this case. *See, e.g.*, ECF No. 55 (opposition to stay of TCE Rule); ECF No. 82 (letter-brief on ripeness); *see also* ECF No. 50 (joint opposition with Labor Intervenors); ECF No. 71 (joint Rule 28(j) letter with Labor Intervenors).

42.     Because Environmental Petitioners have been coordinating to file joint briefs raising the same sets of issues, while the Section 6(g) Petitioners and Chemistry Council Petitioners intend to file separate briefs raising separate issues and seeking separate relief—just as they have been making separate substantive filings throughout this litigation—Environmental Petitioners' proposal effectively

---

[5] *Compare* ECF No. 32 at 5 (CEH pointing to its "long history of protecting consumers and communities from exposure to toxic chemicals"), *with* ECF No. 33 at 9 (EDF asserting that its members may suffer from exposure to TCE), *and id.* at 24 (EDF scientist stating that she works "to reduce exposure to toxic chemicals and protect public health").

gives them more words (18,000) for their opening brief than the 9,000 words the Section 6(g) Petitioners and the Chemistry Council Petitioners will each have. [6]

43. Indeed, this understates the disparities in the Environmental Petitioners' proposal. Because Environmental Petitioners are also intervenors in support of EPA in the petitions filed by Industry Petitioners, not only would Environmental Petitioners receive 18,000 words for their opening brief, but they would share the 18,000 words that they propose intervenors should receive. That there is likely to be some overlap in the points made in Environmental Petitioners' opening and intervenor briefs—for example, the Environmental Defense Fund's comment letter to EPA challenged some conditions of the battery-separator exemption as too lenient—only underscores that a standard allocation to the Environmental Petitioners of 13,000 words for their opening brief and 9,100 words for their intervenor brief (*i.e.*, half the 18,200 words they would share with Labor Intervenors) is sufficient.

44. EPA tries to justify its proposal by comparing this case to the two most recent TSCA risk management rule litigations. *See Texas Chem. Council v. EPA*, No. 24-60193 (5th Cir.); *East Fork Enters. v. EPA,* 24-60227 (5th Cir.). But those cases,

---

[6] At times, EPA and Environmental Petitioners describe the proposal as contemplating a single, 18,000-word brief for each group of petitioners. Industry Petitioners' arguments apply equally to that proposal.

in which industry petitioners received 18,000 words, only validates Industry Petitioners' proposal here because this case is plainly more complex. Whereas the petitioners in *East Fork* and *Texas Chemistry Council* raised four issues in each case, Industry Petitioners here anticipate raising at least six issues—four by the Section 6(g) Petitioners and at least two by the Chemistry Council petitioners.[7] Furthermore, *East Fork* did not involve challenges to any specific conditions of use, and *Texas Chemistry Council* largely focused on just one condition of use. Here, by contrast, Industry Petitioners plan to challenge several specific conditions of use, including on grounds that EPA's prohibitions of those conditions run contrary to the administrative record or lack record support. In addition, Industry Petitioners plan to challenge EPA's interpretation of 15 U.S.C. § 2605(g), which was not at issue in either of the prior litigations.

45.    Other differences between this case and the TSCA precedents cited by EPA confirm that Industry Petitioners should not be collectively limited to 18,000 words for their opening briefs. There are more industry petitioners in this case (11) than in *East Fork* (3) or *Texas Chemistry Council* (5). This case also involves greater diversity of interests among the industry petitioners because the Chemistry Council

---

[7] *See East Fork Enters. v. EPA*, No. 24-60227, ECF No. 213 at 16 (statement of issues); *Texas Chem. Council*, No. 24-60193, ECF No. 110 at 17–18 (statement of issues).

Petitioners and Section 6(g) Petitioners are separately challenging entirely distinct aspects of the TCE Rule. By contrast, with one narrow exception in *Texas Chemistry Council*, the industry petitioners in that case and in *East Fork*, respectively, challenged identical aspects of the rules at issue in those cases and sought identical relief.[8]

46. The Industry Petitioners[9] request a briefing schedule that is closer to the standard deadlines in Fed. R. App. P. 31, but still gives respondents and intervenor-respondents additional time. As EPA recognizes, Industry Petitioners are concerned about compliance deadlines that take effect at the end of the year, particularly prohibitions on conditions of use that take effect on December 18, 2026. The cost of complying with those prohibitions is not merely hypothetical as EPA suggests; it is certain, substantial, and becoming more imminent each day. Thus, Industry Petitioners request a shorter briefing schedule than what EPA and the non-

---

[8] In *Texas Chemistry Council*, a group of four associations of chemical manufacturers—"the Chemistry Council"—filed a joint motion to intervene and described their interests as uniform. *See Texas Chem. Council*, No. 24-60193, ECF No. 35 at 6, 8–9. Later, a member organization—Olin Corporation—joined them on the brief. *See id.*, ECF No. 110. And in *East Fork*, two industry petitioners that sold products involving the relevant chemical filed a joint petition for review and were then joined by American Chemistry Council on one brief. *See East Fork Enters. v. EPA*, No. 24-60227, ECF No. 1; *id.*, ECF No. 213.

[9] As noted above, Alliance for a Strong U.S. Battery Sector and Microporous take no position regarding the competing proposed briefing schedules.

Industry Petitioners are proposing in hopes of obtaining judicial resolution by December 18.

47.    EPA and the non-Industry Petitioners fault the Industry Petitioners for not attempting to move this case along more expeditiously until now. While it is true the Industry Petitioners did not oppose EPA's requested abeyance on May 27, 2025, because they anticipated EPA would reconsider the rule through notice-and-comment rulemaking, nearly a full year has gone by, and EPA has yet to address the substantive requirements in the underlying rule. Given the looming compliance deadlines later this year, the Industry Petitioners seek a more condensed briefing schedule. The deadlines that the Industry Petitioners seek in this case are comparable to those in the *East Fork* litigation (5th Cir. No. 25-60227), where EPA responded to two briefs totaling 31,000 words in 65 days, which included the Thanksgiving holiday.

Dated: March 30, 2026

Respectfully submitted,

/s/ Robert M. Sussman
Robert M. Sussman
Sussman & Associates
310 Garfield St., N.W.
Washington, D.C. 20008
202-716-0118
bobsussman@comcast.net

*Counsel for Center for Environmental Health*

/s/ Samantha Liskow
Samantha Liskow
ENVIRONMENTAL DEFENSE FUND
257 PARK AVE S
NEW YORK, NY 10010
(212) 616-1247
sliskow@edf.org

*Counsel for Environmental Defense Fund*

/s/ Randy Rabinowitz
Randy Rabinowitz
Occupational Safety and Health Law Project
P.O. Box 3769
Washington, D.C. 20027

(202) 256-4080
randy@oshlaw.org

Victoria L. Bor
Occupational Safety and Health Law
Project
P.O. Box 3769
Washington, D.C. 20027
(301) 785-3204
victoriabor87@gmail.com

*Counsel for Intervenors United Steel, Paper,
and Forestry, Rubber Manufacturing,
Energy, Allied Industrial Workers
International Union and International
Union, United Automobile, Aerospace &
Agricultural Implement Workers of America,
UAW*

 */s/ Laura J. Brown*
LAURA J. BROWN
LAURA J. GLICKMAN
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3376
*Laura.J.S.Brown@usdoj.gov*

*Counsel for Respondents*

/s/ *Daniel J. Feith*
Daniel J. Feith
Samuel B. Boxerman
Jeremy D. Rozansky
SIDLEY AUSTIN LLP

1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner Alliance for a Strong U.S. Battery Sector*

*/s/ David Y. Chung*
David Y. Chung
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
(202) 624-2587
dchung@crowell.com

*Counsel for American Chemistry Council and Georgia Chemistry Council (No. 25-1079)*

Brandon O. Moulard
PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree St. NE, Suite 1500
Atlanta, Georgia 30309
brandonmoulard@parkerpoe.com

*Counsel for Trent Capital Partners, LLC*

Keith Bradley
Kayla Marie Mendez
717 17th Street, Suite 1825
Denver, CO 80202
Tel: (303) 830-1776
Fax: (303) 894-9239
keith.bradley@squirepb.com
kayla.mendez@squirepb.com

Samuel B. Ballingrud

2550 M Street, NW
Washington, DC 20037
samuel.ballingrud@squirepb.com

Squire Patton Boggs (US) LLP

W. Caffey Norman
3135 O Street NW
Washington, DC 20007
Tel: (202) 460-9495
caffeynorman@outlook.com

Norman Law & Policy PLLC

*Counsel for Olin Corporation*

Barbara Smith Tyson
Bryan Cave Leighton Paisner LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63130
barbara.smith@bclplaw.com

*Counsel for the Missouri Alliance for a Strong U.S. Battery Sector*

Steven D. Weber
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
steveweber@parkerpoe.com

*Counsel for Microporous, LLC*

Eric P. Gotting
*Counsel of Record*
KELLER & HECKMAN LLP
1001 G Street, NW
Suite 500 West

28

Washington, DC 20001
Telephone: (202) 434-4100
egotting@khlaw.com

*Counsel for Petitioners*
*Vinyl Institute and PPG Industries, Inc.*

*/s/ Robert J. Karl*
Robert J. Karl, Esq.
Eric B. Gallon
PORTER, WRIGHT, MORRIS &
ARTHUR, L.L.P.
41 S. High Street, Suite 3000
Columbus, OH 43215
(614) 227-1925
rkarl@porterwright.com
egallon@porterwright.com

*Counsel for the Ohio*
*Chemistry Technology Council*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure ("Rule") 27(d) because it contains 5198 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). The motion also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Robert M. Sussman
Robert M. Sussman

**CERTIFICATE OF SERVICE**

I certify that today I filed the foregoing response brief by filing this document with the Clerk of the Court for the United States Court of Appeals for the Third Circuit, through the Electronic Case Filing (ECF) system.

/s/ Robert M. Sussman
Robert M. Sussman